```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------X
                                    :
DOMENICO DE SOLE and ELEANORE
DE SOLE, individually and as        :
assignees of LAURA DE SOLE,
                                    :
              Plaintiffs,              12 Civ. 2313 (PGG)(HBP)
                                    :
    -against-                          OPINION
                                    :  AND ORDER
KNOEDLER GALLERY, LLC d/b/a
KNOEDLER & COMPANY, ANN FREEDMAN,   :
GLAFIRA ROSALES, JOSE CARLOS
BERGANTINOS DIAZ, MICHAEL HAMMER,   :
and JAIME ANDRADE,
                                    :
              Defendants.
                                    :
-----------------------------------X
```

PITMAN, United States Magistrate Judge:

I. Introduction

I write to resolve a discovery dispute between defendant Jaime Andrade and plaintiffs Domenico and Eleanore De Sole ("Plaintiffs"). Pursuant to Fed.R.Civ.P. 34, Andrade seeks an order directing Plaintiffs to identify which of the documents previously produced to him are responsive to each of the document requests he served on Plaintiffs. For the reasons set forth below, Andrade's application is denied, and Plaintiffs' objection is sustained.

II. Background

Plaintiffs brought this action for fraud and racketeering violations against the Knoedler Gallery, certain of its employees and other individuals. The claims arise out of Plaintiffs' purchase of a purportedly forged Mark Rothko painting from the Knoedler Gallery where Andrade was an employee. Plaintiffs allege that Andrade introduced defendant Glafira Rosales, an art dealer, to the Knoedler Gallery and that Rosales then sold the Knoedler Gallery a collection of forged pieces of artwork, including the work that is the subject of this action.

Andrade was not named as a defendant in the original complaint, but was named in the amended complaint (Docket Item 17). After Andrade was added as a party, Plaintiffs provided him with copies of all the documents they had previously produced to the other defendants, as well as copies of documents that Plaintiffs had received as initial disclosures and in response to document requests served on the other defendants and third-party subpoenas (Letter from Silvia Serpe, Esq. dated Jan. 23, 2013 ("Serpe Letter") at 2). Plaintiffs, however, informed Andrade that they did not have any documents that concerned Andrade apart from the documents that originated with the other defendants or third parties (Letter from Aaron Crowell, Esq. dated January 25,

2013 ("Crowell Letter") at 1; Ex. C to Serpe Letter). The other defendants also provided Andrade with copies of the documents that they had produced to Plaintiffs (Serpe Letter at 2). Andrade does not dispute that he has copies of all the documents that have been produced by parties and non-parties prior to his being added as a defendant.

Andrade subsequently served document requests upon Plaintiffs (Ex. A to Serpe Letter). The majority of these requests seek documents "concerning" specific allegations in the amended complaint[1] (Ex. A to Serpe Letter). Plaintiffs objected

---

[1] By way of example, Andrade's Document Requests 2, 3 and 4 seek:

**Request No. 2**

All documents concerning the allegations in paragraphs 8, 23, and 165 of the Complaint that Andrade "acted," was "recognized as," and/or was "described to Hammer" as the "'gateway' to the Rosales Collection."

**Request No. 3**

All documents concerning the allegations in paragraph 8 of the Complaint that Andrade "approved the second provenance tale."

**Request No. 4**

All documents concerning the allegations in paragraph 8 of the Complaint that Andrade 'inject[ed] his then-deceased longtime companion Herbert into the center of the story."

3

to these requests on virtually every ground imaginable including undue burden and work product (Ex. B to Serpe Letter).

In his current application, Andrade does not seek to compel the production of additional documents.  Rather, he seeks to compel plaintiff to identify which specific documents are responsive to each of his document requests.  Because Plaintiffs concede that, other than documents produced by the other defendants and third parties, they have no documents concerning Andrade, responding to the Andrade's request would require Plaintiffs (or, in all likelihood, their attorneys) to analyze and sort the document productions made by defendants and third parties.  Andrade makes no claim that it is somehow easier for Plaintiffs' or their attorneys to accomplish this task than it is for Andrade and his attorneys.  After Andrade and Plaintiffs were unable to resolve the dispute concerning Andrade's document requests informally, they submitted letters to me setting forth their respective positions.

III. Analysis

Andrade's document requests raise a number of serious issues.  It appears that Andrade did not serve the document requests to obtain documents; he already had all responsive documents before the request was served.  Rather the only ratio-

nal purpose Andrade could have had for serving the requests was to (1) ascertain if Plaintiffs' counsel has analyzed and sorted the document production and, if so, how, or (2) avoid having to review the document production himself.  Thus, the purpose of the requests was not to obtain documents but, rather, to obtain information that might facilitate the use and understanding of the documents that had previously been produced to Andrade.

The overarching issue in my mind is whether Andrade's requests constitutes an improper attempt to obtain Plaintiffs' counsels' work product.  In <u>Hickman v. Taylor</u>, 329 U.S. 495 (1947), the Supreme Court provided a non-exhaustive list of the types of materials that constitute work product and the reasons that those materials are protected from disclosure.

> Historically, a lawyer is an officer of the court and is bound to work for the advancement of justice while faithfully protecting the rightful interests of his clients.  In performing his various duties, however, it is essential that a lawyer work with a certain degree of privacy, free from unnecessary intrusion by opposing parties and their counsel.  Proper preparation of a client's case demands that he assemble information, <u>sift what he considers to be the relevant from the irrelevant facts</u>, prepare his legal theories and plan his strategy without undue and needless interference.  That is the historical and the necessary way in which lawyers act within the framework of our system of jurisprudence to promote justice and to protect their clients' interests.  This work is reflected, of course, in interviews, statements, memoranda, correspondence, briefs, mental impressions, personal beliefs, and countless other tangible and intangible ways-aptly though roughly termed by the Circuit Court of Appeals

>     in this case (153 F.2d 212, 223) as the 'Work product
>     of the lawyer.'  Were such materials open to opposing
>     counsel on mere demand, much of what is now put down in
>     writing would remain unwritten.  An attorney's
>     thoughts, heretofore inviolate, would not be his own.
>     Inefficiency, unfairness and sharp practices would
>     inevitably develop in the giving of legal advice and in
>     the preparation of cases for trial.  The effect on the
>     legal profession would be demoralizing.  And the inter-
>     ests of the clients and the cause of justice would be
>     poorly served.

329 U.S. at 510-11 (emphasis added); see In re Grand Jury Subpoenas dated Oct. 22, 1991 & Nov. 1, 1991, 959 F.2d 1158, 1166 (2d Cir. 1992) ("[W]here a request is made for documents already in the possession of the requesting party with the precise goal of learning what the opposing attorney's thinking or strategy may be, even third-party documents may be protected."); but see In re Grand Jury Subpoenas Dated Mar. 19, 2002 & Aug. 2, 2002, 318 F.3d 379, 386 (2d Cir. 2003) ("Not every selection and compilation of third-party documents by counsel transforms that material into attorney work product.").  The decisions of the District Courts addressing the issue are difficult to reconcile.  Compare S.E.C. v. Collins & Aikman Corp., 256 F.R.D. 403 (S.D.N.Y. 2009) (Scheindlin, D.J.) (ordering production of file folders containing a subset of non-privileged documents selected by SEC counsel in anticipation of litigation), with S.E.C. v. Morelli, 143 F.R.D. 42 (S.D.N.Y. 1992) (Leisure, D.J.) (precluding on work

product grounds (among others) deposition of SEC attorney concerning sources for SEC's allegations).

I conclude that the present dispute can be resolved without having to address the work product issue. There is no issue that neither Plaintiffs nor Andrade has greater familiarity with the documents responsive to Andrade's document requests. They did not originate with either Plaintiffs or Andrade, and there is no reasons to believe that Plaintiffs enjoy some advantage in reviewing the documents that Andrade does not. Under these circumstances, the burden of reviewing the documents is equal, and, therefore, I conclude that compelling Plaintiffs to analyze the documents for Andrade would be an undue burden. The analysis of document production is a burden in virtually every civil action, but there are no circumstances that warrant compelling Plaintiffs to perform this task for Andrade. Plaintiffs' production of the documents in the same form and order that Plaintiffs received them from the defendants and third-parties is sufficient.

S.E.C. v. Collins & Aikman Corp., supra, 256 F.R.D. 403, upon which Andrade relies, is readily distinguishable. In that case, the volume of documents was far greater than the volume of documents involved here, and the S.E.C.'s counsel had already prepared the binders of selected documents that were in

issue. Here the volume of documents is approximately 10,000 pages, and there is no evidence that Plaintiffs have already organized the documents in the manner sought by Andrade. Under these circumstances, I conclude that it would be unduly burdensome to compel Plaintiff's counsel to do the work that Andrade's counsel can do herself.

IV. Conclusion

Accordingly, for all the foregoing reasons, Andrade's application to compel Plaintiffs to identify the documents responsive to each of Andrades' specific requests is denied.

Dated:  New York, New York
        February 14, 2013

                                        SO ORDERED

                                        _____
                                        HENRY PITMAN
                                        United States Magistrate Judge

Copies transmitted to:

Gregory A. Clarick, Esq.
Aaron H. Crowell, Esq.
Emily Reisbaum, Esq.
Issac B. Zaur, Esq.
Clarick Gueron Reisbaum LLP
40 West 25th Street
New York, New York  10010

8

Andrius R. Kontrimas, Esq.
Fullbright Tower
1301 McKinney, Suite 5100
Houston, Texas  77010

Charles David Schmerler, Esq.
India DeCarmine, Esq.
Mark A. Robertson, Esq.
Fulbright & Jaworski L.L.P. (NYC)
666 Fifth Avenue
New York, New York  10103

Nicholas A. Gravante , Jr., Esq.
Boies, Schiller & Flexner, LLP(NYC)
575 Lexington Avenue
New York, New York  10022

Luke W. Nikas, Esq.
Phillip J. Iovieno, Esq.
Boies, Schiller & Flexner LLP (Albany)
10 North Pearl Street, 4th Floor
Albany, New York  12207

Anastasios Sarikas, Esq.
Office of Anastasios Sarikas
23-09 31st Street
Astoria, New York  11105

Silvia L. Serpe, Esq.
Paul W. Ryan, Esq.
Serpe Ryan LLC
1115 Broadway
11th Floor
New York, New York  10010