**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| DOMENICO DE SOLE and ELEANORE DE SOLE, individually and as assignees of LAURA DE SOLE, <br><br> Plaintiffs, <br><br> v. <br><br> KNOEDLER GALLERY, LLC D/B/A KNOEDLER & COMPANY, ANN FREEDMAN, GLAFIRA ROSALES, JOSE CARLOS BERGANTINOS DIAZ, MICHAEL HAMMER, 8-31 HOLDINGS, INC., and JAIME ANDRADE, <br><br> Defendants. | No. 12 Civ. 2313 (PGG) <br><br> ECF Case |

## JOINT PROPOSED REQUESTS TO CHARGE

Plaintiffs Domenico and Eleanore De Sole, and defendants Ann Freedman, Knoedler Gallery, LLC, and 8-31 Holdings, Inc., by and through their respective counsel, hereby jointly submit the proposed jury instructions as set forth below.  To the extent the parties have reached agreement on certain proposed instructions, those instructions are denoted as "Joint Instructions."   To the extent the parties were not able to reach agreement, their respective proposals are denoted as "Plaintiffs' Proposed Instruction" or "Defendants' Proposed Instruction."  The parties respectfully request leave to submit revised or additional requests, beyond those set forth below, based upon the evidence adduced at trial and to otherwise conform with any rulings the Court may render prior to or during the course of these proceedings.

**Joint Instruction:**
**Introductory Remarks**

Members of the jury, I will now instruct you as to the law that governs this case.  You have been handed a copy of the instructions I will read.  You should feel free to read along or to just listen to me.  You will be able to take your copy of the instructions into the jury room.

You have heard all of the evidence in the case as well as the final arguments of the parties.  It has been obvious to everyone in the courtroom that you have paid careful attention to the evidence, and I am confident that you will act together with fairness and impartiality to reach a just verdict.

There are three parts to these instructions.  First, I'll give you general instructions about your role, and about how you are to go about deciding the factual issues in this case.  Second, I'll give you instructions concerning the law applicable to this particular case.  Third, I'll give you final instructions about procedure.

It is important that you listen carefully.  I'm reading these instructions from a prepared text because the law is made up of words, and those words are very carefully chosen.  This is not a time to *ad lib*.  So when I tell you what the law is, it is critical that I use exactly the right words.

**Authority:**     *Bouveng v. NYG Capital LLC*, No. 14 Civ. 5474 (PGG), Docket No. 219 (Jury Instructions).

3

**<u>Joint Instruction:</u>**
**<u>Role of the Court</u>**

My duty is to instruct you on the law.  It is your duty to accept these instructions of law and to apply them to the facts as you determine them.  With respect to legal matters, you must take the law as I give it to you.  If any attorney has stated a legal principle different from any that I state to you in my instructions, it is my instructions that you must follow.

You are to consider these instructions together as a whole; in other words, you are not to isolate or give undue weight to any particular instruction.  You must not substitute your own notions or opinions of what the law is or ought to be.

**Authority:**    *Bouveng v. NYG Capital LLC*, No. 14 Civ. 5474 (PGG), Docket No. 219 (Jury Instructions).

**<u>Joint Instruction:</u>**
**<u>Role of the Jury</u>**

As members of the jury, you are the sole and exclusive judges of the facts.  You decide

what happened.  You must determine the facts based solely on the evidence received in this trial.

Any opinion I might have regarding the facts is of absolutely no consequence.


**Authority:**     *Bouveng v. NYG Capital LLC*, No. 14 Civ. 5474 (PGG), Docket No. 219 (Jury
Instructions).

## Joint Instruction:
## Role of Counsel

The personalities and the conduct of counsel in the courtroom are not in any way at issue. If you formed an opinion of any kind as to any of the lawyers in the case, favorable or unfavorable, whether you approved or disapproved of their behavior as advocates, that should not enter into your deliberations.

From time to time, the lawyers and I had conferences at the bench and other conferences out of your hearing. These conferences involved procedural and evidentiary matters, and should not enter into your deliberations at all.

Lawyers have a duty to object when the other side offers testimony or other evidence that the lawyer believes is not admissible. It is my job to rule on those objections. Why an objection was made is not your concern. You should not draw any inference simply from the fact that a lawyer objects to a question. If I sustained the objection, you may not consider the testimony or exhibit at issue; if I overruled the objection, you may consider the testimony or exhibit just as you would any other evidence in the case.

**Authority:**     *Bouveng v. NYG Capital LLC*, No. 14 Civ. 5474 (PGG), Docket No. 219 (Jury Instructions).

**<u>Joint Instruction:</u>**
**<u>Sympathy or Bias</u>**

You must evaluate the evidence calmly and objectively, without prejudice or sympathy. You must be completely fair and impartial. Your verdict must be based solely on the evidence presented at this trial, or the lack of evidence. Our system of justice cannot work unless you reach your verdict through a fair and impartial consideration of the evidence.

You may not consider, in deciding the facts of the case, any personal feelings you may have about the race, national origin, sex or age of any party or witness. You must regard the parties as of equal standing in the community, and of equal worth. All parties are entitled to the same fair trial at your hands. They stand equal before the law, and are to be dealt with as equals in this court.

**Authority:**    *Bouveng v. NYG Capital LLC*, No. 14 Civ. 5474 (PGG), Docket No. 219 (Jury Instructions).

**Plaintiffs' Proposed Instruction:**
**Burden of Proof**

The Plaintiffs have the burden of proving some of their claims by "a preponderance of the evidence," and other claims by "clear and convincing" evidence.  I will explain to you what each of those terms mean, and, later, I will instruct you as to which standard you should apply to which claims.

To establish a claim by "a preponderance of the evidence" means that the evidence of the party having the burden of proof must be more convincing and persuasive to you than the evidence opposed to it.  A preponderance of the evidence means the greater weight of the evidence.  The difference in persuasiveness need not be great:  it requires only that you find that the scales tip, however slightly, in favor of the party with the burden of proof—that what the party with the burden of proof claims is more likely than not true.  If you find that the credible evidence as to a particular issue is evenly divided, you must decide that issue in favor of the party that does not have the burden of proof.

Some claims must be established by "clear and convincing evidence."  "Clear and convincing evidence" is evidence that produces in your mind a firm belief or conviction as to the matter at issue.  Clear and convincing evidence involves a greater degree of persuasion than is necessary to meet the preponderance of the evidence standard.  This standard does not require proof to an absolute certainty, since proof to an absolute certainty is seldom possible in any case.

What is important in either case is the quality and persuasiveness of the evidence relied on by a party, and not the number of witnesses, the number or variety of the exhibits that party introduced, or the length of time that party spent on a particular subject.  In determining whether any fact has been proven by a preponderance of the evidence or by clear and convincing evidence (depending on the claim, as I will instruct you), you may consider the testimony of all

8

of the witnesses and all of the exhibits, regardless of who introduced this evidence.  Simply

because I have permitted certain evidence to be introduced does not mean that I have decided

that it is important or significant.  That is for you to decide.


**Authority:**     *Bouveng v. NYG Capital LLC*, No. 14 Civ. 5474 (PGG), Docket No. 219 (Jury
Instructions); 3 K. O'Malley, J. Grenig & W. Lee, FEDERAL JURY PRACTICE AND INSTRUCTIONS,
Civil, § 104:02 (6th ed.) [hereinafter "O'Malley"].

**Defendants' Proposed Instruction:**
**Burden of Proof**

The Plaintiffs have the burden of proving each element of their fraud, fraudulent concealment, rescission, alter ego, and equitable tolling claims by clear and convincing evidence. This means evidence that satisfies you that there is a high degree of probability that there was fraud and/or fraudulent concealment, as I will define them for you.  With respect to the Plaintiffs' other claims, the Plaintiffs have the burden of proving each element of their claims by a preponderance of the evidence. A preponderance of the evidence means the greater weight of the evidence.

To decide for Plaintiffs with respect to the fraud, fraudulent concealment, rescission, alter ego, and equitable tolling claims, it is not enough to find that the preponderance of the evidence is in Plaintiffs' favor. "Clear and convincing evidence" is evidence that produces in your mind a firm belief or conviction as to the matter at issue.  Clear and convincing evidence involves a greater degree of persuasion than is necessary to meet the preponderance of the evidence standard. A party who must establish their case by clear and convincing evidence must satisfy you that the evidence makes it highly probable that what they claim is what actually happened.

If, upon all the evidence, you are satisfied that there is a high probability that there was fraud, fraudulent concealment, rescission, alter ego, and/or equitable tolling as I will define them for you, you must decide for Plaintiffs. If you are not satisfied that there is such a high probability, you must decide for Defendants.

To establish by a preponderance of the evidence means that the evidence of the party having the burden of proof must be more convincing and persuasive to you than the evidence opposed to it.  A preponderance of the evidence means the greater weight of the evidence.  The difference in persuasiveness need not be great:  it requires only that you find that the scales tip,

however slightly, in favor of the party with the burden of proof—that what the party with the burden of proof claims is more likely than not true.  If you find that the credible evidence as to a particular issue is evenly divided, you must decide that issue in favor of the Defendants.

What is important here is the quality and persuasiveness of the evidence relied on by a party, and not the number of witnesses, the number or variety of the exhibits that party introduced, or the length of time that party spent on a particular subject.  In determining whether any fact has been proven by a preponderance of the evidence or by clear and convincing evidence (depending on the claim, as I will explain to you), you may consider the testimony of all of the witnesses and all of the exhibits, regardless of who introduced this evidence.  Simply because I have permitted certain evidence to be introduced does not mean that I have decided that it is important or significant.  That is for you to decide.

**Defendants' Additional Authority**: N.Y. Pattern Jury Instr.--Civil 1:64 General Instruction—Burden of Proof—Clear and Convincing Evidence; *Guaranty Trust Co. of New York v. York*, 326 U.S. 99, 109, 65 S.Ct. 1464, 89 L.Ed. 2079 (1945); *Timber Rattlesnake, LLC v. Devine*, 986 N.Y.S.2d 278 (App. Div. 2014); New York Pattern Jury Instructions (Civil) 4:11 (3rd ed. 2015).

**Joint Instruction:**
**What Is and Is Not Evidence**

In determining the facts, you must rely upon your recollection of the evidence.  The evidence in this case includes the testimony of the witnesses and the exhibits received in evidence, as well as certain "stipulations" or agreements as to facts entered into by the parties.  You have also heard excerpts from declarations submitted to the Court and testimony from depositions and other proceedings.  As I told you during the trial, this earlier testimony was given under oath and should be treated by you just like testimony given from the witness stand here in the courtroom.  Where the parties have stipulated, or agreed, that certain facts are true, you must accept those facts as true during your deliberations.

By contrast, you are not to consider questions asked by the lawyers as evidence.  It is the witnesses' answers that are evidence, not the questions.  The questions are significant only insofar as they put the answers in context.

From time to time, I asked witnesses questions.  You should draw no inference from that.  My questions were intended only for clarification or to expedite matters and were not intended to suggest any opinion on my part as to whether any witness was more or less credible than any other witness, or any view as to what your verdict should be.

When I struck or excluded testimony, you may not consider that testimony in rendering your verdict.

To constitute evidence, exhibits must first be received in evidence.  Exhibits marked for identification but not admitted are not evidence, nor are materials that were used only to refresh a witness's recollection.

Arguments by the lawyers are also not evidence, because the lawyers are not witnesses.  What they have said to you in their opening statements and in their closing arguments may help

you understand the evidence and assist you in reaching a verdict, but these arguments are not evidence.  Moreover, if your recollection of the evidence differs from the statements the lawyers made in their arguments to you, it is your recollection that controls.

Certain demonstrative exhibits also have been shown to you.  Those are used for convenience and to help explain the facts of the case.  They are not themselves evidence or proof of any facts.

Finally, any statements that I may have made during the trial do not constitute evidence. Similarly, the rulings I have made during the trial, as well as any statements I may have made during the trial, are not any indication of my views of what your decision should be.  The decision here is for you alone.

It is for you alone to decide what weight, if any, should be given to the testimony and the exhibits received in evidence in this case.

**Authority:**    *Bouveng v. NYG Capital LLC*, No. 14 Civ. 5474 (PGG), Docket No. 219 (Jury Instructions); O'Malley § 104:50.

**Joint Instruction:**
**Direct and Circumstantial Evidence**

Generally, there are two types of evidence that you may consider in reaching your verdict: "direct evidence" and "circumstantial evidence."

Direct evidence is testimony by a witness about something he or she knows by virtue of his or her own senses—something seen, felt, touched, or heard. For example, if a witness were to testify that when he or she left home this morning, it was raining, that would be direct evidence about the weather. Direct evidence may also be in the form of an exhibit.

Circumstantial evidence is evidence from which you may infer the existence of certain facts. For example, assume that when you came into the courthouse this morning the sun was shining and it was a nice day. Assume that the courtroom blinds were drawn and you could not look outside. As you were sitting here, someone walked in with an umbrella, which was dripping wet. Then a few minutes later another person entered with a wet raincoat. Now, you cannot look outside of the courtroom and you cannot see whether or not it is raining. So you have no direct evidence of that fact. But based on the facts that I have asked you to assume, you could conclude that it had been raining.

That is all there is to circumstantial evidence. On the basis of reason, experience and common sense, you infer from one established fact the existence or nonexistence of another fact.

The matter of drawing inferences from facts in evidence is not a matter of guesswork or speculation. An inference is a logical, factual conclusion that you might reasonably draw from other facts that have been proven. Many material facts—such as what a person was thinking or intending—are rarely easily proven by direct evidence. Often such facts are established by circumstantial evidence.

Circumstantial evidence is of no less value than direct evidence.

14

**Authority:**     *Bouveng v. NYG Capital LLC*, No. 14 Civ. 5474 (PGG), Docket No. 219 (Jury Instructions).

**Joint Instruction:**
**Witness Credibility**

You should evaluate the credibility or believability of the witnesses by using your common sense. Common sense is your greatest asset as a juror. Ask yourself whether the witness appeared honest, open and candid. Did the witness appear evasive or as though he or she was trying to hide something? How did the witness's responsiveness on direct examination compare to that witness's responsiveness on cross-examination?

If you find that any witness has lied under oath at this trial, you should view the testimony of that witness cautiously and weigh it with great care. It is for you to decide, however, how much of the witness's testimony, if any, you wish to believe. Few people recall every detail of every event precisely the same way. A witness may be inaccurate, contradictory, or even untruthful in some respects and yet entirely believable and truthful in other respects. It is for you to determine whether such inconsistencies are significant or inconsequential, and whether to accept or reject all or to accept some and reject the balance of that witness's testimony.

In sum, it is up to you to decide whether the testimony of a witness is truthful and accurate, in part, in whole, or not at all, as well as what weight, if any, you give to the testimony of that witness.

In evaluating the testimony of any witness, you may consider, among other things:

- the witness's intelligence;

- the ability and opportunity the witness had to see, hear, or know the things that the witness testified about;

- the witness's memory;

- any interest, bias, or prejudice the witness may have;

- the manner of the witness while testifying; and

- the reasonableness of the witness's testimony in light of all the evidence in the case, including testimony from other witnesses and the exhibits that have been received in evidence.

**Authority:**   *Bouveng v. NYG Capital LLC*, No. 14 Civ. 5474 (PGG), Docket No. 219 (Jury Instructions).

**Joint Instruction:**
**Prior Inconsistent Statements**

You have heard evidence that, at some earlier time, witnesses have said or done something that counsel argues is inconsistent with their trial testimony.

Evidence of prior allegedly inconsistent statements was introduced to help you decide whether to believe the trial testimony of a witness.  If you find that a witness made an earlier statement that conflicts with the witness's trial testimony, you may consider that fact in deciding how much of the witness's trial testimony, if any, to believe.

In making this determination, you may consider whether the witness purposely made a false statement or whether it was an innocent mistake; whether the inconsistency concerns an important fact, or whether it had to do with an insignificant detail; whether the witness had an explanation for the inconsistency, and whether that explanation accords with your common sense.

It is exclusively your decision, based upon all the evidence and your own good judgment, whether the prior statement was inconsistent, and if so how much weight, if any, to give the inconsistent statement in determining whether to believe all, or part, of the witness's testimony.


**Authority:**    *Bouveng v. NYG Capital LLC*, No. 14 Civ. 5474 (PGG), Docket No. 219 (Jury Instructions).

**Joint Instruction:**
**Bias of Witnesses**

In deciding whether to believe a witness, you should consider any evidence that the witness is biased in favor or against one of the parties.  Likewise, you should consider evidence of any other interest or motive that the witness may have in cooperating with a particular party.  You should also take into account any evidence that a witness may benefit in some way from the outcome of the case.

It is your duty to consider whether the witness has permitted any such bias or interest to color the witness's testimony.  If you find that a witness is biased, you should view the witness's testimony with caution, weigh it with great care, and subject it to close and searching scrutiny.

Of course, the mere fact that a witness has an interest in the outcome of this case does not mean that the witness has not told the truth.  It is for you to decide from your observations and applying your common sense and experience whether the possible interest of any witness has intentionally or otherwise colored or distorted that witness's testimony.  You are not required to disbelieve a witness with an interest in the outcome of this case; you may accept as much of that witness's testimony as you deem reliable and reject as much as you deem unworthy of acceptance.


**Authority:**    *Bouveng v. NYG Capital LLC*, No. 14 Civ. 5474 (PGG), Docket No. 219 (Jury Instructions).

**Joint Instruction:**
**Opinion Testimony**

The rules of evidence ordinarily do not permit witnesses to testify as to opinions or conclusions.  There is an exception to this rule for "expert witnesses."  I permitted [NAME EXPERTS] to express opinions about certain matters related to this case because of their specialized knowledge as a result of his or her education, training, and work experience.

In weighing each of these witnesses' testimony, you should give their testimony such weight as you think it deserves, considering each of the expert witnesses' qualifications, the reasons they gave for their opinions, and the reliability of the information supporting those opinions, as well as all the factors I have previously mentioned for evaluating the testimony of any witness.

To the extent you find these expert witnesses' opinion testimony credible and reliable, you may rely on it.  To the extent you do not, you need not rely on it.  Opinion testimony should receive whatever weight and credit, if any, you think appropriate, given all the other evidence in the case.

**Authority:**    *S.E.C. v. Reserve Mgmt. Co.*, No. 09 Civ. 4346 (PGG), Docket No. 570 at 12-13
(Jury Charge); O'Malley § 104:40.

<u>**Joint Instruction:**</u>
<u>**Stipulations**</u>

You have heard evidence in the form of stipulations, or agreements, as to certain facts or as to testimony a person would give if called to testify.  Where the parties have entered into an agreement as to certain facts, you must regard the agreed-upon facts as true.  Where the parties have stipulated as to what a witness would say if called to testify, you must accept the parties' agreement as to what the witness would say.


**Authority:**    *Bouveng v. NYG Capital LLC*, No. 14 Civ. 5474 (PGG), Docket No. 219 (Jury Instructions).

## Joint Instruction:
## The Parties

As you know, the plaintiffs in this case are Domenico De Sole and Eleanore De Sole, individually and as assignees of Laura De Sole.  The defendants are Ann Freedman, Knoedler Gallery, LLC d/b/a Knoedler & Company, and, 8-31 Holdings, Inc.  In most instances, I will refer to the Plaintiffs collectively as "Plaintiffs" or as the "De Soles" and to the Defendants collectively as "Defendants."  When it is necessary to identify the Defendants separately, I will refer to Ann Freedman as "Freedman," to Knoedler Gallery, LLC d/b/a Knoedler & Company as "Knoedler," and to 8-31 Holdings, Inc. as "8-31 Holdings."

Two of the defendants—Knoedler and 8-31—are corporations.  A corporation acts through individuals who are its agents or employees.  Generally, a corporation is bound by (and liable for) any actions or statements taken by its agents or employees when those individuals are acting within the scope of their duties.  At all relevant times, Freedman served as Knoedler's President—and thus was an employee of Knoedler—and her actions and statements are binding on (and can establish liability of) Knoedler.  As for 8-31, I will instruct you later as to the law you must apply to determine whether 8-31 may be held liable for the conduct of either Freedman or Knoedler.


**Authority:**    *De Sole v. Knoedler Gallery, LLC*, No. 12 Civ. 2313 (PGG), Docket No. 118 (Second Amended Complaint); O'Malley § 103:31.

<u>**Plaintiffs' Proposed Instruction:**</u>
<u>**Plaintiffs' Claims**</u>

The Plaintiffs and Defendants have stipulated that 40 artworks that Glafira Rosales delivered to Knoedler are forgeries.  These artworks include the artwork the De Soles purchased from Knoedler—specifically, the purported "Mark Rothko" the De Soles acquired in 2004.  In accordance with my instruction as to stipulations, you are to take as an established fact that these artworks, including the work that the De Soles purchased from Knoedler, are forgeries.

Plaintiffs' claims arise from the fact that Knoedler sold the De Soles the fake "Rothko," and handled 39 other fake works from Rosales.  Plaintiffs assert that Defendants are liable for fraud under New York law by knowingly misrepresenting certain essential facts.  The Plaintiffs further assert the Defendants concealed essential facts they were obligated to disclose; that is called a claim for fraudulent concealment.  Later, I will explain the elements of the Plaintiffs' fraud and fraudulent concealment claims.  The Defendants deny each of these claims.

The Plaintiffs also assert that the Defendants violated several provisions of a federal statute named the Racketeer Influenced and Corrupt Organizations Act (also called "RICO"), by conducting an unlawful enterprise engaged in the sale of forged art to unwitting purchasers, including Plaintiffs, and by conspiring to violate the RICO law.  In a few minutes, I will explain each of the elements the Plaintiffs must prove to succeed on their RICO claims.  I note that the Defendants deny the RICO claims.

The De Soles also assert that Knoedler warranted that the work the De Soles' bought from Knoedler was an authentic Mark Rothko, and that Knoedler breached this warranty by selling a forged "Rothko."  In a few minutes, I will give you further instructions about the De Soles' claim for breach of warranty.  Knoedler denies this claim, and asserts that the De Soles did not bring their claim within the time limit that the law provides.  The De Soles assert there is an exception

to the law's time limit called "equitable estoppel," and that their delay in bringing this claim should be excused because Knoedler wrongfully concealed its prior fraud.

The De Soles also assert that their agreement to purchase the artwork from Knoedler should be rescinded, and the purchase price refunded to them, because there was a fundamental mistake about the nature of the agreement (including the purported authenticity of the work), either on the part of the De Soles alone (which is called a "unilateral mistake") or on the part of both the De Soles and Knoedler (which is called a "mutual mistake"). I will explain the elements of the claims of unilateral mistake and mutual mistake. Knoedler denies these claims, and asserts that the De Soles did not bring this claim within the applicable time limit. The De Soles, again, assert that any delay is excused by the exception called "equitable estoppel," because Knoedler concealed its prior fraud.

Finally, if you find that either Freedman or Knoedler (or both) are liable to Plaintiffs on any of the Plaintiffs' claims, you also will be asked to determine the liability of 8-31 Holdings. To find 8-31 liable, Plaintiffs need to establish either (1) that 8-31 should be held liable for Knoedler's conduct because 8-31 was Knoedler's "alter ego," or (2) that 8-31 should be held liable for Freedman's conduct as 8-31's employee under a rule called "respondeat superior." Later, I will explain the elements of the "alter ego" and "respondeat superior" claims.

You should be aware that you will be asked to render separate verdicts as to each Defendant and as to each claim by the De Soles. Accordingly, you will be required to separately consider the De Soles' claims against each Defendant, and what the evidence is as to each Defendant and as to each claim.


**Authority:**    *De Sole v. Knoedler Gallery, LLC*, No. 12 Civ. 2313 (PGG), Docket No. 118 (Second Amended Complaint).

**Plaintiffs' Proposed Instruction:**
**Fraud**

The De Soles seek to recover damages that they claim were caused by a fraud committed by Defendants Knoedler and Freedman.  To recover for fraud, Plaintiffs must prove by clear and convincing evidence (1) that Defendants made a material representation of fact; (2) that the representation was false; (3) that Defendants knew the representation was false or made it with reckless disregard for its truth or falsity; (4) that Defendants made the representation to induce Plaintiffs to rely upon it; (5) that Plaintiffs did justifiably rely upon it; and (6) that the Plaintiffs sustained damages.

Plaintiffs contend that Knoedler and Freedman made a number of knowing misrepresentations, each designed to induce the De Soles to purchase the works at issue.  These alleged misrepresentations include:  (1) that the painting the Plaintiffs purchased was an authentic work created by Mark Rothko; (2) that Knoedler and Freedman had personal knowledge of the "owner" of these works and of the family who purportedly purchased them "directly from" the artists in question; (3) that the works had a known provenance, namely, that David Herbert assisted the collector in purchasing it "directly from" Mark Rothko; and (4) that numerous experts had "authenticated" the work before the De Soles purchased it.

You will be able to review these and any other claimed misrepresentations as part of your deliberations according to the following rules of law.

**First Element:  Representation**

The first question you will be asked to decide is whether the Defendants made a material representation that Plaintiffs claim was fraudulent.

Such a representation does not have to be made directly; New York law recognizes that fraud may exist when a false representation is made to a third party, resulting in injury to the plaintiff, so long as the party making the representation intends or has reason to expect that its terms will be repeated, or its substance communicated, to the other.  A representation is "material" if a reasonable person would consider it of importance in making a decision.

If you find that the Defendants did not make the representations alleged to be fraudulent, you need proceed no further on the claim of fraud.

If, however, you find that the Defendants did make the representations, you must then consider the second element—whether these statements were false.

**Second Element:  Falsity**

If the representations were true, you need proceed no further on the claim of fraud.

If, however, you find that the representations were false (or if the parties' stipulations establish that the representations are false), you must next consider the third element—whether the Defendants knew the representations were false or made them with reckless disregard for their truth or falsity.

**Third Element:  Knowledge**

A person can be said to "know" a fact if they have an awareness of it.  A person is "reckless" if his or her conduct is highly unreasonable and represents an extreme departure from the standards of ordinary care, to the extent that the danger was either known to the defendant or so obvious that defendant must have been aware of it.  Here, the Defendants can be said to have

26

acted "recklessly" with respect to their representations to the De Soles if they were or should have been aware of the danger those representations were false.

If you do not find that the Defendants had knowledge that their representations were false or acted recklessly, you need proceed no further on the claim of fraud.

If, however, you find that the Defendants knew that the representations were false or acted recklessly, you must proceed to the fourth element, and decide whether the representations were made to induce the Plaintiffs to purchase the work.

**Fourth Element:  Intent To Induce Reliance**

Intent ordinarily may not be proved directly because there is no way of understanding or scrutinizing what is in someone else's mind.  But you may infer a defendant's intent from surrounding circumstances.  You may consider any statement made or act done or omitted by a defendant, and all other facts and circumstances indicating the defendant's state of mind.  You may consider it reasonable to draw inferences and find that the defendant intended the natural and probable consequences of his or her acts.

If you find that the statements were not made to induce Plaintiffs to purchase the works, you need proceed no further on the claim of fraud.

If, however, you find that the Defendants did make the representations to induce Plaintiffs to purchase the works, you must next consider the fifth element, and decide whether Plaintiffs were justified in relying on Defendants' misrepresentation.

**Fifth Element:  Reliance**

To determine whether the De Soles reasonably relied on the representations Defendants made to them about their painting, you should consider the entire context of the transaction between the De Soles and the Defendants, including the relative complexity and magnitude of

the transaction, the sophistication of the parties, any agreements or contracts between them, and the information available at the time.   It is for you to determine whether, based on the context as you find it, the De Soles acted reasonably in relying on the representations Defendants made in deciding to purchase their painting, or whether the De Soles had some duty to do something more or to inquire further about their painting before buying it.  You should consider the following factors in reaching that determination.

If you find that the representations Defendants made concerned matters that only the Defendants knew about, or that could have been discovered by the De Soles only with extraordinary effort or difficulty, you should find that the De Soles acted reasonably in relying on those representations without undertaking any separate investigation of their own.

Likewise, if you find that the De Soles took reasonable steps to protect themselves against deception, such as by requiring that the Defendants provide them a written assurance that the Defendants' representations about the authenticity and provenance of their painting was accurate, you should find that the De Soles were justified in accepting that assurance rather than making their own independent inquiry.

If, however, you find that the representations made by the Defendants did not concern matters that were solely within the Defendants' knowledge, and that the De Soles did not take reasonable steps to protect themselves against deception, you must consider whether the De Soles had the ability or opportunity to discover the truth about their painting but failed undertake the investigation necessary to do so.  Specifically, if you find that the De Soles had indisputable access to truth-revealing information, or that they were aware of suspicious events or information that suggested to the De Soles that the Defendants' representations were false, you may find that they had a duty to undertake a further inquiry before making their purchase.  If you find that the

De Soles had such a duty, you may consider all relevant circumstances, including the sophistication of the De Soles, in determining whether they properly discharged that duty.

If you find that the De Soles had a duty to inquire further concerning the Defendants' representations, and further find that they did not reasonably discharge that duty, you may conclude that it was not reasonable for them to rely on Defendants' misrepresentations.  In that event, you need proceed no further on the fraud claim.

If, however, you find that the De Soles were justified in relying on the Defendants' representations, you will then consider the sixth element—whether the Plaintiffs were damaged as a result of the fraud.

### Sixth Element:  Injury

If you find that the Plaintiffs sustained any monetary or other loss as a result of the fraudulent misrepresentation, your verdict must be for the Plaintiffs on the fraud claim, and you must then decide the actual monetary loss the Plaintiffs sustained.

We will save our discussion of damages until after I have discussed Plaintiffs' other claims.

**Authority:**     New York Pattern Jury Instructions § 3:20; *see De Sole v. Knoedler Gallery, LLC*, No. 12 Civ. 2313 (PGG), Docket No. 262 at 29 (S.D.N.Y. Sept. 30, 2013) [hereinafter "*De Sole* MSJ Opinion"]; *Merrill Lynch & Co. v. Allegheny Energy, Inc.*, 500 F.3d 171, 181 (2d Cir. 2007); *Emergent Capital Inv. Mgmt., LLC v. Stonepath Group, Inc.*, 343 F.3d 189, 195 (2d Cir. 2003); *Mallis v. Bankers Trust Co.*, 615 F.2d 68, 80-81 (2d Cir. 1980); *DDJ Mgm't, LLC v. Rhone Group LLC*, 15 N.Y.3d 147, 154 (2010); *see also STMicroelectronics, N.V. v. Credit Suisse Secs. (USA) LLC*, 648 F.3d 68, 80-81 (2d Cir. 2011); *Musalli Factory for Gold & Jewelry v. J.P. Morgan Chase, N.A.*, 261 F.R.D. 13, 22 (S.D.N.Y. 2009); *JP Morgan Chase Bank v. Winnick*, 350 F. Supp. 2d 393, 410 (S.D.N.Y. 2004).

**Defendants' Proposed Instruction:**
**Fraud**

Plaintiffs seek to recover damages that they claim were caused by a fraud committed by Defendants Knoedler and Freedman.  To recover for fraud, Plaintiffs must prove by clear and convincing evidence (1) that Defendants made a material representation of fact; (2) that the representation was false; (3) that Defendants knew the representation was false or made it with reckless disregard for its truth or falsity; (4) that Defendants made the representation to induce Plaintiffs to rely upon it; (5) that Plaintiffs did justifiably rely upon it; and (6) that the Plaintiffs sustained damages.

With respect to each defendant in this case, each plaintiff must prove each and all of the following elements to you, by clear and convincing evidence.

**Defendants' Additional Authority**: *De Sole v. Knoedler Gallery, LLC*, No. 12 Civ. 2313 (PGG), Docket No. 262 at 29 (S.D.N.Y. Sept. 30, 2013); *Koch v. Greenberg*, 2013 WL 1822926 (S.D.N.Y. April 15, 2013); New York Pattern Jury Instructions § 3:20, cmt. B.

**First Element:  Representation**

The Plaintiffs must prove by clear and convincing evidence that the Defendants made an affirmative representation. The representation need not have been made directly; New York law recognizes that fraud may exist when a false representation is made to a third party, resulting in injury to the plaintiff, so long as the maker of the representation intends or has reason to expect that its terms will be repeated, or its substance communicated to the other.  What is material is determined by whether a reasonable person would consider it of importance.

Statements of opinion or belief, whether as to matters of fact, are not representations and are not actionable unless expressly guaranteed, or unless defendant stands in a position of trust with respect to plaintiff.  If you find that the Defendants did not make the representations, you need proceed no further on the claim of fraud.

If you find that Defendants did make the representation, you must decide whether it was a representation of a fact or whether she merely gave an opinion. If you find that the representation was merely opinion rather than a statement of fact, Defendants are not liable because opinions are matters of judgment for which, under these circumstances, the law does not impose liability. If you find that Defendants' representation was no more than an expression of her opinion, you will proceed no further on the claim of fraud. If you find that Defendants did make a statement of fact rather than opinion, you will next decide whether the representation was true or false.

**Defendants' Additional Authority**: N.Y. Pattern Jury Instr.--Civil 3:20, cmt A; N.Y. Pattern Jury Instr.--Civil 3:20.1 Intentional Torts—Fraud And Deceit [Supplemental Instruction].

### Second Element:  Falsity

If, however, you find that the Defendants did make the representations, you must then consider whether these statements were false.  Unless falsity is proved the complaint must be dismissed.  Since reliance is not justified unless the fact represented is material, it follows that the representation must be shown to have been false in a material and substantial respect.   If the representations were true, you need proceed no further on the claim of fraud.

Defendant's Authority: N.Y. Pattern Jury Instr.--Civil 3:20, cmt B.

### Third Element:  Knowledge

If, however, you find that the representations were false (or if the parties' stipulations establish that the representations are false), you must next decide whether the Defendants knew the representations were false or made them with reckless disregard for their truth or falsity.

Knowingly is defined as having knowledge or awareness of a material fact. Recklessly is defined as acting with a conscious awareness of a material fact, while actively ignoring the potential consequences of one's actions.

Reckless is defined as, at the least, conduct which is highly unreasonable and represents an extreme departure from the standards of ordinary care to the extent that the danger was either known to the defendant or so obvious that defendant must have been aware of it. 'Reckless disregard for the truth' means conscious recklessness, defined as a state of mind approximating actual intent, and not merely a heightened form of negligence.  Reckless conduct is much more than mere negligence: it is a gross deviation from what a reasonable person would do.

   If you do not find that the Defendants had knowledge that their representations were false or acted recklessly, you need proceed no further on the claim of fraud.

**Defendants' Additional Authority**: *In re Wachovia Equity Sec. Litig.*, 753 F. Supp. 2d 326, 351 (S.D.N.Y. 2011) (citing *S. Cherry St., LLC v. Hennessee Grp. LLC*, 573 F.3d 98, 109 (2d Cir. 2009)); *Koch v. Greenberg*, 2013 WL 1822926 (S.D.N.Y. April 15, 2013); RECKLESS, Black's Law Dictionary (10th ed. 2014).

### Fourth Element:  Intent To Defraud

If, however, you find that the Defendants knew that the representations were false or acted recklessly, you must next decide whether the representations were made to induce the Plaintiffs to purchase the works.

The intent to defraud, or scienter, is defined as the making of false representations known to be untrue, or false misrepresentations made with reckless indifference to error, with the specific intent to cause the other party to act in reliance upon them.

Intent ordinarily may not be proved directly because there is no way of understanding or scrutinizing what is in someone else's mind.  But you may infer a defendant's intent from surrounding circumstances.  You may consider any statement made or act done or omitted by a defendant, and all other facts and circumstances indicating the defendant's state of mind.  You may consider it reasonable to draw inferences and find that the defendant intended the natural and probable consequences of his or her acts.  To establish scienter in a fraud case, Plaintiffs

must prove that Defendants acted with an intent to deceive—not merely innocently or negligently. Thus, Plaintiffs must put forth proof of intentional wrongdoing or extreme recklessness.  For extreme recklessness, the danger of deception must be such that the actor was aware of it and consciously disregarded it. In order to prove recklessness, the Plaintiffs must offer strong circumstantial evidence of defendants' conscious misbehavior or recklessness. Indeed, undisputed evidence that defendants were actually harmed by their alleged fraud often negates an inference of scienter.

Even if Plaintiffs presented evidence that could give rise to an inference in their favor, Defendants may rebut that inference with affirmative evidence of good faith. Negligence, whatever its grade, does not include a wrongful purpose and, therefore, is not fraud. When the maker of the representation has reasonable basis for belief in the truth of the statement, there is no intent to deceive.

If you find that the statements were not made to induce Plaintiffs to purchase the works, you need proceed no further on the claim of fraud.

**Defendants' Additional Authority**: N.Y.Prac., New York Law of Torts § 1:71; *In re Fed. Nat. Mortgage Ass'n Sec., Derivative, & ERISA Litig.*, 898 F. Supp. 2d 176, 182 (D.D.C. 2012); *Kalnit v. Eichler*, 264 F.3d 131, 142 (2d Cir. 2001); *Schuster v. Symmetricon, Inc.*, No. C9420024RMW, 2000 WL 33115909, at *7 (N.D. Cal. Aug. 1, 2000) *aff'd* 35 F. App'x 705 (9th Cir. 2002)..

### Fifth Element:  Reliance

If, however, you find that the Defendants did make the representations to induce Plaintiffs to purchase the works, you must next decide whether Plaintiffs were justified in relying on the representation.

Reliance is a necessary element of a cause of action for fraud. It is not necessary for the representation to have been the exclusive cause of plaintiff's action or non-action; it is sufficient that the representation was a substantial factor in inducing plaintiff to act.  In assessing whether

reliance on allegedly fraudulent misrepresentations is reasonable or justifiable, New York takes a contextual view, focusing on the level of sophistication of the parties, the relationship between them, and the information available at the time of the operative decision.

In determining whether justifiable reliance existed, circumstances to be considered include: a) the knowledge and experience of the person claiming to have been defrauded, b) the existence of a relationship of trust or confidence or superior knowledge or means of knowledge on the part of the person making the representation, and c) the disability on the part of the person claiming to have been deceived.  Information available to and known by the plaintiffs' advisors, and their advisors' sophistication, is imputed to the plaintiffs in determining whether reliance was justified.

The reliance must be justifiable in the sense that the party claiming to have been defrauded was justified both in believing the representation and in acting upon it.  If the plaintiff has the means of knowing, by the exercise of ordinary intelligence, the truth, or the real quality of the subject of the representation, he must make use of those means, or he will not be heard to complain that he was induced to enter into the transaction by misrepresentations.  The law is that a party will not be heard to complain that it has been defrauded when it is evident that its own lack of due care was responsible for its predicament.

New York law imposes an affirmative duty on sophisticated persons to protect themselves from misrepresentations made during acquisitions by investigating the details of what they are acquiring.  New York law generally requires a plaintiff to employ such wit and experience as he has to look into an investment when the circumstances would alert such an investor to pause and inquire.

Justification for acting on the representation does not exist if the fact represented is not material.  Further, reliance is not justified when plaintiffs reasonably could have discovered the true facts with due diligence.  Furthermore, a heightened degree of diligence is required where the victim of fraud had hints of its falsity.  Even if some level of investigation is done, a failure to investigate fully can bar a finding of reasonable reliance.

Defendants claim that the Plaintiffs did not conduct a sufficient investigation. The Plaintiffs argue that they did enough and did reasonably rely. Your job is to determine whether the Plaintiffs engaged in enough due diligence relative to their net worth and the resources potentially at their disposal to satisfy their burden of diligently asking questions.

If you find that Plaintiffs were not justified in relying on Defendants' representations, then you need proceed no further on the fraud claims.

**Defendants' Additional Authority**: N.Y. Pattern Jury Instr.--Civil 3:20, cmt. D; *JP Morgan Chase Bank v. Winnick*, 350 F. Supp. 2d 393, 406 (S.D.N.Y. 2004); *Levin v. Gallery 63 Antiques Corp.*, No. CV 1504 KMK, 2006 WL 2802008, at *9 (S.D.N.Y Sept. 28, 2006); *TeeVee Toons, Inc. v. Gerhard Schubert GmbH*, No. 00 Civ. 5189(RCC), 2006 WL 2463537, at *15-16 (S.D.N.Y. Aug. 23, 2006); see also *Granite Partners, L.P. v. Bear, Stearns & Co.*, 17 F.Supp.2d 275, 291 (S.D.N.Y 1998); *Schlaifer Nance & Co. v. Estate of Warhol*, 119 F.3d 91, 98 (2d Cir. 1997); *Global Minerals & Metals Corp. v. Holme*, 35 A.D.3d 93, 100, 824 N.Y.S.2d 210, 215 (2006); *Crigger v. Fahnestock & Co.*, 443 F.3d 230, 235 (2d Cir. 2006).

### Sixth Element:  Injury

If, however, you find that the Plaintiffs were justified in relying on the Defendants' representations you will then consider whether the Plaintiffs were damaged as a result of the fraud.

If you find that the Plaintiffs did sustain any monetary or other loss as a result of the fraudulent misrepresentation, your verdict must be for the Plaintiffs on the fraud claim, and you must then decide the actual monetary loss the Plaintiffs sustained.  We will save our discussion of damages until after I have discussed Plaintiffs' other claims.

**Defendants' Additional Authority:** New York Pattern Jury Instructions § 3:20; *see De Sole v. Knoedler Gallery, LLC*, No. 12 Civ. 2313 (PGG), Docket No. 262 at 29 (S.D.N.Y. Sept. 30, 2013) [hereinafter "*De Sole* MSJ Opinion"]; *Musalli Factory for Gold & Jewelry v. J.P. Morgan Chase, N.A.*, 261 F.R.D. 13, 22 (S.D.N.Y. 2009); *JP Morgan Chase Bank v. Winnick*, 350 F. Supp. 2d 393, 410 (S.D.N.Y. 2004); *United States v. Whitman*, No. 1:12-cr-125 (JSR), Docket No. 102 at 17 (Jury Instructions), *use of jury instruction on conscious avoidance affirmed by United States v. Whitman*, 555 Fed. Appx. 98, 104-06 (2d Cir. 2014).

### Plaintiffs' Proposed Instruction:
### Fraudulent Concealment

The elements of fraud that I just explained govern Plaintiffs' claims that relate to affirmative misrepresentations of fact. In addition, the Plaintiffs assert that the Defendants are liable for fraudulently concealing certain facts.

A defendant can be liable for fraud for concealing or failing to disclose facts when (1) the defendant had a duty to disclose material facts to the plaintiff; (2) the defendant had knowledge of material facts; (3) the defendant failed to disclose those material facts; (4) the defendant knew that the plaintiff was acting under a mistaken belief as to a material fact, or acted recklessly without regard as to whether the plaintiff was acting under a mistaken belief; (5) the plaintiff justifiably relied on the defendant; and (6) the plaintiff sustained damages as a result of the defendant's concealment. To prevail on a fraudulent concealment claim, the Plaintiffs must prove each of these elements by clear and convincing evidence. Several of these elements are similar to the elements of the fraud claim I just discussed, and your consideration of those elements will follow some of the same legal rules.

Among other things, the Plaintiffs contend that the Defendants are liable for fraudulent concealment to the extent that (a) Knoedler and Freedman told Plaintiffs about the Herbert provenance, but failed to reveal the IFAR Report and that, after it had issued, Knoedler and Freedman had changed the earlier provenance story for the Rosales works—specifically by changing the name of the "advisor" who supposedly assisted "Mr. X" in acquiring the collection; (b) Knoedler and Freedman had no real evidence of the provenance story—or of any fact relating to the work they sold to Plaintiffs; (c) Knoedler and Freedman did not reveal that Mr. X's purported "collection" included at least 20 works that Knoedler already had handled and that every single one of those works was undocumented; (d) despite making statements about "Mr. X"

and his son, Knoedler and Freedman failed to disclose that they had no first-hand knowledge of these "clients," that the true intermediary was Rosales and that she was someone they knew nothing about; and (e) Knoedler and Freedman did not disclose that works from this source had been questioned before by the Diebenkorn family.

### First Element:  Duty to Disclose Material Facts

A "duty to disclose material facts" exists where one party possesses superior knowledge, not readily available to the other, such that the transaction without revealing that knowledge is inherently unfair or where one party has partially disclosed facts in a way that is misleading.

If you find that the Defendants did not have a duty to disclose material facts, you need proceed no further on the claim for fraudulent concealment.

If, however, you find that the Defendants did have a duty to disclose material facts, you must consider the second element—whether the Defendants had knowledge of material facts relating to the Plaintiffs' purchase of artworks.

### Second Element:  Knowledge of Material Facts

What is material is determined by whether a reasonable person would consider it of importance.

If you find that the Defendants did not have knowledge of material facts relating to the Plaintiffs' purchase, you need proceed no further on the claim for fraudulent concealment.

If, however, you find that the Defendants did have knowledge of material facts, you must consider the third element—whether the Defendants failed to disclose those facts.

### Third Element:  Failure to Disclose

If you find that the Defendants did not fail to disclose material facts, you need proceed no further on the claim for fraudulent concealment.

If, however, you find that the Defendants failed to disclose material facts, you must consider the fourth element—whether the Defendants failed to disclose those facts in order to induce the Plaintiffs to purchase the work.

### Fourth Element:  Intent to Induce Reliance

The standards that you should use to make this determination are similar to those you will consider in determining the Fourth Element of the Plaintiffs' fraud claims, which I already explained, and to which you should refer.  In short, you must infer the Defendants' intent to induce reliance from surrounding circumstances.

If you find that the Defendants did not omit certain facts to induce Plaintiffs to purchase the work, you need proceed no further on the claims of fraudulent concealment.

If, however, you find that the Defendants intended to induce the Plaintiffs to purchase the work, you must consider the fifth element—whether the Plaintiffs were justified in relying on the Plaintiffs in deciding to purchase the works.

### Fifth Element:  Reliance

The standards that you should use to make this determination are similar to those you will consider in determining the Fifth Element of the Plaintiffs' fraud claims, which I already explained, and to which you should refer.  In short, whether the Plaintiffs' reliance was reasonable depends on the entire context of the transaction and whether the fact that Defendants failed to disclose was one that a reasonable person would believe and consider important in deciding whether to purchase an artwork.

If you find that the Plaintiffs were not justified in relying on the Defendants in deciding to purchase the work, you need proceed no further on the fraudulent concealment claims.

If, however, you find that the Plaintiffs were justified in relying on the Defendants in deciding to purchase the work, you will then consider the sixth element—whether the Plaintiffs were damaged as a result of the Plaintiffs' fraudulent concealment.

### Sixth Element:  Damages

If you find that the Plaintiffs sustained any monetary or other loss as a result of the fraudulent misrepresentation, your verdict must be for the Plaintiffs on the fraudulent concealment claim, and you must then decide the actual monetary loss the Plaintiffs sustained.

Again, we will save our discussion of damages until after I have discussed Plaintiffs' other claims.

**Authority:**     New York Pattern Jury Instructions § 3:20 nn. 3-4; *De Sole v. Knoedler Gallery, LLC*, No. 12 Civ. 2313 (PGG), Docket No. 319 at 26-27 (S.D.N.Y. Sept. 30, 2015) [hereinafter "*De Sole* Second MTD Opinion"]; *Beneficial Commercial Corp. v. Murray Glick Datsun, Inc.*, 601 F. Supp. 770, 773 (S.D.N.Y. 1985); *Leasing Serv. Corp. v. Broetje*, 545 F. Supp. 362, 366 (S.D.N.Y. 1982).

**Defendants' Proposed Instruction:**
**Fraudulent Concealment**

The elements of a fraudulent concealment claim under New York law are: (1) a duty to disclose material facts; (2) knowledge of material facts by a party bound to make such disclosures; (3) failure to discharge a duty to disclose; (4) scienter; (5) reliance; and (6) damages. In order to prevail on a fraudulent concealment claim, each Plaintiff must prove by clear and convincing evidence each and all of the elements.

Conduct that amounts to active concealment can give rise to an action for fraud, but only upon a showing that defendant thwarted Plaintiffs' efforts to perform the necessary due diligence. A claim for fraudulent concealment requires Plaintiffs to prove that Defendants had a duty to disclose material information. Concealment, with intent to defraud, of facts which one is duty bound to disclose is of the same legal effect and significance as affirmative misrepresentation.

**Defendants' Additional Authority**: *De Sole v. Knoedler Gallery, LLC*, No. 12 Civ. 2313 (PGG), Docket No. 319 at 29-30 (S.D.N.Y. Sept. 30, 2015); N.Y. Pattern Jury Instr.--Civil 3:20, cmt. A 3.

**First Element:  Duty to Disclose**

The duty to disclose arises when a fiduciary or confidential relationship exists between Plaintiffs and Defendants. Even in the absence of a fiduciary relationship, a duty to disclose may arise when one party's superior knowledge of essential facts renders nondisclosure inherently unfair. The duty to disclose arises only when that party has some reason to believe that the information is material and germane to the transaction.  A person is not required to disclose a fact merely because a reasonable investor would very much like to know that fact.  Rather, an omission is actionable only when the person is subject to a duty to disclose the omitted fact.

A "duty to disclose material facts" may exist where one party possesses superior knowledge, not readily available to the other, and knows that the other is acting on the basis of mistaken knowledge, or where one party has partially disclosed facts in way that is misleading.  A duty to disclose arises where 1) one party has superior knowledge of certain information; 2) that information is not readily available to the other party; and 3) the first party knows that the second party is acting on the basis of mistaken knowledge.  The alleged concealed fact must be a material fact. Generally, what is material is determined by whether a reasonable person would consider it of importance.

**Defendants' Additional Authority**: *De Sole v. Knoedler Gallery, LLC*, No. 12 Civ. 2313 (PGG), Docket No. 319 at 29-30 (S.D.N.Y. Sept. 30, 2015); N.Y. Pattern Jury Instr.--Civil 3:20, cmt. A; *In re Optionable Sec. Litig.*, 577 F. Supp. 2d 681, 692 (S.D.N.Y. 2008); *UniCredito Italiano SPA v. JPMorgan Chase Bank*, 288 F. Supp. 2d 485, 497 (S.D.N.Y. 2003).

### Second Element: Knowledge of Material Facts

If you find that Plaintiffs proved that Defendants' had a duty to disclose material facts, you must then decide whether the Defendants had knowledge of the material facts.  This element is to be judged in a similar manner as the Knowledge element that I previously discussed with you when describing Fraud by affirmative representation.  If you find that the Defendants knew of the material facts that they had a duty to disclose, you will then decide whether Defendants failed to discharge that duty.

### Third Element: Non-Disclosure

If you find that Plaintiffs proved that Defendants had a duty to disclose material facts and knowledge of those material facts, you must then decide whether the Defendants failed to discharge that duty to disclose.

**Fourth Element:  Intent To Defraud**

If you find that Plaintiffs proved that Defendants failed to discharge a duty to disclose a material fact, you must then decide whether the Defendants' intended to defraud the Plaintiffs at the time that they concealed that fact.  The intent to defraud, or scienter, element is same as I previously discussed with you when describing Fraud by affirmative representation.

To establish scienter in a fraud case, a plaintiff must prove that the defendant acted with an intent to deceive—not merely innocently or negligently.  Thus, plaintiffs must put forth proof of intentional wrongdoing or extreme recklessness.  For extreme recklessness, the danger of deception must be such that the 'actor was aware of it and consciously disregarded it.

**Defendants' Additional Authority**: *In re Fed. Nat. Mortgage Ass'n Sec., Derivative, & ERISA Litig.*, 898 F. Supp. 2d 176, 182 (D.D.C. 2012)

**Fifth Element: Reliance**

If you find that Plaintiffs proved that Defendants failed to discharge a duty to disclose a material fact and intended to defraud the Plaintiffs by doing so, you must then decide whether the Plaintiffs were justified in relying on Defendants.  The reliance element is substantially the same as I previously discussed with you when describing Fraud by affirmative representation.

In assessing whether reliance on the omissions of material facts is reasonable or justifiable, New York takes a contextual view, focusing on the level of sophistication of the parties, the relationship between them, and the information available at the time of the operative decision. Information available to and known by the plaintiffs' advisors, and their advisors' sophistication, is imputed to the plaintiffs in determining whether reliance was justified.

Defendants claim that the plaintiffs did not conduct a sufficient investigation. The Plaintiffs argue that they did enough and did reasonably rely. Your job is to determine whether

the plaintiffs engaged in enough due diligence relative to their net worth and the resources

potentially at their disposal to satisfy their burden of diligently asking questions.  The Plaintiffs

did not justifiably rely upon a Defendants' omissions of material facts if the fraud would have

been discoverable upon the exercise of due diligence by the plaintiff.

**Defendants' Additional Authority**: N.Y. Pattern Jury Instr.--Civil 3:20, cmt. E; *Crigger v. Fahnestock & Co.*, 443 F.3d 230, 236 (2d Cir. 2006); *Levin v. Gallery 63 Antiques Corp.*, No. 04 CV 1504 KMK, 2006 WL 2802008, at *8 (S.D.N.Y. Sept. 28, 2006); *TeeVee Toons, Inc. v. Gerhard Schubert GmbH*, No. 00 Civ. 5189(RCC), 2006 WL 2463537, at *15-16 (S.D.N.Y. Aug. 23, 2006); *Granite Partners, L.P. v. Bear, Stearns & Co.*, 17 F.Supp.2d 275, 291 (S.D.N.Y 1998).

## <u>Sixth Element: Damages</u>

If you find that the Plaintiffs reasonably relied on Defendants' omissions of material facts

you must then determine if that plaintiffs were damaged as a result of such reliance.  Injury is an

essential element of the cause of action.  The Plaintiffs must prove that the omission of material

facts directly and proximately caused Plaintiffs' damages.

**Defendants' Additional Authority**: N.Y. Pattern Jury Instr.--Civil 3:20, cmt. E; <u>Crigger v. Fahnestock & Co.</u>, 443 F.3d 230, 235 (2d Cir. 2006).

**Joint Instruction:**
### RICO:  "Racketeering" and "Racketeering Activity"

The Plaintiffs bring claims under the Racketeer Influenced and Corrupt Organizations Act, more commonly known as "RICO" or "the RICO law."

Before going any further, let me explain the word "racketeering."  You should consider the term "racketeering" only in the precise way that I will define it for you in these instructions. By using the word "racketeer" in the RICO law, Congress did not mean that the Plaintiffs must prove that any one of the Defendants is a "racketeer" or a member of what is commonly referred to as "organized crime" to recover damages.  I will explain to you what the Plaintiffs need to prove under the RICO law, and you should not in any way be influenced by any prior understandings that you may have of the term "racketeering."

"Racketeering activity" is the term used in the law to designate conduct that may constitute violations under the RICO statute.  On occasion, these instructions may alternatively refer to racketeering activity as a "racketeering act" or as a "predicate act."  As it pertains to this case, the law defines racketeering activity and predicate acts to include conduct such as mail fraud, wire fraud, and the false labeling of visual art.

**Authority:**     O'Malley §§ 161:1, 161:2, 161:46; 18 U.S.C. § 1961(1).

**Joint Instruction:**
**RICO:  Elements of a Section 1962(c) Claim**

To succeed on their RICO claims, the Plaintiffs must prove that the Defendants violated the RICO statute, that the Plaintiffs suffered an injury, and that the injury was caused by the Defendants' violation.  I will instruct you on the "injury" and "causation" elements in a few minutes.

The Plaintiffs allege that the Defendants violated Section 1962(c) of the RICO statute, which provides as follows:

> "It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt."

Thus, to prove a violation of Section 1962(c), the Plaintiffs must prove each of the following five elements by the preponderance of the evidence:

(1) that an enterprise existed as alleged in the complaint;

(2) that the enterprise affected interstate or foreign commerce;

(3) that the defendant was associated with, or employed by, the enterprise;

(4) that the defendant engaged in a "pattern of "racketeering activity"; and

(5) that the defendant conducted, or participated in, the conduct of the enterprise through that pattern of racketeering activity.

**Authority:**    18 U.S.C. § 1962(c); *De Sole* Second MTD Opinion at 14; *Moss v. Morgan Stanley, Inc.*, 719 F.2d 5, 17 (2d Cir. 1983); Modern Federal Jury Instructions ¶ 84.23 Civil Actions Based on Violations of 18 U.S.C. 1962(c); Pattern Civ. Jury Instr. 11th Cir. 7.3 (2013); *Salinas v. United States*, 522 U.S. 52, 62, 118 S. Ct. 469, 476, 139 L. Ed. 2d 352 (1997); O'Malley § 161:22 Notes.

**Joint Instruction:**
**RICO:  First Element—Enterprise**

The term "enterprise" as used in the RICO law, means any individual, partnership, corporation, association or other legal entity, or any group of individuals "associated in fact," although not a legal entity.  Here, Plaintiffs allege that each of the Defendants, and others, were "associated in fact" to together form an enterprise that had, as its essential purpose, the sale of forged artworks.

To find that an association-in-fact enterprise existed, you must find that there was an ongoing organization, formal or informal, and that the members of this enterprise functioned as a unit for a common purpose of engaging in a course of conduct over a period of time.  This group of people, in addition to having a common purpose, must have an ongoing organization, either formal or informal, and it must have personnel who function as a continuing unit.  This group of people does not have to be a legally recognized entity, such as a partnership or corporation.  This group may be organized for a legitimate and lawful purpose, or it may be organized for an unlawful purpose.  Here, Plaintiffs allege that the defendants and others (specifically, Knoedler, Freedman, Rosales, and Bergantinos Diaz) were together associated in fact to form an enterprise for the common purpose of selling forged art.

**Authority:**    O'Malley §§ 161:41; 18 U.S.C. § 1961(4); Modern Federal Jury Instructions ¶ 84.24 Civil Actions Based on Violations of 18 U.S.C. 1962(c); *U.S. v. Eppolito*, 543 F.3d 25, 49 (2d Cir. 2008).

**Plaintiffs' Proposed Instruction:**
**RICO: Second Element—Effect on Interstate Commerce**

An enterprise "affects interstate or foreign commerce" if it either engages in or pursues activities that affect, or could potentially affect, commerce between the states or between the states and foreign countries.

The Plaintiffs have asserted that the numerous acts of mail and wire fraud they allege affected interstate commerce because Knoedler, Freedman, and others furthered the scheme by communicating by wire and mail with purchasers in many different states and countries and also received and sent payments by wire to and from many different states and countries.

**Authority:**     O'Malley § 161:42.

**<u>Defendants' Proposed Instruction:</u>**
**<u>RICO:  Second Element—Effect on Interstate Commerce</u>**

An enterprise "affects interstate or foreign commerce" if it either engages in or pursues activities that affect, or could potentially affect, commerce between the states or between the states and foreign countries.

**Plaintiffs' Proposed Instruction:**
**RICO: Third Element—Association with the Enterprise**

The third element that the Plaintiffs must prove is that the Defendant was associated with, or employed by, the enterprise.

It is not required that the defendant have been employed by, or associated with, the enterprise for the entire time that the enterprise existed. A person is "employed by or associated with" an enterprise if he or she has at least a minimal association with the enterprise. That is, a defendant must know something about the enterprise's activities, as they relate to the racketeering activity, but it is not necessary that the defendant be aware of all racketeering activities of each of the participants in the enterprise. One may be employed by or associated with an enterprise even if he or she holds no official position and has no formal connection with it.

**Authority:**    O'Malley § 161.43.

**Defendants' Proposed Instruction:**
**RICO: Third Element—Association with the Enterprise**

The third element that the plaintiffs must prove is that the defendant was associated with, or employed by, the enterprise.

It is not required that the defendant have been employed by, or associated with, the enterprise for the entire time that the enterprise existed.  It is required, however, that the plaintiffs prove, by a preponderance of the evidence, that at some time during the period indicated in the complaint, the defendant in question was employed by, or associated with, the enterprise.

A person cannot be associated with, or employed by, an enterprise, if he or she does not know of the enterprise's existence or the nature of its activities.  Thus, in order to prove this element, the plaintiff must prove, by a preponderance of the evidence, that the defendant was connected to the enterprise in some meaningful way and that the defendant knew of the existence of the enterprise and of the general nature of its activities.

**Defendants' Additional Authority**: Modern Federal Jury Instructions ¶ 84.24 Civil Actions Based on Violations of 18 U.S.C. 1962(c); Pattern Civ. Jury Instr. 11th Cir. 7.3 (2013); *U.S. v. Parise*, 159 F.3d (3d Cir. 1998).

**Plaintiffs' Proposed Instruction:**
**RICO:  Fourth Element—Engaging in Pattern of Racketeering Activity**

Under RICO, a "pattern of racketeering activity" is defined as at least two acts of racketeering activity—that is, two "predicate acts"—that occur within ten years of each other, that are related to each other, and that amount to a threat of continued criminal activity.

The two predicate acts need not be the same type of predicate act, and are considered "related" as long as they have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events.

The requirement that the acts of racketeering activity "amount to a threat of continued criminal activity" can by established by a closed period of repeated conduct that took place in the past.  Thus, where the alleged conspiracy existed in the past, a "threat of continued criminal activity" is demonstrated if the defendants engaged in a series of related acts of racketeering activity over at least a two-year period.

In this case, the Plaintiffs allege that the required "predicate acts" are multiple instances of mail fraud, wire fraud, and the use of false labels in the sale or attempted sale of visual art, all of which constitute "racketeering activity" under the RICO statute, and which occurred over a period of at least two years.

**Authority:**     O'Malley § 161:47; 18 U.S.C. § 1961(5); *De Sole* First MTD Opinion at 38 (discussing concept of "closed-ended continuity" as a means of establishing a threat of continued criminal activity); *HJ, Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229, 239, 241-42 (1989).

**Defendants' Proposed Instruction:**
**RICO:  Fourth Element—Engaging in Pattern of Racketeering Activity**

Under RICO, a "pattern of racketeering activity" is defined as at least two acts of racketeering activity—that is, two "predicate acts"—that occur within ten years of each other and that are related to each other.

While the two acts of racketeering activity need not be of the same kind, you must find by a preponderance of the evidence that the two acts of racketeering activity occurred within ten years of each other and that the acts of racketeering are related to each other and that they pose a threat of continued criminal activity.  It is not sufficient for the plaintiff to prove only that the defendant committed two of the racketeering acts I have just described.  A series of disconnected acts does not constitute a pattern, and a series of disconnected crimes does not constitute a pattern of racketeering activity, nor do they amount to, or pose a threat of, continued racketeering activity.

To prove that the acts of racketeering are related, the plaintiffs must prove that the acts had the same or similar purposes, results, participants, victims, or methods of commission, or that they are otherwise interrelated by distinguishing characteristics and are not isolated events.

To prove that the racketeering acts pose a threat of continued racketeering activity, the plaintiff must establish (1) the acts are part of a long-term association that exists for criminal purposes, (2) the acts are a regular way of conducting the defendant's ongoing legitimate business, or (3) the acts are a regular way of conducting or participating in an ongoing and legitimate RICO enterprise.

**Defendants' Additional Authority**: 3B Fed. Jury Prac. & Instr. § 161:47 (6th ed.); Modern Federal Jury Instructions ¶84.27 Civil Actions Based on Violations of 18 U.S.C. 1962(c).

**Plaintiffs' Proposed Instruction:**
**RICO:  Fourth Element—Predicate Acts of Mail Fraud and Wire Fraud**

To establish the predicate acts of mail fraud or wire fraud, the Plaintiffs must prove (1) the existence of a fraudulent scheme and (2) the Defendants' use of mail communications or wire communications for the purposes of executing the scheme.  Such mail communications include communications through the U.S. Postal Service, or through other interstate carriers such as FedEx, DHL, or UPS.  Wire communications include phone calls, e-mails, faxes, or wire transfers of money.

Here, the Plaintiffs have alleged a fraudulent scheme in which Freedman, Knoedler, Rosales, Bergantinos Diaz and others participated to sell the forged artworks that Rosales delivered to Knoedler.

Further, the Plaintiffs have asserted the existence of dozens of mail and wire communications in furtherance of the enterprise, such as providing invoices by mail to the Plaintiffs and other purchasers, sending letters to the De Soles, receiving payments from the Plaintiffs and other purchasers by wire, and making payments to acquire the works by wire.  There is no need to find that a particular Defendant sent or received one of these mail or wire communications to find that Defendant liable under the RICO statute.  Mail fraud may be established without proof that a defendant personally did every act constituting mail fraud.  The law recognizes that anything a person can do for himself may also be accomplished by another acting at that person's direction, or as his or her agent, or by another in a joint effort.

Also, a communication can be in furtherance of the enterprise even if the Plaintiffs themselves did not receive the communication, and even if the communication does not contain any fraudulent information in and of itself.

**Authority:**     O'Malley § 161:265; *see also De Sole* Second MTD Opinion at 15; *De Sole v. Knoedler Gallery, LLC*, No. 12 Civ. 2313 (PGG), Docket No. 117 at 41 (S.D.N.Y. Sept. 30, 2013) [hereinafter "*De Sole* First MTD Opinion"]; *U.S. v. Bortnovsky*, 879 F.2d 30, 36 (2d Cir. 1989).

**Defendants' Proposed Instruction:**
**RICO:  Fourth Element—Predicate Acts of Mail Fraud and Wire Fraud**

To establish the predicate acts of mail fraud or wire fraud, the Plaintiffs must prove (1) the existence of a fraudulent scheme and (2) the Defendants' use of mail communications or wire communications for the purposes of executing the scheme.  Such mail communications include communications through the U.S. Postal Service, or through other interstate carriers such as FedEx, DHL, or UPS.   Wire communications include phone calls, e-mails, faxes, or wire transfers of money.

Mail fraud may be established without proof that a defendant personally did every act constituting mail fraud.  The law recognizes that anything a person can do for himself may also be accomplished by another acting at that person's direction, or as his or her agent, or by another in a joint effort.

Also, a communication can be in furtherance of the enterprise even if the Plaintiffs themselves did not receive the communication, and even if the communication does not contain any fraudulent information in and of itself.

**Defendants' Additional Authority**: 3B Fed. Jury Prac. & Instr. § 161:47 (6th ed.); Modern Federal Jury Instructions ¶84.27 Civil Actions Based on Violations of 18 U.S.C. 1962(c).

**Plaintiffs' Proposed Instruction:**
**RICO:  Fifth Element—Participation in the Enterprise**

The fifth element that the Plaintiffs must prove is that the Defendant conducted, or participated in, the conduct of the enterprise's affairs through a pattern of racketeering activity.

To conduct or participate in the conduct of the enterprise means that the Defendant must have played some part in the operation or management of the enterprise.  The Plaintiffs are not required to prove that the Defendant was a member of upper management.  An enterprise is operated not only by those in upper management, but also by those lower down in the enterprise who act under direction of upper management.

**Authority:**     O'Malley § 161:43; *Reves v. Ernst & Young*, 507 U.S. 170, 178 (1993).

**Defendants' Proposed Instruction:**
**RICO:  Fifth Element—Participation in the Enterprise**

The fifth element that the plaintiffs must prove is that the defendant conducted, or participated in, the conduct of the enterprise's affairs through a pattern of racketeering activity.

To conduct or participate in the conduct of the enterprise means that the defendant must have played some part in the operation or management of the enterprise. The plaintiffs are not required to prove that the defendant was a member of upper management. An enterprise is operated not only by those in upper management, but also by those lower down in the enterprise who act under direction of upper management.

In addition to proving that the defendant played some part in the operation or management of the enterprise, the plaintiffs must also prove that there is some meaningful connection between the defendant's illegal acts and the affairs of the enterprise.  To satisfy this part of the element, the plaintiffs must establish either (1) that the defendant's position in the enterprise facilitated the commission of those illegal acts and that the racketeering acts had some impact or effect on the enterprise, (2) that the acts were in some way related to the affairs of the enterprise, or (3) that the defendant was able to commit the acts by virtue of his or her position, or involvement in, the affairs of the enterprise.


**Defendants' Additional Authority**: Modern Federal Jury Instructions ¶ 84.29 Civil Actions Based on Violations of 18 U.S.C. 1962(c); *Reves v. Ernst & Young*, 507 U.S. 170, 178 (1993).

**Plaintiffs' Proposed Instruction:**
**RICO:  Elements of a Section 1962(d) Claim for Conspiracy**

In addition to asserting that the Defendants violated Section 1962(c) of RICO, the

Plaintiffs also assert that the Defendants violated Section 1962(d) of RICO by conspiring to

violate Section 1962(c).  A defendant can be liable for both a RICO violation under Section

1962(c) and a RICO conspiracy under Section 1962(d).

To find that one or more Defendants participated in a conspiracy, you must find, by a

preponderance of the evidence: (1) the existence of a RICO violation, according to the law I have

already described; (2) that the Defendant agreed to join, and knowingly participated in, that

conspiracy; and (3) that the Defendant acted in furtherance of the conspiracy in some manner.

A "conspiracy" is an agreement among two or more persons to achieve an unlawful

object.  To show a conspiratorial agreement, the plaintiff is not required to prove that two or more

people entered into a solemn pact, but only that two or more persons explicitly or implicitly came

to an understanding to achieve the specified unlawful object, whether they were successful or not.

The defendant must have understood that the enterprise would include the commission of

predicate acts, but there is no requirement that the defendant committed or agreed to commit those

predicate acts him or herself.  The defendant also need not have been fully-informed about his or

her co-conspirators' specific wrongful acts, provided that he or she agreed to participate in the

broader criminal conspiracy, and understood the general contours of the conspiracy.


**Authority:**    *De Sole* MSJ Opinion at 45; *Salinas v. U.S.*, 522 U.S. 52, 65 (1997); *United States v. Yannotti*, 541 F.3d 112, 122 (2d Cir. 2008); *United States v. Zichettello*, 208 F.3d 72, 99 (2d Cir. 2000).

**Defendants' Proposed Instruction:**
**RICO:  Elements of a Section 1962(d) Claim for Conspiracy**

In addition to asserting that the Defendants violated Section 1962(c) of RICO, the Plaintiffs also assert that the Defendants violated Section 1962(d) of RICO by conspiring to violate Section 1962(c).  A defendant can be liable for both a RICO violation under Section 1962(c) and a RICO conspiracy under Section 1962(d).

In order to prove that the defendant violated section 1962(d), the plaintiffs must prove by a preponderance of the evidence each of the following elements:

(1) First, that there was an agreement among two or more persons to participate in an enterprise that would affect interstate commerce through a pattern of racketeering activity;

(2) Second, that the defendant knowingly and willfully became a member of that agreement; and

(3) Third, that the defendant or another member of the conspiracy agreed to commit two racketeering acts, as I have defined that term for you.

**First Element—Conspiracy to Violate RICO**

The first element that the plaintiffs must prove is that there was an agreement among two or more persons to participate in an enterprise that would affect interstate commerce through a pattern of racketeering activity.

A "conspiracy" is an agreement among two or more persons to achieve an unlawful object.  To show a conspiratorial agreement, the plaintiff is not required to prove that two or more people entered into a solemn pact, but only that two or more persons explicitly or implicitly came to an understanding to achieve the specified unlawful object, whether they were successful or not.

**Second Element—Membership in the Conspiracy**

The second element the plaintiff must prove is that the defendant knowingly and willfully became a member of the conspiracy.

If you are satisfied that the conspiracy alleged in the complaint existed, you must next ask yourselves who the members of that conspiracy were. In deciding whether the defendant whom you are considering was, in fact, a member of the conspiracy, you should consider whether the defendant knowingly and willfully joined the conspiracy. Did she participate in it with knowledge of its unlawful purpose and with the specific intention of furthering its objective as an associate or worker?

Before the defendant can be found to have been a conspirator, you must first find that he knowingly joined in the unlawful agreement or plan. The key question, therefore, is whether the defendant joined the conspiracy with an awareness of the basic aims and purposes of the unlawful agreement.

To be liable, the defendant, with an understanding of the unlawful character of the conspiracy, must have intentionally engaged, advised, or assisted in it for the purpose of furthering the illegal undertaking. By such means he becomes a knowing and willing participant in the unlawful agreement—that is to say, a conspirator.

**Third Element—Agreement to Commit Predicate Acts**

The focus of this element is on the defendant's agreement to participate in the objective of the enterprise to engage in a pattern of racketeering activity, and not on the defendant's agreement to commit the individual criminal acts. The plaintiffs must prove that the defendant participated in some manner in the overall objective of the conspiracy, and that the conspiracy involved, or would have involved, the commission of two racketeering acts. The plaintiffs are not required to

prove either that the defendant agreed to commit two racketeering acts or that she actually

committed two such acts, although you may conclude that she agreed to participate in the conduct

of the enterprise from proof that she agreed to commit or actually committed such acts.  However,

the plaintiffs are required to prove that the defendant "knew about and agreed to facilitate the

scheme.

**Defendants' Additional Authority**: Modern Federal Jury Instructions ¶ 84.32-39 Civil Actions
Based on Violations of 18 U.S.C. 1962(c); Fifth Circuit Pattern Civil Jury Instruction 8.1.

**Joint Instruction:**
**RICO:  Injury and Causation**

If you find that one or more Defendants are liable under the RICO statute—under Section 1962(c), under Section 1962(d), or both—you must next consider whether the Plaintiffs suffered an injury, and whether that the injury was caused by the Defendants' violation.

The Plaintiffs assert that they suffered financial injury through their payment of money for the purchase of forged art.  In determining whether these injuries were caused by the Defendants' RICO violations, you must make two determinations.

First, you must be satisfied that the Defendants' conduct actually caused Plaintiffs' losses. By "actually caused," I mean that you must find that Defendants' RICO violation was a material cause or a substantial factor in bringing about Plaintiffs' losses.  To find that the Defendants' RICO violation caused the Plaintiffs' injury, you need not find that the Plaintiffs were injured by each predicate act or by the pattern of racketeering activity.  It is sufficient if Plaintiffs have proven that the Defendants engaged in a pattern of racketeering activity and that the Plaintiffs were injured by reason of at least one of the acts constituting the pattern.

Second, you must find that the Defendants' violation was a proximate cause of Plaintiffs' injury.  In other words, you must be satisfied that the injury was reasonably foreseeable, that is, that it was foreseeable to Defendants that a RICO enterprise devoted to the sale of forged art would result in the purchase of forged art.  This is called proximate cause.

**Authority:**    *De Sole* Second MTD Opinion at 14; *Hemi Group, LLC v. City of New York*, 559 U.S. 1, 8 (2010); *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 283 (2d Cir. 2006); 18 U.S.C. § 1962(c).

### Plaintiffs' Proposed Instruction:
### Breach of Warranty

The De Soles assert that Knoedler provided an express warranty that the work it sold was an authentic Rothko and that Knoedler breached that warranty because the work in fact was forged.

An express warranty exists when (1) the seller of goods makes a statement of fact or promise to the buyer that relates to the goods; (2) the buyer relies on that statement or promise; and (3) that statement or promise becomes part of the basis for the bargain.

The invoice Knoedler provided to the De Soles at the time of their purchase attributed the work to Rothko.  Additionally, on December 11, 2004, Knoedler provided the De Soles a further document warranting the authenticity of the work sold to the De Soles.  These are statements of fact that related to the goods, and warranted the works' authenticity.

If you find, by a preponderance of the evidence, that the De Soles relied on these statements, and that these statements became part of the basis for the De Sole's agreement to purchase the work, then Knoedler is liable to the De Soles for breach of warranty.

**Authority:**   *De Sole* MSJ Opinion at 65-66; N.Y.U.C.C. § 2-313(1)(a); *Kraft v. Staten Island Boat Sales, Inc.*, 715 F. Supp. 2d 464, 473 (S.D.N.Y. 2010).

**<u>Defendants' Proposed Instruction:</u>**
**<u>Breach of Warranty</u>**

A seller which in labeling its product represents the quality to the public in such a way as to induce purchase or use, thereby makes an express warranty that it will conform to the representation. If the product does not conform to the representation, the warranty is breached.

Attributing fine art to a particular author may be an educated guess or opinion, and the more remote the creator is from the present, the more remote is the possibility that anyone can make attribution of authorship a fact.[1]  Such an opinion does not create a warranty.[2]  If you find that the attribution to Mark Rothko of the work purchased by the De Soles was an opinion, you must find that no warranty was created and you must find for Knoedler on this issue.

If, however, you find that the attribution of the work to Mark Rothko was a statement of fact made by Knoedler, you must determine whether that representation was relied on and became part of the basis of the bargain.[3]  If you find that the representation of authorship was not part of the bargained-for terms of the purchase and the warranty was not relied upon as the basis of the bargain, you will find that no warranty was created and you must find for Knoedler on this issue.

If you find that the representation was made, the representation was relied on and became part of the basis of the bargain,[4] to find that a breach of warranty occurred, you must additionally

---

[1] *Levin v. Dalva Bros., Inc.*, 459 F.3d 68, 77 (1st Cir. 2006).

[2] N.Y. U.C.C. § 2-313(1); *Weisz v. Parke-Bernet Galleries, Inc.*, 77 Mis. 2d 80, 80-81, 351 N.Y.S.2d 911, 912 (1st Dep't App. Term 1974); *Findley v. Zaplin-Lampert Gallery, Inc.*, Index No. 603118 01, slip op. at 7 (N.Y. Cty. Dec. 19, 2001).

[3] *Kraft v. Staten Island Boat Sales, Inc.*, 715 F. Supp. 2d 464, 473 (S.D.N.Y. 2010) (quoting *Daley v. McNeil Consumer Prod., Co.*, 164 F. Supp. 2d 367, 377 (S.D.N.Y. 2001).

[4] *Kraft v. Staten Island Boat Sales, Inc.*, 715 F. Supp. 2d 464, 473 (S.D.N.Y. 2010) (quoting *Daley v. McNeil Consumer Prod., Co.*, 164 F. Supp. 2d 367, 377 (S.D.N.Y. 2001).

find all of the following: (1) that at the time of the occurrence the artwork was being used for the purpose and in the manner intended, (2) that by the use of reasonable care the holder of the warranty would not have both discovered the breach and realized the true nature of the representation, and (3) that the breach of warranty was a substantial factor in bringing about the injury alleged.  If you find that the holder of the warranty could have determined that the representation was incorrect by exercising reasonable care, for example, by contacting the individuals claimed to have viewed the work, you must find for Knoedler on this issue.

**Defendants' Authority**: New York Pattern Jury Instructions (Civil) 2:140 (3rd ed. 2015), and related footnotes.

**<u>Plaintiffs' Proposed Instruction:</u>**
**<u>Rescission based on Mistake</u>**

The De Soles claim they are entitled to rescind their contract to purchase the artwork in question, and to receive a full refund of the purchase price, because they were mistaken about the authenticity of the work they purchased from Knoedler.  There are two kinds of mistake that can be the basis for these claims.  The first is that the contract should be rescinded because of a "unilateral mistake" by the De Soles alone; the second is that the there was a "mutual mistake" by both the De Soles and Knoedler.  To prevail, the De Soles must prove the elements of the claim by clear and convincing evidence.

To succeed on their claims of "unilateral mistake," the De Soles must establish that (1) they entered into a contract based upon a mistake as to a material fact; and (2) the other contracting party—that is, Knoedler—either knew or should have known that such a mistake was being made.  If, however, the plaintiffs' mistake was the result of the plaintiffs' negligence and the plaintiffs had an "easily accessible" way to know they were making a mistake, then rescission is not available because of a unilateral mistake.

The De Soles also seek rescission of their contracts on the basis of a "mutual mistake."  To succeed on this claim, the De Soles must show that both parties to the contract—that is, both the De Soles and Knoedler—were genuinely mistaken about the same material fact or facts, so that they could not accomplish their intent in entering the contracts.  If, however, the Plaintiffs had limited knowledge of facts relating to the mistake but treated this limited knowledge as sufficient, then rescission is not available because of a mutual mistake.

The claims for rescission based on unilateral mistake and mutual mistake differ in the knowledge that is attributed to Knoedler.  If you find that the De Soles and Knoedler were both mistaken as to the authenticity of the paintings, then the contracts may be rescinded based on

mutual mistake, but not on the basis of unilateral mistake.  If, however, you find that the De Soles

were mistaken as to the authenticity of the paintings, but Knoedler did not share this mistaken

belief, then the contracts may not be rescinded on the basis of unilateral mistake, but not on the

basis of mutual mistake.


**Authority:**      *De Sole* First MTD Opinion at 61; *De Sole* MSJ Opinion at 71; *Aetna Cas. & Sur.
Co. v. Aniero Concrete Co.*, 404 F.3d 566, 585 (2d Cir. 2005); *Koam Produce, Inc. v. DiMare
Homstead, Inc.*, 329 F.3d 123, 127-28 (2d Cir. 2003); *Summit Health, Inc. v. APS Healthcare
Bethesda, Inc.*, 993 F. Supp. 2d 379, 404-05 (S.D.N.Y. 2014); *Creative Waste Mgmt., Inc. v.
Capitol Envtl. Servs., Inc.*, 429 F. Supp. 2d 582, 608 (S.D.N.Y. 2006).

**<u>Defendants' Proposed Instruction:</u>**
**<u>Rescission based on Mistake</u>**

The De Soles claim they are entitled to rescind their contract to purchase the artwork in question, and to receive a full refund of the purchase price, because they were mistaken about the authenticity of the work they purchased from Knoedler.  There are two kinds of mistake that can be the basis for these claims.  The first is that the contract should be rescinded because of a "unilateral mistake" by the De Soles alone; the second is that the there was a "mutual mistake" by both the De Soles and Knoedler.

To succeed on their claims of "unilateral mistake," the De Soles must establish by clear and convincing evidence that (1) they entered into a contract based upon a mistake as to a material fact; (2) the other contracting party—that is, Knoedler—either knew or should have known that such a mistake was being made; and (3) Knoedler committed fraud.[5]  If you find that the contract was based on a unilateral mistake, and that Knoedler (as the other contracting party) knew or should have known that the works were not genuine, the contracts are subject to rescission.

A claim of unilateral mistake is not available if the mistake was the result of a plaintiff acting negligently or failing to exercise ordinary care and you should not answer that a unilateral mistake occurred if you decide that a plaintiff acted negligently or failed to exercise ordinary care.[6]

---

[5] *AMEX Assurance Co. v. Caripides*, 316 F.3d 154, 161-62 (2d Cir. 2003); *Aetna Cas. & Sur. Co. v. Aniero Concrete Co.*, 404 F.3d 566, 585 (2d Cir. 2005); *Collins v. Harrison-Bode*, 303 F.3d 429, 435 (2d Cir. 2002).

[6] *VCG Special Opportunities Master Fund Ltd. v. Citibank, N.A.*, 594 F. Supp. 2d 334, 344 (S.D.N.Y. 2008); *Vandervort v. Higginsbotham*, 222 A.D.2d 831, 832, 634 N.Y.S.2d 800, 801 (3d Dep't 1995).

The De Soles also seek rescission of their contracts on the basis of a "mutual mistake." To succeed on this claim, the De Soles must show by clear and convincing evidence that both parties to the contract—that is, both the De Soles and Knoedler—were genuinely mistaken about the same material fact or facts, so that they could not accomplish their intent in entering the contracts.

A claim of mutual mistake is not available if plaintiffs were aware that that they or one of them had limited knowledge, but they acted anyway.  You should not answer that a mutual mistake occurred if you decide that a plaintiff was aware that he or she had limited knowledge.[7] The claims for rescission based on unilateral mistake and mutual mistake differ in the knowledge that is attributed to Knoedler.

**Defendants' Authority**: *Timber Rattlesnake, LLC v. Devine*, 986 N.Y.S.2d 278 (App. Div. 2014); *Vollbrecht v. Jacobson*, 838 N.Y.S.2d 188 (App. Div. 2007); New York Pattern Jury Instructions (Civil) 4:11 (3rd ed. 2015), and related footnotes.

---

[7] *ACA Galleries, Inc. v. Kinney*, 928 F. Supp. 2d 699, 701-02 (S.D.N.Y. 2013), *aff'd*, 552 F. App'x 24 (2d Cir. 2014).

**Plaintiffs' Proposed Instruction:**
**Equitable Estoppel**

Knoedler asserts that the De Soles' claims for breach of warranty and rescission are untimely—that is, that the De Soles waited too long to bring these claims.  The law provides time limits to bring certain kinds of claims, although there is an exception to these time limits called "equitable estoppel."  The De Soles did not bring their breach of warranty and rescission claims within the applicable time limits, but assert that the "equitable estoppel" exception applies here.

Under the "equitable estoppel" exception, if a defendant wrongfully conceals its previous actions, such that the plaintiffs were unable to discover facts that would have allowed them to bring their claims earlier or refrained from bringing their claims earlier because of a defendant's actions, then the plaintiffs' delay is excused, and defendants are not permitted to argue that the plaintiffs failed to bring their claims within the applicable time limits.  For equitable estoppel to apply, the defendant must have taken some additional action, after its initial fraud, for the purpose of concealing the initial fraud.

The De Soles assert that Knoedler took additional affirmative steps to conceal its initial wrongful conduct and to prevent them from learning of their breach of warranty and rescission claims.  Specifically, they assert that Knoedler concealed its initial fraud when it provided the De Soles with an insurance appraisal of the work in January 2008.  The De Soles further assert that Knoedler knew or recklessly disregarded that the works were forgeries at that time, but transmitted the false valuation to conceal its prior fraudulent conduct and to prevent the De Soles from learning of their potential claims against Knoedler.

If you find that Knoedler took affirmative steps to conceal its previous fraud, and that the De Soles were unable to discover facts that would have allowed them to bring their claims earlier,

or refrained from bringing their claims as a result, you must find that equitable estoppel applies to permit the De Soles to bring their claims for breach of warranty and rescission.

**Authority:**     *De Sole* First MTD Opinion at 59-60; *De Sole* MSJ Opinion at 68-69; *Statistical Phone Philly v. NYNEX Corp.*, 116 F. Supp. 2d 468, 482 (S.D.N.Y. 2000).

**Defendants' Proposed Instruction:**
**Equitable Estoppel**

This issue should not be submitted to the jury.

**Authority:**    *Upadhyay v. Sethi*, 10 CIV 8462 NRB, 2012 WL 1195233, at *1 (S.D.N.Y. Apr. 5, 2012).

Alternatively and without waiving their right to object to this issue being submitted to the jury, Defendants propose the following:

The Defendants assert that the De Soles' claims for breach of warranty and rescission are untimely—that is, that the De Soles waited too long to bring these claims. The De Soles acknowledge and admit that the six year statute of limitations to bring their claims has expired. The De Soles argue that they should be permitted to bring these claims under a principle known as "equitable tolling."

Under the principle of "equitable tolling," the De Soles delay in bringing a claim is excused if they were induced to refrain from bringing a lawsuit earlier than they did based on Knoedler's intentionally false statement made with the purpose of concealing the breach of warranty, mutual mistake, or unilateral mistake from the De Soles[8]

The intentionally false statement must have been made after the warranty was given, the mutual mistake occurred, or the unilateral mistake occurred.[9] In this case, any intentionally false statement that was intended to induce the De Soles from discovering their claim for breach of warranty must have been made after the date of purchase but before March 28, 2008. Any intentionally false statement that was intended to induce the De Soles from discovering their

---

[8] *De Sole*, 974 F. *Supp*. 2d at 319.

[9] *De Sole*, 974 F. Supp. 2d at 319.

claim for unilateral mistake or mutual mistake must have been made after the date of purchase but prior to March 28, 2010.

The same misrepresentation that forms the basis for the claim of breach of warranty, mutual mistake or unilateral mistake cannot create the equitable tolling.[10]  That means that in order to find that equitable tolling applies, you must find that after the date that the De Soles purchased the work, Knoedler made an additional misrepresentation designed to conceal the prior misrepresentation about the authorship of the work in order to prevent the De Soles from becoming aware of a potential claim against Knoedler.

The De Soles contend that a letter, requested by the De Soles, providing a replacement value for the work for insurance purposes is sufficient to apply equitable tolling.  In order to find that equitable tolling applies, you must first determine whether the warranty issued by Knoedler was issued to Eleanore and Domenico De Sole.  If you find that the warranty was issued to someone other than Eleanore and Domenico De Sole, you must find for Knoedler.

If you find that the warranty was issued to Eleanore and Domenico De Sole, in order to find that equitable tolling applies, you must find that Knoedler sent this letter with the intent to deceive the De Soles and to prevent them from discovering the existence of a breach of warranty. If you do not find that Knoedler's statement as to the replacement value of the work was made to prevent the De Soles from discovering the existence of a breach of warranty, you must find that equitable tolling does not apply to the breach of warranty claim.

In order to find that equitable tolling applies to the mutual and unilateral mistake claims, you must find that Knoedler sent this letter with the intent to deceive the De Soles and to prevent them from discovering the existence of a claim for mutual or unilateral mistake.  If you do not

---

[10] *De Sole*, 974 F. Supp. 2d at 319.

find that Knoedler's statement as to the replacement value of the work was made to prevent the

De Soles from discovering the existence of a claim for mutual or unilateral mistake, you must find

that equitable tolling does not apply to the claims for mutual or unilateral.

**Defendants' Authority:**      See footnotes.

**Plaintiffs' Proposed Instruction:**
**8-31 Holdings:  Alter-Ego Liability**

If you determine that Knoedler is liable to Plaintiffs for any claim, you will have to

determine if 8-31 Holdings is also liable for these claims under a rule known as "alter-ego"

liability.

The Plaintiffs have asserted that 8-31 Holdings, Inc. is the alter-ego of Knoedler Gallery,

LLC.  This amounts to a claim that 8-31 Holdings and Knoedler should be treated as one and the

same entity under the law, so that the separate corporate existence of Knoedler should be

disregarded.

You are instructed that a corporation, generally, is a separate legal entity authorized under

the law to do business in its own right and on its own credit as distinguished from the credit and

assets of other persons or corporations.  The mere fact that one or two individuals own and

control the stock structure of a corporation, or two corporations have common officers or

directors, or both, does not mean the corporation may be regarded as the alter ego of its

stockholders or of a related corporation.  However, the existence of a corporate entity may be

disregarded where a corporation is a mere instrumentality or agent of another corporation or

individual owning all or most of its stock, or where the purpose is to evade some statute or to

accomplish some fraud or illegal purpose.

To prevail on their claim that 8-31 is the alter ego of Knoedler, Plaintiffs must prove that:

(1) 8-31 Holdings and Knoedler operated as a single economic entity, and (2) there was an

overall element of injustice or unfairness in the way the two companies operated.

To determine whether the entities operated as "a single economic entity," you may look

to numerous factors that, if present, would indicate that the entities operated as a single economic

entity.  These factors may include whether Knoedler was adequately capitalized to carry on its

business; whether it was solvent; whether dividends were properly paid, corporate records kept, officers and directors functioned properly, and other corporate formalities observed; whether 8-31 Holdings siphoned funds from Knoedler; or whether, in general, Knoedler simply functioned as a facade for 8-31 Holdings.

In particular, the Plaintiffs have asserted that Knoedler and 8-31 Holdings operated as a single economic entity because they employed the same people and pooled a substantial portion of their operations. They further assert that 8-31 Holdings siphoned tens of millions of dollars from Knoedler, including by changing the nature of certain loans from Knoedler to 8-31 Holdings into distributions to 8-31 Holdings. The Plaintiffs further assert that, by siphoning these funds, the relationship between 8-31 Holdings and Knoedler was marked by an overall element of injustice or unfairness.

If you find, by a preponderance of the evidence, that 8-31 Holdings is the alter ego of Knoedler, then you must find that 8-31 Holdings is also liable for any conduct for which Knoedler is liable, under the rule of alter-ego liability.

**Authority:**     O'Malley § 108:05; *De Sole* MSJ Opinion at 74-75; *NetJets Aviation, Inc. v. LHC Communications, LLC*, 537 F.3d 168, 176-78 (2d Cir. 2008); *Fletcher v. Atex, Inc.*, 68 F.3d 1451, 1456-58 (2d Cir. 1995).

**Defendants' Proposed Instruction:**
**8-31 Holdings:  Alter-Ego Liability**

Under Delaware law governing the alter ego claim, there is no submission to the jury; the matter is reserved to the Court.

**Authority:**     *Sonne v. Sacks*, 314 A.2d 194, 197 (Del. 1973).

Alternatively and without waiving their right to object to this issue being submitted to the jury, Defendants propose the following:

If you determine that Knoedler is liable to Plaintiffs for any claim, you will have to determine if 8-31 Holdings is also liable for these claims under a rule known as "alter-ego liability."

The Plaintiffs have asserted that 8-31 Holdings, Inc. is the alter ego of Knoedler Gallery, LLC.  This amounts to a claim that 8-31 Holdings and Knoedler should be treated as one and the same entity under the law, so that the separate corporate existence of Knoedler should be disregarded.  8-31 Holdings, Inc., is what is known under the law as a "holding company."  A holding company exists to own and possess investments such as the stock of other companies called subsidiaries.  A holding company generally does not have operations similar to its subsidiaries and may not have substantial business of its own.  Instead of having operating income, a holding company generally receives funds to operate by receiving dividends or distributions of cash from its subsidiaries.

You are instructed that a corporation, generally, is a separate legal entity authorized under the law to do business in its own right and on its own credit as distinguished from the credit and assets of other persons or corporations.  The mere fact that a corporation owns and controls the stock structure of another corporation, or two corporations have common officers or directors, or both, does not mean the parent corporation must be regarded as the alter ego of its subsidiary

corporation.  Similarly, a limited liability company, like Knoedler Gallery LLC, even if it has one owner or manager, is still considered a separate legal entity from that owner or manager.[11]

In order to prevail on their claim that 8-31 is the alter ego Knoedler, plaintiffs must prove by clear and convincing evidence that: (1) 8-31 Holdings and Knoedler operated as a single economic entity, and (2) there was an overall element of injustice or unfairness in the way the two companies operated that is unrelated to Plaintiffs' claims in this case.[12]

To determine whether the entities operated as "a single economic entity," you must find that 8-31 consistently engaged in a course of conduct ignoring the existence of Knoedler and has, in fact, conducted business as a corporation by exercising such paramount and personal control over the operations of Knoedler that its separate corporate existence has been disregarded and 8-31 Holding's business interests and Knoedler's interests cannot be reasonably separated.

In making this finding, you should analyze numerous factors to determine whether the entities operated as a single economic entity.  In order to determine that 8-31 is the alter ego of Knoedler, you must find a combination of factors showing that the entities operated as a single economic entity; the combination of factors may include a determination by you that (1) Knoedler was not adequately capitalized to carry on its business; (2) Knoedler was not solvent; (3) Knoedler and 8-31 did not keep separate corporate books and records, (4) Knoedler and 8-31 did not have corporate officers; (5) Knoedler and 8-31 did not keep separate bank accounts;  or (6) 8-31 Holdings siphoned funds from Knoedler.  No single factor can justify finding alter ego; some combination of them is required and an overall element of injustice or unfairness must always be present.

---

[11] *Credit Suisse Sec. (USA) LLC v. W. Coast Opportunity Fund, LLC*, CIVA 4380-VCN, 2009 WL 2356881, at *3 n.23 (Del. Ch. July 30, 2009)

[12] *See NetJets*, 537 F.3d at 183.

Because Knoedler Gallery is a limited liability company (an "LLC"), less emphasis is placed on whether the LLC observed formalities because fewer such formalities are legally required.  For instance, as a limited liability company, Knoedler is exempt from some corporate form requirements such as having corporate directors.[13]  Also, limited liability companies are authorized to have a manager or members (the owners) operate the LLC.[14]  The fact that 8-31 and Knoedler had consolidated financial statements and consolidated tax returns does not support a determination that 8-31 is the alter ego of Knoedler.[15]

In determining whether a subsidiary was adequately capitalized, you should determine whether a corporate entity was or was not created for financial failure.[16]  To prove siphoning in support of an alter ego claim, a plaintiff must show that intercompany transfers were done merely to benefit the dominating corporation without a legitimate business purpose and without a rational business or accounting justification.[17]

To show that there was an overall element of injustice or unfairness in the way the two companies operated, plaintiffs must prove by clear and convincing evidence that the corporate

---

[13] *NetJets Aviation, Inc*., 537 F.3d at 178.

[14] *Global Commodities Group, LLC v. National Union Fire Insurance Company of Pittsburgh, PA*, No. 13 Civ. 2063 (SAS), 2013 WL 4713547, at *4 (Aug. 29, 2013 S.D.N.Y.)

[15] *BASF Corp. v. POSM II Properties P'ship, L.P.*, No. Civ. A. 3608-VCS, 2009 WL 522721, at *8 (Del. Ch. Mar. 3 2009); *In re Washington Mut., Inc.*, Adv. 09-50029 (MFW), 2010 WL 3238903, at *14 (D. Del. Bkrty Aug. 13, 2010); *BASF Corp. v. POSM II Properties P'ship, L.P.*, No. Civ. A. 3608-VCS, 2009 WL 522721, at *8 (Del. Ch. Mar. 3 2009).

[16] *In re BH S&B Holdings LLC v. Bay Harbour Master Ltd.*, 420 B.R. 112, 136 (Bankr. S.D.N.Y. 2009).

[17] *United States v. Afram Lines (Int'l), Inc.*, No. 91 Civ. 1062, 1997 WL 423063, at *3 (S.D.N.Y. July 29, 1997); *Harco Nat'l Ins. Co. v. Green Farms, Inc.*, No. Civ.A. 1131, 1989 WL 110537, 15 Del. J. Corp. L. 1030, 1041 (Del. Ch. Sept. 19, 1989).

structure caused fraud or similar injustice unrelated to Plaintiffs' claims in this case.  Effectively, the corporate entity must be a sham and the corporate entity must exist for no other purpose than as a vehicle for fraud.[18]


**Defendants' Authority:**       O'Malley § 108:05; *De Sole* MSJ Opinion at 74-75; *NetJets Aviation, Inc. v. LHC Communications, LLC*, 537 F.3d 168, 176-78 (2d Cir. 2008); *Fletcher v. Atex, Inc*., 68 F.3d 1451, 1456-58 (2d Cir. 1995), and related footnotes.

---

[18] *Radiancy, Inc. v. Viatek Consumer Products Group, Inc.*, 13-cv-3767 (NSR), 2014 WL 1318374, *5 (S.D.N.Y. April 1, 2014)

**Plaintiffs' Proposed Instruction:**
**8-31 Holdings:  Respondeat Superior Liability**

If you determine that Ann Freedman is liable to the Plaintiffs for any claim, you will have to determine if 8-31 Holdings is also liable for these claims under a rule known as "respondeat superior."

8-31 Holdings is a corporation.  As I have already explained, a corporation may act only through individuals as its agents or employees.  In general, a corporation is liable for the actions or statements of its agent or employee so long as the employee was acting within the scope of his or her employment at the time.  The Plaintiffs assert that 8-31 is liable for Freedman's conduct because Freedman was not only the President of Knoedler, but also an employee, officer, and director of 8-31.

There are several factors that you should consider in determining whether Freedman was acting within the scope of her employment with 8-31 when she conducted business with the Plaintiffs.  These factors are:  (1) the time, place, and occasion of this conduct, (2) the history of the relationship between Freedman and 8-31 Holdings, as spelled out in actual practice, (3) whether the specific act is one commonly done by an employee such as Freedman, (4) whether the employee departed from the normal methods of performing his or her employment, and (5) whether the specific act was one that the employer could reasonably have anticipated.

If you find, by a preponderance of the evidence, that Freedman was acting within the scope of her employment when she conducted business with Plaintiffs, then you must find that 8-31 Holdings is also liable for any conduct for which Freedman is liable, under the rule of respondeat superior.


**Authority:**     O'Malley § 171:27; *Riviello v. Waldron*, 47 N.Y.2d 297, 303-04 (1979).

82

**Defendants' Proposed Instruction:**
**8-31 Holdings:  Respondeat Superior Liability**

If you determine that Ann Freedman is liable to the Plaintiffs for any claims, you will have to determine if 8-31 Holdings is also liable for these violations under a rule known as "respondeat superior."

8-31 Holdings is a corporation.  It is the parent company of Knoedler Gallery LLC, also known as a subsidiary of 8-31 Holdings.  A corporation may act only through individuals as its agents or employees.  In general, a corporation is liable for the actions or statements of its agent or employee so long as the employee was acting with the scope of his or her employment.

The first factor you should decide is whether or not Ann Freedman was an employee of 8-31 as opposed to Knoedler.[19]  The fact that a parent company handles the payroll processing and tax reporting for a subsidiary's employees or issues W-2's for a subsidiary's employees does not make the parent company the employer of an employee of the subsidiary.[20]  In order to find that a parent company has respondeat superior liability, a plaintiff must prove that the parent company's employee, officer, or director was acting on behalf of the parent company at the time of the purported wrongdoing and not on behalf of a subsidiary company.  An employee, director, or

---

[19] *See Staples, Inc. v. W.J.R. Associates*, No. 04 CV 904(SJ) KAM, 2007 WL 3046352, at *3 (E.D.N.Y. Sept. 28, 2007) (addressing "[a]s an initial matter" whether or not a party was employed by a particular corporation before considering the other elements of respondeat superior).

[20] *Londen Land Company, LLC v. Title Resources Guaranty Co.*, 09-civ-980 (PHX) (MHB), 2010 WL 3034871, at *3 (D. Ariz. Aug. 3, 2010); Internal *Revenue* Service Notice 99-6 1991-1 C.B. 321 (Jan. 6, 1999).

officer of a parent company is not considered to be acting on behalf of the parent company when she acts on behalf of the subsidiary by whom she is employed or acts an officer.[21]

If you decide that Ann Freedman was an employee, officer or director of 8-31, there are several factors that you should consider in determining whether she was acting within the scope of her employment with 8-31 or duties as an officer or director of 8-31 when she conducted business with the Plaintiffs.  The most important factor in determining whether an employee acted on behalf of an employer or whether the officer or director acted on behalf of the parent company is whether the specific act was one that the parent company could reasonably have anticipated and whether the act is one commonly done by such an employee, officer or director for that employer or parent company.[22] The other factors are:  (1) the time, place, and occasion of this conduct, (2) the history of the relationship between employer and the employee, as spelled out in actual practice, (3) whether the specific act is one commonly done by an employee, officer or director of the parent company as opposed to an employee or officer of the subsidiary, (4) whether, and the extent to which, the employee departed from the normal methods of performing his or her employment, and (5) whether the specific act was one that the employer could reasonably have anticipated the employee doing on the employer's behalf or whether the specific act was one that the parent company could reasonably have anticipated its officer or director doing on behalf of the parent company.[23]

---

[21] *Bavaria Intern. Aircraft Leasing GmbH v. Clayton, Dubilier & Rice, Inc.*, No. 03 Civ. 0377 (NRB), 2003 WL 21767739, at *3 (S.D.N.Y. July 30, 2003) (Buchwald, J.)

[22] *Kwon v. Yun*, 606 F. Supp. 2d 344, 363 (S.D.N.Y. 2009) (Lynch, J.) (quoting *Riviello v. Waldron*, 47 N.Y.2d 297, 303 (1979)).

[23] *Haybeck v. Prodigy Servs. Co.*, 944 F.Supp. 326, 329 (S.D.N.Y. 1996) (citing *Riviello*, 47 N.Y.2d at 302, 418 N.Y.S.2d 300, 391 N.E.2d 1278).

Finally, an employer will not be held liable under this doctrine for actions which were not taken in furtherance of the employer's interests and which were undertaken by the employee for wholly personal motives and a company will not be held liable under this doctrine for actions which were taken by an officer or director that were not in furtherance of the company's interests and were undertaken by the officer or director for wholly personal motives.[24]

If you find that Ann Freedman was acting within the scope of her employment by or as an officer of Knoedler when she conducted business with Plaintiffs, or that her actions were taken in furtherance of Knoedler's interest, or that her actions were taken for wholly personal motives, then you must find that 8-31 Holdings is not liable under respondeat superior for conduct for which Freedman is liable.  If you find that Ann Freedman was acting within the scope of her employment by 8-31 Holdings when she conducted business with Plaintiffs and not on behalf of Knoedler, and that the actions were taken in furtherance of 8-31 Holdings' interest, then you must find that 8-31 Holdings is also liable for any conduct for which Freedman is liable, under the rule of respondeat superior.


**Defendants' Authority:**      O'Malley § 171:27 and footnotes herein.


---

[24] *Adorno v. Corr. Servs. Corp.*, 312 F. Supp. 2d 505, 516 (S.D.N.Y. 2004).

## Joint Instruction:
## Damages Generally

If you determine that one or more of the Defendants is liable on one or more claims, you should then proceed to an assessment of damages for that claim.

The mere fact that I am instructing you on how to go about awarding damages does not mean, of course, that I have any opinion on whether any defendant should be held liable in this case.  I have no opinion, one way or the other.  It is your responsibility to decide whether there is liability, and I am instructing you about damages only so that you will have guidance in the event that you decide that the Plaintiffs have proven one or more of their claims as to one or more of the Defendants.

If you find that the Plaintiffs have proved liability according to the standards I have explained for fraud, fraudulent concealment, or RICO violations, you will consider the damages to which plaintiffs are entitled—what is called "compensatory damages."  Additionally, if you find the Plaintiffs have proved liability for fraud or fraudulent concealment, you may also consider whether the Plaintiffs are entitled to another type of damages, called "punitive damages."  Later, I will explain the damages available if you find the De Soles have proven their claims of breach of warranty or mistake.


**Authority:**   *Ajettix, Inc. v. Raub*, 9 Misc. 3d 908, 920, 804 N.Y.S.2d 580, 593 (Sup. Ct. Monroe Co. 2005); *Bouveng v. NYG Capital LLC*, No. 14 Civ. 5474 (PGG), Docket No. 219 (Jury Instructions).

**Joint Instruction:**
**Compensatory Damages for Violations of Fraud, Fraudulent Concealment, or RICO**

If you find for the De Soles with respect to their claims of fraud or fraudulent concealment or their RICO claims, then you must award them the sum that you find, from the preponderance of the evidence, will fairly and justly compensate them for any damages you find they have sustained, and are reasonably certain to sustain in the future, as a direct result or as a reasonably foreseeable consequence of a defendant's conduct. The Plaintiffs assert that the damages they have suffered in connection with these claims consist of the full purchase price of the works.

The damages that you award must be fair and reasonable, neither inadequate nor excessive. You should not award compensatory damages for speculative injuries, but only for those injuries that the De Soles have actually suffered or can reasonably be expected to suffer. It is the De Soles' burden to prove the amount of their damages and to prove that the damages were caused by a defendant's actions. Your determination of damages must not be based on speculation or guesswork.

You may not award compensatory damages more than once for the same injury. For example, where a plaintiff prevails on two claims and establishes that he or she is entitled to $100 in compensatory damages for that injury, that plaintiff is not entitled to $100 in compensatory damages on each claim. A plaintiff is entitled to be made whole again, not to be made more than whole. Of course, where different injuries are attributed to the separate claims, a plaintiff is entitled to be compensated fully for all of the injuries.

**Authority:**     *Bouveng v. NYG Capital LLC*, No. 14 Civ. 5474 (PGG), Docket No. 219 (Jury Instructions).

**Joint Instruction:**
**Punitive Damages for Fraud or Fraudulent Concealment**

If you find for the De Soles with respect to their fraud and/or fraudulent concealment claims, you may, but are not required to, award the De Soles punitive damages in addition to compensatory damages.  Keep in mind that the fact that I am giving you instructions on punitive damages should not be considered an indication of any view on my part as to what your verdict should be or on whether punitive damages should be awarded.  It is entirely up to you to decide whether or not punitive damages should be awarded in this case.

Punitive damages may be awarded for the purpose of punishing a defendant for that defendant's wrongful conduct and to deter others from engaging in similar wrongful conduct. Punitive damages are intended to protect the community, and to be an expression of the jury's indignation at a defendant's misconduct.  You must determine whether to award punitive damages against each defendant separately.   To award the De Soles punitive damages, you must first find in their favor against one or more of the Defendants on their fraud or fraudulent concealment claims.

Punitive damages may be awarded for conduct that represents a high degree of immorality and shows such wanton dishonesty as to imply a criminal indifference to civil obligations.  The purpose of punitive damages is not to compensate the De Soles but to punish the Defendants for wanton and reckless and malicious acts and thereby to discourage the Defendants and others from acting in a similar way in the future.

An act is malicious when it is done deliberately with knowledge of the plaintiffs' rights, and with the intent to interfere with those rights.  An act is wanton and reckless when it demonstrates conscious indifference and utter disregard of its effect upon the health, safety and rights of others.  If you find that Defendants' conduct was not wanton nor reckless nor malicious,

88

you need proceed no further.  On the other hand, if you find that Defendants' conduct was wanton and reckless or malicious, you may award the De Soles punitive damages.

In arriving at your decision as to the amount of punitive damages, you should consider the nature and reprehensibility of what Defendants did.  That would include the character of the wrongdoing, whether Defendants' conduct demonstrated an indifference to, or a reckless disregard of the rights others, whether the acts were done with an improper motive or vindictiveness, whether the acts constituted outrageous or oppressive intentional misconduct, how long the conduct went on, Defendants' awareness of what harm the conduct caused or was likely to cause, any concealment or covering up of the wrongdoing, how often Defendants had committed similar acts of this type in the past and the actual and potential harm created by Defendants' conduct, including the harm to individuals or entities other than the De Soles. However, although you may consider the harm to individuals or entities other than the De Soles in determining the extent to which Defendants' conduct was reprehensible, you may not add a specific amount to your punitive damages award to punish Defendants for the harm Defendants caused to others.

The amount of punitive damages that you award must be both reasonable and proportionate to the actual and potential harm suffered by the De Soles, and to the compensatory damages you awarded the De Soles.  The reprehensibility of Defendants' conduct is an important factor in deciding the amount of punitive damages that would be reasonable and proportionate in view of the harm suffered by the De Soles and the compensatory damages you have awarded on these claims.  You may also consider the Defendants' financial condition and the impact your punitive damages award will have on Defendants.

**Authority:**    New York Pattern Jury Instructions § 2:278; *Bouveng v. NYG Capital LLC*, No. 14 Civ. 5474 (PGG), Docket No. 219 (Jury Instructions).

**Plaintiffs' Proposed Instruction:**
**Damages for Breach of Warranty**

If you find for the De Soles on their breach of warranty claim, the damages you award must be the difference between the value of the goods that they actually received, and the value of the goods they were warranted.

The value of the goods they were warranted is determined by considering the value those goods would have today, not their value at the time they were purchased.  That is, if you find for the De Soles on their breach of warranty claim, in awarding damages you must compare the value of the forged work the De Soles actually received, as compared to what a comparable, genuine Rothko would be worth today, if the De Soles had actually received a genuine Rothko.

**Authority:**     N.Y.U.C.C. § 2-714 (2).

**<u>Defendants' Proposed Instruction:</u>**
**<u>Damages for Breach of Warranty</u>**

If you find for the De Soles on their breach of warranty claim, the damages you award must be the difference between the value of the goods that they actually received, and the value of the goods as they were warranted at the time they purchased the goods.


**Authority:**     N.Y.U.C.C. § 2-714 (2).

**<u>Joint Instruction:</u>**
**<u>Right to See Exhibits and Hear Testimony; Communications With Court</u>**

We will send into the jury room an index reflecting all the exhibits received in evidence and a copy of all of the documents that were received in evidence.

If you want any of the testimony sent back to you, you may request that.  Please remember that it is not always easy to locate what you might want, so be as specific as you possibly can be in requesting portions of testimony or any other item of evidence.

If you want any further explanation of the law as I have explained it to you, you may also request that.  As I noted earlier, however, you may take into the jury room your copy of these instructions.

Any communication to me should be made in writing, signed by your foreperson.  Please include the date and time, and then give the note to one of the marshals. Please make any notes as clear and precise as possible.  Do not tell me or anyone else how the jury stands on any issue until after a unanimous verdict is reached.


**Authority:**   *Bouveng v. NYG Capital LLC*, No. 14 Civ. 5474 (PGG), Docket No. 219 (Jury Instructions).

**Joint Instruction:**
**Duty to Deliberate/Unanimous Verdict**

You will be asked to determine whether the plaintiffs have met their burden of proving each element of its claims as to each defendant.  Your decision on these issues must be unanimous.

It is your duty as jurors to consult with one another and to deliberate with a view to reaching an agreement.  Each of you must decide the case for himself or herself, but you should do so only after a consideration of the case with your fellow jurors, and you should not hesitate to change an opinion when convinced that it is erroneous.  Discuss and weigh your respective opinions dispassionately, without regard to sympathy, without regard to prejudice or favor for either party, and adopt that conclusion which in your good conscience appears to be most in accordance with the truth.

Again, your verdict must be unanimous, but you are not bound to surrender your honest convictions concerning the effect or weight of the evidence for the mere purpose of returning a verdict or solely because of the opinion of other jurors.  Each of you must make your own decision about the proper outcome of this case based on your consideration of the evidence and your discussions with your fellow jurors.  No juror should surrender his or her conscientious beliefs solely for the purpose of returning a unanimous verdict.

If you are divided, do not report how the vote stands, and if you have reached a verdict do not report what it is until you are asked in open court.


**Authority:**    *Bouveng v. NYG Capital LLC*, No. 14 Civ. 5474 (PGG), Docket No. 219 (Jury Instructions).

## <u>Joint Instruction:</u>
## <u>Verdict Form</u>

Your verdict will be organized according to a verdict form.  This form will assist you in reaching a verdict and lists the questions you must answer based on the instructions that I have given you.


**Authority:**     *Bouveng v. NYG Capital LLC*, No. 14 Civ. 5474 (PGG), Docket No. 219 (Jury Instructions).

## Joint Instruction:
## Duties of Foreperson

Finally, I referred a moment ago to a foreperson.  It is customary for Juror Number 1 to serve as the foreperson, and that is what we will do here.  The foreperson doesn't have any more power or authority than any other juror, and her vote or opinion doesn't count for any more than any other juror's vote or opinion.  The foreperson is merely your spokesperson to the court.  He or she will send out any notes, and when the jury has reached a verdict, he or she will notify the marshal that the jury has reached a verdict, and you will come into open court and deliver your verdict.


**Authority:**    *Bouveng v. NYG Capital LLC*, No. 14 Civ. 5474 (PGG), Docket No. 219 (Jury Instructions).

## Joint Instruction:
## Announcing the Verdict

After you have reached a verdict, your foreperson will fill in the form that has been given to you, sign and date it and advise the marshal outside your door that you are ready to return to the courtroom and deliver your verdict.

I will stress that each of you must be in agreement with the verdict which is announced in court.  Once your verdict is announced by your foreperson in open court and officially recorded, it cannot ordinarily be revoked.

**Authority:**     *Bouveng v. NYG Capital LLC*, No. 14 Civ. 5474 (PGG), Docket No. 219 (Jury Instructions).

Dated:  New York, New York
      November 24, 2015

CLARICK GUERON REISBAUM LLP

_____
Gregory A. Clarick
Emily Reisbaum
Aaron H. Crowell
Sarah Louise Bishop
Courtney L. Milianes
220 Fifth Avenue, 14th Floor
New York, NY  10001
Phone:  (212) 633-4310
Fax:  (646) 478-9484

*Attorneys for Plaintiffs Domenico and
Eleanore De Sole*

NORTON ROSE FULBRIGHT US LLP

_____
Charles D. Schmerler
Mark A. Robertson
Sarah E. O'Connell
666 Fifth Avenue
New York, NY 10103
Tel.: 212.318.3000
Fax: 212.318.3400

*Attorneys for Defendants Knoedler Gallery
LLC and 8-31 Holdings, Inc.*

BOIES, SCHILLER & FLEXNER LLP

_____
Luke Nikas
575 Lexington Avenue
New York, New York 10022
Telephone: (212) 446-2300
Facsimile: (212) 446-2350
Email: lnikas@bsfllp.com

Kyle Smith* (pro hac vice)
5301 Wisconsin Ave NW
Washington, DC 20015
Telephone: (202) 237-2727
Facsimile: (202) 237-6131
Email: ksmith@bsfllp.com
*Admitted in New York only.  Practice
supervised by members of the firm.

*Attorneys for Defendant Ann Freedman*

97

Dated:  New York, New York
        November 24, 2015

CLARICK GUERON REISBAUM LLP

_____
Gregory A. Clarick
Emily Reisbaum
Aaron H. Crowell
Sarah Louise Bishop
Courtney L. Milianes
220 Fifth Avenue, 14th Floor
New York, NY 10001
Phone:  (212) 633-4310
Fax:  (646) 478-9484

*Attorneys for Plaintiffs Domenico and
Eleanore De Sole*

NORTON ROSE FULBRIGHT US LLP

_____
Charles D. Schmerler
Mark A. Robertson
Sarah E. O'Connell
666 Fifth Avenue
New York, NY 10103
Tel.:  212.318.3000
Fax:  212.318.3400

*Attorneys for Defendants Knoedler Gallery
LLC and 8-31 Holdings, Inc.*


BOIES, SCHILLER & FLEXNER LLP

_____
Luke Nikas
575 Lexington Avenue
New York, New York 10022
Telephone: (212) 446-2300
Facsimile: (212) 446-2350
Email: lnikas@bsfllp.com

Kyle Smith* (pro hac vice)
5301 Wisconsin Ave NW
Washington, DC 20015
Telephone: (202) 237-2727
Facsimile: (202) 237-6131
Email: ksmith@bsfllp.com
*Admitted in New York only.  Practice
supervised by members of the firm.

*Attorneys for Defendant Ann Freedman*