

By ECF & Hand Delivery                                                                                  January 21, 2016

Hon. Paul G. Gardephe
United States District Court
Southern District of New York
40 Foley Square
New York, NY 10007

      Re:    *De Sole v. Knoedler Gallery*, No. 12 Civ. 2313

Dear Judge Gardephe:

      We write to address the Court's questions raised earlier today concerning the availability in 2004 of techniques that Plaintiffs' expert James Martin used to determine that 18 Rosales works are fake.

      *First*, Mr. Martin identified many problematic elements in the Rosales works through simple observation, with light and/or with a microscope—for example, the inappropriate white "grounds" on the De Soles' "Rothko," the misspelled "Pollock" signature, traced signatures, works painted one over another, suspiciously rubbed-in dirt, and use of an electric sander. (*See* Martin Rep. at 22-37.)[1]  There does not appear to be any dispute that the techniques that Mr. Martin used to make these observations existed well before 2004.

      S*econd*, Mr. Martin also used "FTIR" and "Raman" analysis to identify anachronistic—historically inaccurate—paints, pigments and binders in artworks that Rosales delivered to Knoedler.  These identifications were another factor that led to Martin's conclusion that all 18 works are fake.  (*See* Martin Rep. at 12-21.)  Abundant evidence in the record shows that both of these techniques have been available for decades—well before 2004—to identify such materials.

      As described in his report and discussed at his deposition, Mr. Martin has taught FTIR analysis for over 20 years and first studied Raman spectroscopy in 1995.  (*See* Martin Rep. at 75; *see also* Ex. D to Dkt. No. 389 (Martin Dep. (May 23, 2014), at 49:3-10 (from 1991 through 2000, Martin built the Williamstown Art Conservation Center "to become recognized as a national provider of light microscopy and FTIR microscopy"); *id.* at 54:18-55:9 (describing 1994 assignment for FBI using FTIR analysis).)  Mr. Martin will reaffirm these points in his trial testimony.  In addition, the record is already replete with other evidence confirming that FTIR and Raman were available well before 2004.

---

[1] The Martin Report, Supplemental Report and Supplemental Report Addendum are attached to the Schmerler Declaration Submitted in Support of Defendants' Motion *In Limine* to Exclude James Martin, Dkt. No. 329, at Exs. 1, 6 and 7, respectively.  We refer directly to such documents herein.

Hon. Paul G. Gardephe
January 21, 2016
Page 2

### Availability of FTIR Before 2004 for Paint Analysis

In his bibliography (Martin Rep. § 3 at 65-74)), Martin provides a wealth of references—many dating from before 2004—that discuss the use of FTIR years before 2004. *See, e.g.*, Bowdoin College, *Infrared Spectroscopy* Vol. 1 (Maine: Bowdoin College, 1995); Derrick, M., D. Stulik and J. Landrey, *Infrared Spectroscopy in Conservation Science* (Los Angeles: The Getty Conservation Institute 1999); GCI, *Infrared Spectral Library of Art and Conservation Materials: Natural and Synthetic Products*, Vols. 1 & 2 (Marina del Ray: The Getty Institute, 1995); Learner, *Analysis of Modern Paints* (Los Angeles: The Getty Conservation Institute, 2004).

In addition, the reference spectra on which the specific FTIR findings in his report are based—set forth in his Table of Reference Spectra (*see* Supp. Rep. App. 14)—are almost all derived from a 1991 authority, Brezinski, D. ed., *An Infrared Spectroscopy Atlas for the Coatings Industry*, 4th ed., Vol. 1, (Bluebell: Federation of Societies for Coatings Technology, 1991) (also identified in Martin Rep. at 65). As he will testify, the balance of Mr. Martin's FTIR reference spectra were those that he produced while developing an ASTM test method for identification of organic pigments; ASTM published that method in 2000.

Other submissions before the Court likewise confirm the availability of FTIR for paint analysis before 2004. For instance, the report of Defendants' proffered expert Nicholas Eastaugh cites articles on the use of FTIR Spectroscopy from as early as 1995. *See, e.g.,* Ex. 9 to Dkt. No. 329, ("Eastaugh Rep.") at 194 (citing Learner, T.J., "The use of a diamond cell for the FTIR characterisation of paints and varnishes available to twentieth century artists," *IRUG2 1995, Postprints* (1998), pp.7-20); *see also id.* at 184 (citing Cappitelli, F., "THM-GCMS and FTIR for the Study of Binding Media in Yellow Islands by Jackson Pollock and Break Point by Fiona Banner," JAAP 71 (2004), pp.405-415). In addition, in support of Plaintiffs' opposition to the motion to exclude Mr. Martin, independent expert Scott George Ryland submitted a declaration that, *inter alia*, referenced a 1995 presentation he made at the FBI Academy on FTIR spectroscopy in connection with forensic paint examinations. *See* Ex. A to Dkt. No. 382, Ryland Decl. at 16.

### Availability of Raman Analysis Before 2004 for Paint Analysis

The record is likewise replete with authoritative references to the availability of Raman analysis before 2004. In his bibliography (Martin Rep. § 3 at 73), Martin references two 2000 articles concerning the use of Raman to analyze paint pigments, *see* Vandenabeele, P., et al., "Raman Spectroscopic Database of Azo Pigments and Application to Modern Art Studies," J. Raman Spetroscopy 31, at 509-517 (2000); Vandenbeele, P., et al., "Analysis with Microraman Spectroscopy of Natural Organic Binding Media and Varnishes Used in Art," Analytica Chimic 407, at 261-74 (2000).

Again, other record submissions also establish the availability of Raman analysis for the analysis of paints before 2004. The CV of Joseph Barabe, employee of defense expert McCrone,

Hon. Paul G. Gardephe
January 21, 2016
Page 3

indicates that he published articles and gave presentations on the use of Raman spectroscopy as early as 2001. *See* Ex. C to Dkt. No. 389, Barabe CV at 5 ("Raman Spectroscopy of Watercolor Pigments," *Microscope*, Vol. 49:3, at 159-170 (2001)); *id.* (presentation, "Raman Spectroscopy in Art Authentication Studies," American Institute for Conservation of Historical Artistic Works (June 2001)); *see also id.* at 4 (noting participation in one-week workshop, "Pigment Identification Techniques for the Art & Architectural Conservator," September 2003). Further, Defendants' expert Eastaugh cites additional articles reflecting the use of Raman spectroscopy from 1999 through 2001. *See* Eastaugh Rep. at 184 (citing Burgio, L. and Clark, R.J.H., "Library of FT-Raman spectra of pigments, minerals, pigment media and varnishes, and supplement to existing library of Raman spectra of pigments with visible excitation," *Spectrochimica Acta Part A*, 57 (7) at 1491-1521 (2001)); *id.* at 197 (citing Massonnet, G. and W. Stoecklein, "Identification of Organic Pigments in Coatings: Applications to Red Automotive Topcoats, Part III: Raman Spectroscopy (NIR FT-Raman)," *Science & Justice*, 39 (3) at 181-87 (1999).) And, opposing Defendants' motion to exclude Mr. Martin, independent expert Edward Suzuki submitted a declaration and CV indicating, *inter alia*, that he published articles and presented workshops on Raman spectroscopy in 2001. *See* Ex. A to Dkt. No. 381, Suzuki Decl. at 6 (noting that he was coordinator and instructor for workshop, "Forensic Applications of Raman Spectroscopy," American Academy of Forensic Sciences Meeting Workshop, February 2001 (Seattle, WA)) *id.* at 9 (noting his co-authorship of "In Situ Identification and Analysis of Automotive Paint Pigments Using Line Segment Excitation Raman Spectroscopy: I. Inorganic Topcoat Pigments," *Journal of Forensic Sciences,* 46, 1053, 2001).

Record evidence also shows, anecdotally, the availability of these techniques before 2004. As discussed at today's conference, Freedman's favored conservator Dana Cranmer testified that she hired Mr. Martin in approximately 2003 to perform Raman and FTIR analysis on an unrelated work (*see* Ex. E to Dkt. No. 389, Cranmer Dep. at 78:3-80:6).

Accordingly, the record establishes that the techniques Mr. Martin used were readily available in 2004 to test the Rosales works and prove them fake, just like Mr. Martin has done.

For these reasons and those previously set forth in plaintiffs' opposition papers and prior letter submissions, the Court should deny Defendants' motion *in limine* seeking to exclude Mr. Martin's expert testimony.

Sincerely,

Gregory A. Clarick

cc:   All counsel (by ECF)