UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

DOMENICO and ELEANORE DE SOLE, individually and as assignees of LAURA DE SOLE,

                Plaintiffs,

   -against-

KNOEDLER GALLERY, LLC d/b/a KNOEDLER & COMPANY, ANN FREEDMAN, GLAFIRA ROSALES, JOSE CARLOS BERGANTINOS DIAZ, MICHAEL HAMMER, 8-31 HOLDINGS, INC., and JAIME R. ANDRADE,

                Defendants.

12 Civ. 2313 (PGG)

**DEFENDANTS' BRIEF IN OPPOSITION TO PLAINTIFFS'
OFFER OF PROOF REGARDING DEFENDANTS' MOTION *IN LIMINE*
TO EXCLUDE EVIDENCE OF RELATED LAWSUITS**

Dated: January 22, 2016

        **BOIES, SCHILLER & FLEXNER LLP**

        Luke Nikas
        575 Lexington Avenue
        New York, New York 10022
        Telephone: (212) 446-2300
        Facsimile: (212) 446-2350
        Email: lnikas@bsfllp.com

        *Attorneys for Ann Freedman*

Defendant Ann Freedman submits this memorandum in further support of her motion *in limine* to exclude evidence of related lawsuits and in opposition to Plaintiffs' offer of proof on this issue [Dkt. 404].[1]

### DEFENDANTS' OPPOSITION TO PLAINTIFFS' OFFER OF PROOF REGARDING EVIDENCE OF RELATED LAWSUITS

Plaintiffs seek to bolster their case by referring to lawsuits filed by others against Freedman and Knoedler Gallery. The arguments in Plaintiffs' offer of proof and in response to questions raised by the Court at yesterday's hearing do not support the Plaintiffs' effort. Hearsay evidence regarding allegations in related suits, or the existence of the suits themselves, would greatly prejudice Defendants and have little to no probative value. *See* Dkt. 404. So, too, would introducing evidence about Knoedler's closure.

**I.  THE SPECIFIC ALLEGATIONS UNDERLYING THE RELATED LAWSUITS ARE NOT NEEDED TO REFRESH WITNESSES' RECOLLECTIONS OR TO IMPEACH, AND ALLOWING THEIR INTRODUCTION FOR THIS PURPOSE WOULD BE HIGHLY PREJUDICIAL.**

Plaintiffs contend that they will need to refer to other lawsuits in the presence of the jury to refresh witnesses' recollection or impeach them. *See* Dkt. 404 at 4. Plaintiffs further claim that they need to refer to the suits to "orient" witnesses. The "*only*" purpose for these references to the other cases, Plaintiffs say, is to lay foundation about the witnesses' recollection of having given testimony in a prior case. *Id*

Plaintiffs' reference to other lawsuits for this purpose is unnecessary and prejudicial. It is unnecessary because Plaintiffs do not need to refer to the other lawsuits either by name or their factual context to lay foundation for refreshing recollections or impeaching. The law imposes no such requirement, and Plaintiffs do not say otherwise. All the law requires is that the witness be

---

[1] Defendants Knoedler Gallery, LLC and 8-31 Holdings, Inc. join this submission. Defendants' original motion *in limine* can be found at Dkt. Nos. 284 (Notice of Motion) and 285 (Memorandum of Law) ("Def. Br.").

afforded "an opportunity to explain or deny the prior inconsistent statement" and that the opposite party be afforded "an opportunity to question the witness" about the prior statement. *E.g.*, *United States v. Ghailani*, 761 F. Supp. 2d 114, 118-19 (S.D.N.Y. 2011).  Nothing in those requirements states or implies that it is necessary to describe the details or the fact of prior lawsuits in which supposedly inconsistent statements were made.

Plaintiffs' efforts would be prejudicial because the other cases consist of mere allegations, not any adjudicated issues.  Courts regularly exclude such evidence.  Def. Br. at  3-4.

## II. THE EXISTENCE OF THE *LAGRANGE* SUIT IS IRRELEVANT TO THE STATUTE OF LIMITATIONS FOR THE BREACH OF WARRANTY CLAIMS

Plaintiffs also argue that it is necessary to discuss the *Lagrange* lawsuit because that action is what put Plaintiffs on notice of their potential claims in this case.  Thus, Plaintiffs say, the *Lagrange* suit is relevant to analyzing issues regarding the statute of limitations.

Plaintiffs' assertion reflects a misunderstanding of the statute of limitations issue in the case.  The only statute of limitations defense Defendants anticipate raising is Knoedler's limitations defense regarding Plaintiffs' breach of warranty claims.  But the *Lagrange* lawsuit has nothing to do with that defense.  The only question of fact to be resolved by the jury with respect to the statute of limitations defense on the warranty claim is whether an insurance appraisal letter that Knoedler sent to Plaintiffs years before the *Lagrange* lawsuit tolled the statute of limitations.  If the jury holds that the letter tolled the statute, then the limitations defense will fail.  If the jury holds that the letter did not toll the statute, the defense will succeed. No other factual questions are at issue, and certainly none that have anything to do with the *Lagrange* lawsuit.

2

### III. NEITHER THE FACTS NOR THE LAW SUPPORT PLAINTIFFS' INTENDED EFFORT TO SHOW CONSCIOUSNESS OF GUILT BY INTRODUCING EVIDENCE OF KNOEDLER'S CLOSURE.

Plaintiffs argue that they should be allowed to bring the *Lagrange* lawsuit to the jury's attention in connection with testimony about the circumstances surrounding the closure of Knoedler Gallery in December 2011—more than seven years after the Plaintiffs bought their painting from Knoedler. Specifically, Plaintiffs say that it is necessary to "test the credibility" of witnesses who are "anticipated" to testify that the closure of Knoedler Gallery was unrelated to the *Lagrange* litigation. But the reasons for Knoedler's closure in 2011 are irrelevant to Plaintiffs' claims, which are premised on alleged fraudulent acts by Freedman and Knoedler that took place years before.

In connection with this issue, the Court inquired at yesterday's conference whether Plaintiffs should be allowed to argue that Knoedler's closure in the wake of the threatened *Lagrange* lawsuit shows Knoedler's consciousness of guilt. Defendants respectfully submit that it does not and that Plaintiffs should not be permitted to introduce evidence on this issue.

*First,* the evidence does not support Plaintiffs' theory: the clear and consistent testimony of those involved with the closure decision reveals that the decision was not tied to any "consciousness of guilt" held by Knoedler or its employees. Specifically, the factual record demonstrates that Michael Hammer had been in the process of closing the gallery for the better part of a year before the *Lagrange* lawsuit was filed. As Hammer stated in a declaration in opposition to the application for TRO and Preliminary Injunction in the *Lagrange* matter, Knoedler had incurred operating losses for the prior two years. *See* Declaration of Michael Hammer dated December 6, 2011 ("Hammer Decl."), attached hereto as Exhibit A, at ¶ 3. In an effort to stem the losses, Knoedler sold its Upper East Side townhouse where the gallery had been operating. *Id.* In connection with that sale, Hammer negotiated a year of free rent in the

3

building in which Knoedler was housed, terminating in February 2012. *Id.* Hammer then made the decision to close the business when that rent-free period expired. *Id.* There was therefore never any question that the gallery would close, *at the absolute latest*, in February 2012.

Frank Del Deo, who succeeded Freedman as President of Knoedler, testified similarly at the preliminary injunction hearing in the *Lagrange* matter that he had been involved in discussions about closing the gallery since June 2011. *Lagrange v. Knoedler Gallery LLC et al.*, 11 Civ. 8757, Dkt. 16, attached hereto as Exhibit B, at 114:15-19. Thus, the undisputed testimony from multiple witnesses, provided over four years ago, makes clear that the gallery was facing imminent closure months before Knoedler received the complaint. Del Deo testified in this action that, faced with the prospect of a lawsuit against Knoedler, he became concerned with how any negative press might impact him *personally* and therefore decided to resign. *See* Deposition of Frank Del Deo dated May 10, 2013, attached hereto as Exhibit C, at 23:24-24:10. Del Deo was the only remaining executive of the gallery; without a sales force, Hammer moved up the closing date by two months.

These facts cannot legitimately be disputed and do not support a good-faith basis for Plaintiffs' effort to argue that Knoedler's closure reflects consciousness of guilt. Thus, the only remaining issue Plaintiffs could try to raise is whether the fact that Knoedler closed in December rather than February is probative of anything untoward. It is not. The two-month difference in time reveals nothing. Once it was clear that Knoedler, which was set to close in short order anyways, was facing the prospect of expending enormous costs to defend itself in litigation as a result of a threatened lawsuit, it made the decision to accelerate the closing by a mere two months. That is not probative of consciousness that Knoedler had *actually* done anything wrong;

all it shows is that Knoedler was taking actions consistent with the undisputed fact that it would have to spend significant funds to *defend itself* against allegations of wrongdoing.

These issues involving consciousness of guilt typically arise in the criminal context when a defendant has fled the scene of a crime. In those circumstances, the standard of admitting this category of evidence is high. Courts allow evidence of flight (*i.e.*, the defendant's action once he knows that he faces prosecution of some sort) only if it supports each of four separate inferences linked together in a chain: "(1) from the defendant's behavior to flight; (2) from flight to consciousness of guilt; (3) from consciousness of guilt to consciousness of guilt concerning the crime charged; and (4) from consciousness of guilt concerning the crime charged to actual guilt of the crime charged." *United States v. Al-Sadawi*, 432 F.3d 419, 424 (2d Cir. 2005)

If, hypothetically, the record evidence here had shown that Knoedler did not have plans to close, or if it had plans to close far in the future, but Knoedler abruptly changed its plans, then Plaintiffs could arguably support at least some of the links in the above chain of inferences. As explained above, however, those are not the facts here, and Plaintiffs have no good-faith basis to say they will be. The decision to accelerate the closing date by two months does not support the numerous exacting inferences that Plaintiffs would need the jury to draw.

*Second*, assuming the evidence actually supported Plaintiffs' assertion that Knoedler closed *solely* because of a threatened lawsuit (which it does not), the underlying reasons for closing Knoedler may still be irrelevant and create a mini-trial about the *Lagrange* case itself. For example, again assuming Plaintiffs' inaccurate assertion that Knoedler did not intend to close, Knoedler could have reasonably decided to close because of the cost of defending against the lawsuit or the difficulty of doing business while fraud litigation is pending, not because of the merits of the complaint itself. This is especially so when Knoedler's business was already down.

5

Yet to accurately determine whether Knoedler closed for these reasons, versus reasons related to consciousness of guilt, the jury would need to assess the underlying facts in the *Lagrange* lawsuit and Knoedler's evaluation of its merits. This mini-trial would be more prejudicial than probative.

Moreover, this potential inference of "guilt" would be particularly prejudicial to Ann Freedman, who was not employed at Knoedler when it closed and had no role in deciding whether to close Knoedler. Plaintiffs' strategy of using Knoedler's closure to show *Knoedler's* "guilt" could spill over to the jury's assessment of Ann Freedman, even though Knoedler's decision to close says nothing about Ann Freedman's state of mind. And to assess whether the closure reflected evidence of Knoedler's view about Ann Freedman, the jury would also need to assess Knoedler's evaluation of the *Lagrange* case and its merits. A jury would then need to assess Knoedler's evaluation of distinct claims it alone could face, such as breach of warranty, versus the claims that could be brought against Ann Freedman. This mini-trial would be highly confusing and prejudicial.

The speculative inference that Plaintiffs wish to draw to support their alter ego claims against 8-31 Holdings, Inc. is also unsupported by the evidence. As recognized by Plaintiffs themselves at yesterday's hearing, no evidence exists in the record that Knoedler transferred money to 8-31 at or around the time Knoedler closed. The timing of Knoedler's closing in relation to the *Lagrange* lawsuit is therefore entirely irrelevant to Plaintiffs' effort to impose liability under a theory of alter ego.

### IV. PLAINTIFFS' DESIRE TO END THEIR STORY WITH TESTIMONY ABOUT THE *LAGRANGE* MATTER AND KNOEDLER CLOSING DOES NOT JUSTIFY ADMITTING THIS EVIDENCE

Plaintiffs claim that they must present evidence of the *Lagrange* action and Knoedler's closure to tell their full story. Specifically, they argue that they should be permitted to explain to

the jury how they came to file suit, lest the jury draw the conclusion that there was an inexcusable delay in bringing this action. This argument should be rejected for two reasons.

*First,* as explained above, Defendants will not argue that the statute of limitations ran on the ground that Plaintiffs had not sued before the *Lagrange* action was made public. The only statute of limitations issue in the case arises from Knoedler's appraisal letter, sent years earlier. Knoedler's closure and the *Lagrange* suit, as well as the subsequent press, are legally irrelevant to the question of when and why the Plaintiffs sued and how they learned of their claims.

*Second*, Plaintiffs' desire to tell this portion of their story—they sued in 2012, and not before, because they learned of their claims from the *Lagrange* case or press about Knoedler's closure—does not make this story legally relevant. Not a single legal issue in this case turns on the Plaintiffs' assertion that they delayed suing until reading about the *Lagrange* lawsuit or Knoedler's closure. The jury would need to disregard the Court's instructions about the applicable claims and defenses to attribute any legal meaning to this portion of Plaintiffs' story. The Court should not admit this prejudicial evidence on basis that the jury might ignore the Court's instructions about the governing law.

## CONCLUSION

Reference to the other lawsuits and Knoedler's closure would be highly prejudicial and irrelevant to the issues in this case. For these reasons, and the reasons set forth in Defendants' motion [Dkt. 285], the motion *in limine* should be granted.

Dated: January 22, 2016

          Respectfully submitted,

          **BOIES, SCHILLER & FLEXNER LLP**

By:    */s/ Luke Nikas*

          Luke Nikas
          575 Lexington Avenue
          New York, New York 10022
          Telephone: (212) 446-2300
          Facsimile: (212) 446-2350
          Email: lnikas@bsfllp.com

          Nathan Holcomb
          333 Main Street
          Armonk, NY 10504
          Telephone: (914) 749-8228
          Facsimile: (914) 749-8300
          Email: nholcomb@bsfllp.com

          *Attorneys for Ann Freedman*