UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| DOMENICO DE SOLE and ELEANORE DE SOLE, individually and as assignees of LAURA DE SOLE,<br><br>                Plaintiffs,<br><br>        -against-<br><br>KNOEDLER GALLERY, LLC D/B/A KNOEDLER & COMPANY, ANN FREEDMAN, GLAFIRA ROSALES, JOSE CARLOS BERGANTINOS DIAZ, MICHAEL HAMMER, 8-31 HOLDINGS, INC., and JAIME ANDRADE,<br><br>                Defendants. | 12 Civ. 2313 (PGG) (HBP)<br><br>**Defendant Knoedler's**<br>**Second Supplemental Brief on**<br>**Breach of Warranty Damages** |

       In accordance with this Court's January 27, 2016 request, Defendant Knoedler Gallery, LLC ("Knoedler") files this supplemental brief regarding the appropriate measure of damages for breach of warranty under the Uniform Commercial Code.

### INTRODUCTION

       Plaintiffs allege a breach of warranty under UCC § 2-313(1) and seek damages under UCC § 2-714.[1] Plaintiffs seek to recover a hypothetical "appreciated" value of an authentic Rothko painting, a painting that does not exist. No case law exists—and plaintiffs cite none—in New York or any other jurisdiction that has permitted this type of recovery under section 2-714. Plaintiffs' attempt to recoup this windfall should be rejected.

    **1. No Case Law Exists Providing Appreciation Damages Under the UCC.**

       Knoedler explained in its first supplemental brief that it has not located any authority awarding "appreciation" damages under § 2-714(2). Plaintiffs, too, were unable to locate any

---

[1] Statutory references are to the New York Uniform Commercial Code unless otherwise noted.

54484587.1

authority supporting their claim. The cases plaintiffs primarily rely on in their first supplemental briefing are about *lost profits* for breach of warranty claims.[2] Plaintiffs, however, are not seeking lost profits or any other form of consequential damages. Although they acknowledge that the cases they rely upon are lost profits cases when they state "these cases generally address lost profits," plaintiffs conclusorily assert that "the principle is the same" for recovering lost profits as recovering "appreciation" damages arising from "a shortfall in the value of the goods delivered[.]" *See* Plaintiffs' Supp. Br. Regarding Damages for Breach of Warranty (filed Jan. 20, 2016) ("Pl. Br.") at 3 (quoting section 2-714(3) before discussing section 2-714(2) exclusively); *id* ("cases address lost profits, not a shortfall of the goods delivered as here"). Plaintiffs overlook the fact that section 2-714(2) provides the measure of damages for "a shortfall in the value of goods delivered"—namely, "the difference at the time and place of acceptance between the value of the goods accepted and the value they would have had if they had been as warranted."

Unlike plaintiffs' assertion that appreciation damages can be recovered because "the principle is the same" as lost profits damages, the damages that can be recovered under section 2-714(2) are distinct from the lost profits damages that can be recovered under section 2-715. *See*

---

[2] For example, *Larsen* assessed lost profits damages under § 2-715 for a violation of an implied warranty of merchantability under § 2-314 in a contract for the sale of potatoes that the buyer intended to resell. *Larsen v. A.C. Carpenter, Inc.*, 620 F. Supp. 1084, 1131 (E.D.N.Y. 1985), *aff'd*, 800 F.2d 1128 (2d Cir. 1986); *see also Wullschleger & Co. v. Jenny Fashions, Inc.*, 618 F. Supp. 373, 378 (S.D.N.Y. 1985) (awarding lost profits as consequential damages under section 2-714(3) for breach of warranty of fitness of fabric); *United Cal. Bank v. Eastern Mountain Sports, Inc.*, 546 F. Supp. 945, 967 (D. Mass. 1982) (same); *Leininger v. Sola*, 314 N.W.2d 39, 45-46 (N.D. 1981) (allowing lost profits as component of consequential damages for breach of warranty in sale of dairy cows); *Seely v. White Motor Co.*, 63 Cal. 2d 9, 14-15 (1965) (applying California statute to allow lost profits in breach of warranty of truck purchased for commercial purposes); *Clark v. Int'l Harvester Co.*, 581 P.2d 784, 804-05 (Idaho 1978) (allowing lost profits for down time in defective product case); *Delano Growers' Co-op. Winery v. Supreme Wine Co.*, 473 N.E.2d 1066, 1077 (Mass. 1985) (allowing lost profits as component of consequential damages); *Matsushita Elec. Corp. of Am. v. Sonus Corp.*, 284 N.E.2d 880, 890-91 (Mass. 1972).

*Warren W. Fane, Inc. v. Tri-State Diesel, Inc.*, No. 1:12-CV-1903, 2014 WL 1806773, at *11 (N.D.N.Y. May 7, 2014) ("recovery permitted under [§ 2-714(2)]" is "distinct from consequential damages"); *In re Rust-Oleum Restore Mktg., Sales Practices & Products Liab. Litig.*, No. 15 C 1364, 2016 WL 74671, at *13 (N.D. Ill. Jan. 7, 2016) ("Section 2-714(2) of the U.C.C. defines direct damages more narrowly" than the consequential damages provision in section 2-715(2)).

Plaintiffs' supplemental brief relies on another line of cases—*City of New York v. Pullman*, 662 F.2d 910 (2d Cir. 1981), and *Gem Jewelers v. Dykman*, 160 A.D.2d 1069, 553 N.Y.S.2d 890 (1990)—in support of their "appreciation" damages model, but those cases are distinguishable: they do not involve appreciation damages. *See* Pl. Br. at 4. Instead, those cases involved the replacement of goods that had been custom built to meet contractual specifications.

The plaintiffs in both *Pullman* and *Gem Jewelers* contracted for specialized goods to be built to contract specifications. *See Pullman*, 662 F.2d at 918; *Gem Jewelers*, 160 A.D.2d at 1070-71. When the goods as delivered failed to meet the essential purpose of the contract, the replacement value was the reasonable alternative to the UCC's default damages measure. *Id.* In *Pullman*, defendants furnished railcars that did not perform as warranted, and the failure of the defendants' product led to widespread disruptions in New York's subway system. *Pullman*, 662 F.2d at 918. The Second Circuit held that the jury could award damages that would allow the plaintiff to "meet[] the ultimate requirements of the contract," which amounted to the cost to purchase replacement equipment that met the contractual requirements. *Id.* Likewise, the appellate court in *Gem Jewelers* allowed damages equal to the replacement cost of acquiring custom built cabinets that met the contractual requirements. *Gem Jewelers*, 160 A.D.2d at 1070-71.

Unlike in *Pullman* and *Gem Jewelers*, the De Soles did not contract for specialized goods to be custom built for a specific purpose. Unlike in *Pullman* and *Gem Jewelers*, the De Soles are not seeking damages to replace goods that had been custom designed and built for them. Because here "the goods [the painting] cannot be repaired or replaced . . . the costs of repair or replacement cannot serve as a yardstick of the buyer's damages. . . . The fair market value at the time of acceptance is the most appropriate measure of the value of the goods as warranted." 1 WHITE, SUMMERS & HILLMAN, UNIFORM COMMERCIAL CODE (6th ed. 2012) § 11:3, at p. 974.

### 2. "Appreciation Damages" Are Not Appropriate.

As plaintiffs cite in their supplemental brief, a few courts have found special circumstances and awarded appreciation damages in limited contexts. *See* Pl. Br. at 4-5 (citing *Pagliai v. Del Re*, No. 99 Civ. 9030, 2000 WL 122142, at *1 (S.D.N.Y. Jan. 31, 2000) (awarding appreciation damages to the victim of theft); *In re Rothko's Estate*, 43 N.Y.2d 305, 372 N.E.2d 291 (1977) (awarding appreciation damages arising from fraudulent sale of artwork); *Menzel v. List*, 24 N.Y.2d 91, 97 (1969) (awarding appreciation damages arising from theft of artwork by Nazis). Those cases, which comprise the entire universe of "appreciation" case law supporting plaintiffs' damages model, involve either breach of warranty of *title* arising from a theft or conversion, or are not warranty cases at all. With respect to breach of warranty, only in the limited context of a breach of warranty of title arising from a theft or conversion have courts awarded appreciation damages.

A non-warranty, breach of fiduciary duty case relied upon by plaintiffs allowing appreciation damages shows why appreciation damages are inappropriate here. *See In re Rothko's Estate*, 43 N.Y.2d at 372. The case involved a dispute over the estate of Mark Rothko, whose beneficiary trustees fraudulently sold trust property to art galleries in which they had an interest. *Id.* The court held that "appreciation damages" were permitted as damages for the torts

committed in that case. *Id.* at 322. Plaintiffs cite *In re Rothko's Estate* in an attempt to show they are entitled to appreciation damages. Two factors, however, were critical in reaching that conclusion: imposing punitive damages on the wrongdoer and restoring property to a victim of theft. Neither of these factors is present here.

First, an award of "punitive damages for the breach of contractual obligations, such as express warranties, are generally unavailable unless necessary to vindicate a public right." *See Bristol Vill., Inc. v. Louisiana-Pac. Corp.*, 916 F. Supp. 2d 357, 371 (W.D.N.Y. 2013) ("Punitive damages are recoverable in contract claims where the breach involved particularly egregious fraud aimed at the public generally."). New York courts will award punitive damages for breach of warranty only when a seller fraudulently targets the general population with a false promise. *See Mayline Enters., Inc. v. Milea Truck Sales Corp.*, 641 F. Supp. 2d 304, 311-12 (S.D.N.Y. 2009) (declining to award punitive damages in breach of warranty case because "plaintiff has still proven only a single incident of odometer alternation," which is insufficient to recover punitive damages "[u]nder New York law."). In *Rothko*, the New York Court of Appeals held (in a tort claim) that appreciation damages[3] "might be considered by some to be exemplary in a sense, in that they serve as a warning to others[.]" *In re Rothko's Estate*, 43 N.Y.2d at 322, 372 N.E.2d 291 (1977). Imposing appreciation damages here would inappropriately smuggle punitive damages into a contractual transaction whose damages are governed by the Uniform Commercial Code. No evidence exists that anyone targeted the general population with a false promise.

Second, when not purely punitive, "appreciation damages" are designed to make whole a victim of *theft* or *conversion*—that is, to restore an authentic work to its rightful owner. For

---

[3] The Court of Appeals acknowledged the general rule that a trustee in breach "is not liable [] for any subsequent rise in value of the property sold." *Id.* at 321 (quoting 3 Scott, *Trusts* (3d ed.) § 208.3).

54484587.1

example, in *Menzel v. List*, as explained in Knoedler's earlier brief, the court permitted appreciation damages in a non-UCC case under a different damages statute. *See* 24 N.Y.2d at 97.[4] The *Rothko* court explained that *Menzel* was based on this property-law rationale that "the paintings cannot be returned" even though their rightful owners were entitled to replevin. *In re Rothko's Estate*, 43 N.Y.2d at 322. Even if a non-UCC case based on a different damages provision could apply to this case, theft and conversion do not apply in this case. Thus, it is inappropriate to apply a damages measure designed to restore stolen property to its true owner. *See id.*

For these reasons, plaintiffs' request for hypothetical "appreciation" damages for a non-existent work is improper, is unsupported by New York law, and should be denied.

### 3. Return of the Purchase Price Is the Appropriate Damages Measure.

A breach of warranty claim is a type of breach of contract claim. *See, e.g., Bristol Vill.*, 916 F. Supp. 2d at 371 ("damages for the breach of contractual obligations, such as express warranties"). Under New York law, breach of contract "[d]amages are intended to return the parties to *the point at which the breach arose*[.]" *Seidman v. Indus. Recycling Properties, Inc.*, 106 A.D.3d 983, 985, 967 N.Y.S.2d 77, 79 (2013) (emphasis added). "The proper measure of damages for breach of contract is determined by the loss sustained or gain prevented at the time and place of breach[,]" *Simon v. Electrospace Corp.*, 28 N.Y.2d 136, 145, 269 N.E.2d 21 (1971), and "not the date of trial." *Cole v. Macklowe*, 64 A.D.3d 480, 480, 882 N.Y.S.2d 417, 419 (2009).

---

[4] Unlike the UCC provision here, the damages provision in that non-UCC case did not cabin the court's discretion. N.Y. Personal Property Law § 94, Repealed by N.Y. U.C.C. § 13-102, eff. Sept. 27, 1964.

Here, any breach of warranty occurred when the De Soles acquired the painting.. "[T]he purchase price set in the course of an arm's-length transaction . . . is evidence of the 'highest rank' to determine the true value of the property at that time[.]" *Plaza Hotel Assocs. v. Wellington Assocs., Inc.*, 37 N.Y.2d 273, 277, 333 N.E.2d 346, 349 (1975) ("the price paid . . . being proximate in time to *the date the land was to be valued* . . . should be accorded significance of the highest rank as a determiner of the value of the property, unless explained away as abnormal in some fashion.") (emphasis added) (breach of real estate contract discussing general valuation rule for breach of contract). Therefore, this Court should assess damages at the time the painting was purchased.

The parties to this transaction did not identify the remedy for a breach of warranty of authenticity. In the absence of an agreement between the parties addressing this circumstance, "the commonsense rule to apply is to consider what the parties would have concluded had they considered the subject." *Kenford Co. v. Erie Cty.*, 67 N.Y.2d 257, 262, 493 N.E.2d 234 (1986) (breach of contract case in which parties did not provide for nature of damages plaintiff claimed). Nothing suggests that Knoedler would have been willing to agree to an unlimited, hypothetical increase in the value of a non-existent painting. Instead, as the Court knows, the only evidence at trial that relates to this issue is that Knoedler previously agreed to return the purchase price of a purported Jackson Pollock to a buyer if the International Foundation for Art Research did not provide affirmation of the painting's authenticity. Def. Tr. Ex. EX. No evidence exists that Knoedler would have agreed to an unlimited, hypothetical increase instead of the return of the purchase price. Agreeing to an unlimited, hypothetical increase in the value of a non-existent

54484587.1

- 7 -

painting would dramatically increase the risk a warrantor such as Knoedler would incur,[5] thus sharply raising the transaction costs of selling art. It is unreasonable to assume the parties intended for Knoedler to insure the future value in perpetuity of non-existent painting, particularly in light of the fact that no case law supports plaintiffs' alternative position.

## **CONCLUSION**

No reason exists to deviate from the UCC's default rule because this case does not present "exceptional circumstances." Even if it did, the reasonable measure of damages is the UCC's default rule: the difference between the value of the item as warranted and the value of the item at the time of delivery. The ideal metric for such a valuation is the price the parties, in an arm's-length transaction, agreed to pay.  Imposing liability based on property or tort claims would unfairly punish a warrantor, contrary to the public policy of New York and the purpose of the UCC, which is to facilitate commerce.  *See* § 1-103.

---

[5] As Knoedler explained in its first supplemental brief, one reason for this is that a vendor would not be able to assess the risk of providing a warranty.  Defendant Knoedler's Supp. Br. on Damages. For Breach of Warranty (Jan. 20, 2016) at 4-5 ("[Plaintiffs' proposed damages model] would expose sellers of fine art to a much higher risk than sellers of other goods.  As this case demonstrates, the value of a painting can vary wildly in just a few years.  It is unreasonable to impose potentially astronomical liability on a dealer when the dealer turns out to be mistaken about the facts underlying a warranty, particularly if the dealer has completed appropriate due diligence about the painting and the warranty.").

- 9 -

        NORTON ROSE FULBRIGHT US LLP

        By:   /s/Mark A. Robertson
            Charles D. Schmerler
            Mark A. Robertson
            Sarah O'Connell
        666 Fifth Avenue, 31st Floor
        New York, New York 10103-3198
        Telephone: 212.318.3021
        Facsimile: 212.318.3400
        charles.schmerler@nortonrosefulbright.com
        mark.robertson@nortonrosefulbright.com
        sarah.oconnell@nortonrosefulbright.com

        *Attorneys for Defendants Knoedler Gallery, LLC and 8-31 Holdings, Inc.*

54484587.1