UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------X

DOMENICO DE SOLE and                :
ELEANORE DE SOLE,
individually and as assignees of    :
LAURA DE SOLE,
                                    :    12 Civ. 2313 (PGG)(HBP)
              Plaintiffs,
                                    :    REPORT
     -against-                           AND RECOMMENDATION
                                    :

KNOEDLER GALLERY, LLC, D/B/A
KNOEDLER & COMPANY, ANN             :
FREEDMAN, GLAFIRA ROSALES,
JOSE CARLOS BERGANTINOS DIAZ,       :
MICHAEL HAMMER, 8-31 HOLDINGS,
INC., and JAIME ANDRADE,            :

              Defendants.           :

----------------------------------X


          PITMAN, United States Magistrate Judge:


          TO THE HONORABLE PAUL G. GARDEPHE, United States

District Judge,


I.   Introduction


          In this action, plaintiffs Domenico and Eleanore De

Sole claim that a painting that they purchased from defendant

Knoedler Gallery, LLC ("Knoedler") for $8.3 million on the

representation that it was created by Mark Rothko is a forgery.

          The claims against all of the defendants have been

resolved except for defendants Glafira Rosales and Jose Carlos

Bergantinos Diaz.  The Honorable Paul G. Gardephe, United States District Judge, granted defendant Jaime Andrade's motion for summary judgment dismissing all claims against him.  De Sole v. Knoedler Gallery, LLC, 139 F. Supp. 3d 618, 657-59, 664-65 (S.D.N.Y. 2015) (Gardephe, D.J.); Order, dated Sept. 30, 2015 (Docket Item ("D.I.") 261).  Plaintiffs settled their claims against defendants Freedman (D.I. 431), Knoedler, 8-31 Holdings, Inc., and Michael Hammer (D.I. 443).

Plaintiffs assert the following claims against Rosales and Diaz: (1) violations of the United States Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962(c) and 18 U.S.C. § 1962(d) ("Civil RICO violations"), (2) aiding and abetting fraud and (3) conspiracy to commit fraud (Second Amended Complaint, dated October 21, 2013 (D.I. 118) ("SAC") ¶¶ 206-65). Although Rosales and Diaz appeared in this action and filed motions to dismiss plaintiff's Amended Complaint,[1] they failed to answer or move with respect to the SAC.  Accordingly, Judge Gardephe entered defaults against each of these defendants (Order, dated January 31, 2014 (D.I. 157); Order, dated February 10, 2014 (D.I. 164)).

---

[1]Judge Gardephe denied Rosales' motion and granted Diaz's motion with leave serve an amended complaint.  See De Sole v. Knoedler Gallery, LLC, 974 F. Supp. 2d 274, 321 (S.D.N.Y. 2013).

This matter was referred to me to conduct an inquest concerning plaintiffs' entitlement to damages from the defaulting defendants (Order of Reference, dated January 31, 2014 (D.I. 156); Order, dated February 10, 2014 (D.I. 164)).  I directed plaintiffs to serve and file their proposed findings of fact and conclusions of law by April 18, 2014 and directed defendants Rosales and Diaz to submit responsive materials by May 19, 2014. The Scheduling Orders issued provided as to each defendant:

> IF DEFENDANT (1) FAILS TO RESPOND TO PLAINTIFFS' SUB-MISSIONS, OR (2) FAILS TO CONTACT MY CHAMBERS BY [MAY 19, 2014] AND REQUEST AN IN-COURT HEARING, IT IS MY INTENTION TO ISSUE A REPORT AND RECOMMENDATION CONCERN-ING DAMAGES ON THE BASIS OF PLAINTIFFS' WRITTEN SUBMIS-SIONS ALONE WITHOUT AN IN-COURT HEARING.  See Transat-lantic Marine Claims Agency, Inc. v. Ace Shipping Corp., 109 F.3d 105, 111 (2d Cir. 1997); Fustok v. ContiCommodity Services Inc., 873 F.2d 38, 40 (2d Cir. 1989) ("[I]t [is] not necessary for the District Court to hold a hearing, as long as it ensured that there was a basis for the damages specified in a default judg-ment.")

(Scheduling Order, dated Feb. 7, 2014 (D.I. 162) (emphasis in original); Scheduling Order, dated Feb. 20, 2014 (D.I. 165) (emphasis in original); Endorsed Order, dated March 25, 2014 (D.I. 173)).

Defaulting defendants did not make any written submis-sion to me, nor have they contacted my chambers in any way. Accordingly, I make the following findings of fact and conclu-

sions of law as to the defaulting defendants on the basis of plaintiffs' written submissions alone.[2]

II.  <u>Findings of Fact</u>

1.  Plaintiffs Domenico and Eleanore De Sole are married individuals residing in Hilton Head, South Carolina and bring this action in their individual capacities and as assignees of their daughter Laura De Sole (SAC[3] ¶ 15).

2.  Defendant Rosales is an individual residing in Sands Point, New York (SAC ¶ 21).

3.  Defendant Diaz is an individual who is currently in Spain, awaiting extradition to the United States.  <u>See</u> Eileen Kinsella, <u>Accused Knoedler Forgery Mastermind Gets Postponement for Extradition From Spain</u>, artnet news (May 13, 2016),

_____

[2]Before they settled their claims, non-defaulting defendants Knoedler, 8-31 Holdings, Inc., Hammer and Freedman objected to the inquest as premature and requested that the inquest be deferred until there was a resolution of liability and damages of the overlapping claims against them.  <u>See</u> Non-Defaulting Defendants' Opposition to Inquest on Claims Against Defaulting Defendants, dated Apr. 22, 2014 (D.I. 178).  Because these defendants have since settled with plaintiffs, their request to defer the inquest is moot.

[3]As a result of the default, all of the allegations of the SAC, except as to the amount of damages, must be taken as true as against the defaulting defendants.  <u>Greathouse v. JHS Sec. Inc.</u>, 784 F.3d 105, 107 (2d Cir. 2015); <u>Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.</u>, 973 F.2d 155, 158-59 (2d Cir. 1992); <u>Trans World Airlines, Inc. v. Hughes</u>, 449 F.2d 51, 69-70 (2d Cir. 1971), <u>rev'd on other grounds</u>, 409 U.S. 363 (1973).

https://news.artnet.com/market/knoedler-fraudster-bergantinos-diaz-extradition-496316.  His whereabouts were unknown to plaintiffs when the SAC was drafted (SAC ¶ 22).

4.  Defendant Knoedler is a Delaware limited liability company with its principal place of business located, according to the New York Secretary of State, in New York, New York (SAC ¶ 16).

5.  Defendant 8-31 Holdings, Inc. is a Delaware corporation with its principal place of business located, according to the New York Secretary of State, in New York, New York (SAC ¶ 17).

6.  Defendant Michael Hammer is an individual residing in or near Santa Barbara, California (SAC ¶ 19).

7.  Defendant Ann Freedman is an individual residing in New York, New York (SAC ¶ 20).

8.  Defendant Jaime Andrade is an individual residing in New York, New York (SAC ¶ 23).

9.  Between approximately 1994 and 2009, Rosales and Diaz supplied dozens of forged artworks to Knoedler to be re-sold by the gallery as genuine works by leading abstract expressionist artists ("the Works") (SAC ¶¶ 28-161).

10.  Each of the forged Works Rosales and Diaz supplied to Knoedler was created by a forger residing in Queens, New York,

and not by the various artists to whom the Works were attributed (SAC ¶ 7; Declaration of Aaron H. Crowell (D.I. 177) ("Crowell Decl."), Exs. B & C).

11.  Diaz found the forger selling paintings on the street, enrolled him in the scheme and gave specific directions to the forger to paint works that appeared to be by leading abstract expressionist artists (SAC ¶ 11).

12.  Diaz paid the forger for his work, drawing on funds from his personal accounts and from the account of the art dealing business he co-owned and operated with Rosales (SAC ¶ 11).

13.  Diaz personally "aged" the forged Works he received from the forger in order for them to appear older than they were -- for example, "by heating/cooling them or exposing them to the elements" (SAC ¶ 11).

14.  Diaz gave the Works to Rosales who then provided the forged Works to Knoedler and Freedman for re-sale; Diaz and Rosales knew that these artworks were forgeries and that they would be re-sold as authentic works (SAC ¶ 11).

15.  Rosales and Diaz maintained a corrupt agreement in which they knowingly misrepresented the provenance[4] of the Works

---

[4]"Provenance" refers to "the history of ownership of a
(continued...)

6

for the purpose of selling the forged Works as authentic (SAC ¶¶ 4, 29-41, 62-70, 94, 117-19, 144-45, 218-19, 255).

16.    The numerous victims of the scheme who purchased the fraudulent works from Knoedler, including plaintiffs, were told, <u>inter alia</u>, that the Works were authentic paintings by the artists to whom they were attributed, and that the Works had an established provenance and were sold directly from the artists in the 1950s and 1960s to an anonymous collector (SAC ¶¶ 3, 71-97, 160, 217-21).

17.    Rosales falsely represented to Freedman, Knoedler's president and director, that when she was a child in Mexico she met a husband and wife who were European Jewish emigrés.  According to her story, the husband traveled frequently to the United States between the 1940s and the 1970s, and, on those trips, he bought a number of artworks from famous abstract expressionist artists, including Mark Rothko and William de Kooning.  The couple died in the early 1990s and the Works were bequeathed to their children who were not interested in art,

---

[4](...continued)
valued object or work of art or literature."  <u>De Sole v. Knoedler Gallery, LLC</u>, <u>supra</u>, 139 F. Supp. 3d at 628 n.12, <u>quoting</u> Merriam Webster, http://www.merriam-webster.com/dictionary/provenance (last visited October 6, 2015).

wished to remain strictly anonymous and wanted to sell the artworks (SAC ¶¶ 3, 30-34, 67-67).

18. These statements were false: the Works were forgeries created in Queens in the 1990s and 2000s (SAC ¶ 7).

19. In November of 2004, plaintiffs and their art advisor, Jim Kelly, met with Ann Freedman at Knoedler and were shown a work purportedly by Mark Rothko that, in fact, was a forgery obtained from Rosales and Diaz (the "Fake Rothko") (SAC ¶¶ 3, 71-89).

20. On or about November 30, 2004, Knoedler sent Kelly an invoice for the sale of the Fake Rothko, seeking payment in the amount of $8.3 million (SAC ¶ 81, Ex. 1).

21. On December 7, 2004, plaintiffs wired $8.4 million from their Morgan Stanley account in New York to Kelly in New Mexico in preparation for their purchase of the Fake Rothko (SAC ¶ 84; Crowell Decl. Exs. D & G).

22. On December 9, 2004, Kelly sent plaintiffs an invoice for a total purchase price of $8.4 million (i.e., the agreed purchase price of the Fake Rothko plus Kelly's commission of $100,000) (SAC ¶¶ 80, 84; Crowell Decl., Ex. E).

23. Plaintiffs then sought and obtained further assurances of the authenticity and provenance of the Fake Rothko

from Knoedler and Freedman (SAC ¶¶ 85-87 & Ex. 2; Crowell Decl. Ex. F).

24. After receiving these assurances and in reliance upon the misrepresentations regarding the false provenance created by defendants, plaintiffs authorized Kelly to purchase the Fake Rothko on their behalf (SAC ¶ 88).

25. On December 17, 2004, Kelly wired Knoedler the purchase price of $8.3 million on behalf of plaintiffs from his First National Bank account in New Mexico to Knoedler's HSBC account in New York (SAC ¶¶ 88-89; Crowell Decl. Ex. G).

26. The Fake Rothko currently has no commercial value (SAC ¶¶ 14, 96, 193; Crowell Decl. Ex. I, <u>attaching</u> Declaration of Elin Lake-Ewald, Ph.D., ASA, FRICS, dated April 16, 2014, ¶ 2 (stating that in her expert opinion as an art appraiser, the Fake Rothko has no commercial value and attaching expert report)).

27. On September 16, 2013, Rosales pled guilty to criminal charges of mail and wire fraud based on many of the same acts that are alleged in the SAC, including that, from the 1990s through 2009, she sold forged works of art that she represented were by famous abstract expressionist artists to Knoedler and others (<u>see</u> Crowell Decl., Ex. B, <u>attaching United States v. Glafira Rosales</u>, No. 13-cr-00518 (KPF), Transcript of Proceedings

dated Sept. 16, 2013, Docket Item 23 (S.D.N.Y.)("Crowell Decl. Ex. B, Rosales Guilty Plea Allocution")).

28.   In her guilty plea, Rosales admitted to creating false provenances for the Works, the counterfeit nature of the Works as well as the Works' fabrication and conveyance to Knoedler (Crowell Decl. Ex. B, Rosales Guilty Plea Allocution, pp. 26-30).

29.   The Superseding Indictment against Rosales describes Diaz as Rosales' "boyfriend," identifies him as "Co-Conspirator 1" and alleges, among other things, that he knowingly sold forged works of art to purchasers based on the misrepresentation that they were painted by famous abstract expressionist artists (Crowell Decl. Ex. C, <u>attaching</u> <u>United States v. Glafira Rosales</u>, No. 13-cr-00518 (KPF), Superseding Indictment dated Aug. 14, 2013, Docket Item 14 (S.D.N.Y.), ¶ 2; SAC ¶ 2, 5-7, 9, 18-19).

III.   <u>Conclusions of Law</u>

A.   <u>Jurisdiction and Venue</u>

30.   This Court has federal question jurisdiction over this action pursuant to the federal racketeering statute, 18

U.S.C. § 1964(c) and supplemental jurisdiction under 28 U.S.C. § 1367.

31.   This Court also has diversity jurisdiction over this action pursuant to 28 U.S.C. § 1332 because the action is between citizens of different states and the amount in controversy exceeds $75,000, exclusive of interest and costs.

32.   Defendants Rosales and Diaz have each made an appearance in this action and have not asserted defenses based on either lack of personal jurisdiction or improper venue (see, e.g., Docket Items 75, 84).  Accordingly, these defenses have been waived.  Fed. R. Civ. P. 12(h).

B.   Determination of Liability and Damages

1.   Standards Governing Default Motions

33.   "'[W]hile a party's default is deemed to constitute a concession of all well pleaded allegations of liability, it is not considered an admission of damages.'"  Renaissance Search Partners v. Renaissance Ltd. LLC, 12 Civ. 5638 (DLC), 2014 WL 4928945 at *4 (S.D.N.Y. Oct. 1, 2014) (Cote, D.J.), quoting Cement & Concrete Workers Dist. Council Welfare Fund v. Metro Found. Contractors Inc., 699 F.3d 230, 234 (2d Cir. 2012).

34.   Therefore, even where, as here, defendants have
defaulted, the court must "conduct an inquiry in order to ascer-
tain the amount of damages with reasonable certainty." Credit
Lyonnais Secs. (USA), Inc. v. Alcantara, 183 F.3d 151, 155 (2d
Cir. 1999).

35.   To determine damages, a court may rely on detailed
affidavits and documentary evidence in lieu of an evidentiary
hearing. Action S.A. v. Marc Rich & Co., Inc., 951 F.2d 504, 508
(2d Cir. 1991); see Fed.R.Civ.P. 55(b)(2)(B) ("The court may
conduct hearings or make referrals . . . when, to enter or
effectuate judgment, it needs to . . . determine the amount of
damages." (emphasis added)); accord Trustees of Mason Tenders
District Council Welfare Fund, Pension Fund, Annuity Fund &
Training Program Fund v. Stevenson Contracting Corp., 05 Civ.
5546 (GBD)(DF), 2008 WL 3155122 at *4 (S.D.N.Y. June 19, 2008)
(Freeman, M.J.) (Report & Recommendation), adopted, 2008 WL
2940517 (S.D.N.Y. July 29, 2008) (Daniels, D.J.).

36.   Fed.R.Civ.P. 54(c) limits the relief that can be
awarded by a default judgment to the relief demanded in the
claimant's pleading. Specifically, Rule 54(c) provides that "[a]
default judgment must not differ in kind from, or exceed in
amount, what is demanded in the pleadings." See also Silge v.
Merz, 510 F.3d 157, 159 (2d Cir. 2007); 10 Charles A. Wright,

Arthur R. Miller, & Mary K. Kane, <u>Federal Practice & Procedure</u> §
2663 (4th ed. 2014).

37.   Accordingly, and in light of defendants' default,
I rely on the statements and evidence contained in plaintiffs'
affidavits and other submissions regarding the amount they paid
for the Fake Rothko and its current value and deem such evidence,
except where it is internally inconsistent, to be correct.

### 2.   <u>Civil RICO Claims</u>

38.   The elements of a private claim under RICO are:
"(1) the defendant's violation of 18 U.S.C. § 1962, (2) an injury
to the plaintiff's business or property, and (3) causation of the
injury by the defendant's violation." <u>De Sole v. Knoedler
Gallery, LLC</u>, <u>supra</u>, 974 F. Supp. 2d at 299 (internal quotation
marks and citation omitted).

39.   The elements of a claim for a substantive RICO
violation under Section 1962(c) are met when "(1) the defendant
(2) through the commission of two or more acts (3) constituting a
pattern (4) of racketeering activity (5) directly or indirectly
invests in, or maintains an interest in, or participates in (6)
an enterprise (7) the activities of which affect interstate or
foreign commerce." <u>De Sole v. Knoedler Gallery, LLC</u>, <u>supra</u>, 974

13

F. Supp. 2d at 299 (internal quotation marks and citation omit-
ted).

40.   Rosales and Diaz are liable to plaintiffs for
violating 18 U.S.C. § 1962(c). <u>See</u> <u>De Sole v. Knoedler Gallery,</u>
<u>LLC</u>, <u>supra</u>, 974 F. Supp. 2d at 300-10 (finding allegations in the
Amended Complaint sufficiently alleged Rosales' liability for
violation of 18 U.S.C. § 1962(c)); SAC ¶¶ 13-14, 206-08, 214-17,
226.  Rosales and Diaz participated in an enterprise consisting
of an association-in-fact for the purpose of marketing and
selling the forged Works by misrepresenting them to have been
created by famous artists rather than forgeries (SAC ¶¶ 13, 14,
206-08, 214-17, 226).  Rosales and Diaz committed numerous overt
acts, including mail and wire fraud, in furtherance of the
enterprise, constituting a pattern of racketeering activity
affecting interstate and foreign commerce (SAC ¶¶ 214, 217, 226).
Rosales and Diaz's unlawful acts were essential elements in the
chain of circumstances leading to plaintiffs' purchase of the
Fake Rothko (SAC ¶¶ 206-30).

41.   In addition, 18 U.S.C. § 1962(d) "prohibits any
person from conspiring to violate any of the substantive provi-
sions of subsections § 1962(a)-(c)." <u>De Sole v. Knoedler Gal-</u>
<u>lery, LLC</u>, <u>supra</u>, 974 F. Supp. 2d at 310-11.  "Assuming that a
RICO enterprise exists, [in order to prove an individual is

14

liable on a conspiracy theory, one] must prove only that the defendants . . . know the general nature of the conspiracy and that the conspiracy extends beyond [their] individual roles." De Sole v. Knoedler Gallery, LLC, supra, 974 F. Supp. 2d at 311, quoting United States v. Zichettello, 208 F.3d 72, 99 (2d Cir. 2000).

42.   Rosales and Diaz were aware of the nature of the conspiracy with the other defendants to sell the forged Works and are liable for a RICO conspiracy in violation of 18 U.S.C. § 1962(d).   See De Sole v. Knoedler Gallery, LLC, supra, 974 F. Supp. 2d at 311-12 (finding allegations in the Amended Complaint sufficiently alleged Rosales' liability for violation of 18 U.S.C. § 1962(d)); SAC ¶¶ 7, 11, 231-33, 237-39.

43.   A Civil RICO plaintiff is also required to show that a RICO predicate offense "not only was a 'but for' cause of his injury, but was the proximate cause as well."   De Sole v. Knoedler Gallery, LLC, supra, 974 F. Supp. 2d at 310 (internal quotation marks and citation omitted).

44.   Plaintiffs have established the causation element of a Civil RICO claim because "Plaintiffs purchased a painting for $8.[3] million that was represented to be a genuine Mark Rothko, but which turned out to be a forgery. . . ." and thus "[plaintiffs] suffered injury arising out of the acts of the . .

15

. racketeering enterprise."  De Sole v. Knoedler Gallery, LLC,

supra, 974 F. Supp. 2d at 310; SAC ¶¶ 2, 229-30.

45.  Plaintiffs' loss is $8.3 million because, as a

result of the alleged fraudulent scheme, they purchased the Fake

Rothko for $8.3 million and today it has no value (SAC ¶¶ 14, 96,

193; Crowell Decl. Ex. I, attaching Declaration of Elin Lake-

Ewald, Ph.D., ASA, FRICS, dated April 16, 2014, ¶ 2).

46.  Plaintiffs' $8.3 million loss is supported with

reasonable certainty by the documentary evidence plaintiffs

submitted in connection with this motion, which includes a

document evidencing plaintiffs' wire transfer of $8.4 million

from their Morgan Stanley account in New York to James Kelly in

New Mexico on December 7, 2004 (Crowell Decl., Ex. D).  The bank

records of James Kelly Contemporary dated December 31, 2004

reflect both an incoming $8.4 million wire transfer from plain-

tiffs on December 7, 2004 and an outgoing $8,300,015 wire trans-

fer on December 17, 2004 (Crowell Decl., Ex. G).  Plaintiffs have

also included a letter from James Kelly to Ann Freedman dated

December 9, 2004 stating that

> [w]hile we wait for the payment details, I wanted to
> ask if you could draft a letter to Ms. Laura De Sole
> detailing the provenance and authenticity of the Rothko
> Untitled 1958.
>
> As you know, Mr. De Sole has requested this information
> from both of us, and I have already complied. . . .

16

> I am sure the wire will arrive here any day now, and
> then we can discuss the payment details.

(Crowell Decl. Ex. F).  Defendant Knoedler has also admitted that

"Kelly wired the purchase price of $8.3 million to Knoedler's

HSBC account in New York" (Crowell Dec. Ex. H, attaching Knoedler

Answer to SAC, dated March 3, 2014, ¶ 88).

> 47.  Rosales and Diaz should be held jointly and

severally liable to plaintiffs for their Civil RICO violations.

> Although the Second Circuit has not specifically ad-
> dressed the issue of joint and several liability in
> civil RICO cases, it has allowed joint and several
> liability in a criminal RICO case, see United States v.
> Fruchter, 411 F.3d 377, 384 (2d Cir. 2005), and many
> district courts in this Circuit routinely find defen-
> dants jointly and severally liable in relation to civil
> RICO claims.

Allstate Ins. Co. v. Nazarov, 11 CV 6187 (PKC)(VMS), 2015 WL

5774459 at *17 (E.D.N.Y. Sept. 30, 2015) (citations omitted);

accord Govt. Employees Ins. Co. v. Simakovsky, 14 CIV. 3775 (KAM)

(SMG), 2015 WL 5821407 at *11 (E.D.N.Y. Oct. 5, 2015); Allstate

Ins. Co. v. Kumar, 10 Civ. 8166 (KBF)(RLE), 2013 WL 2395748 at *3

(S.D.N.Y. June 3, 2013) (Ellis, D.J.) (Report & Recommendation),

adopted, Order & Judgment (S.D.N.Y. Aug. 12, 2013) (Forrest,

D.J.); City of New York v. Pollack, 03 Civ. 0253 (PAC), 2006 WL

522462 at *17 (S.D.N.Y. Mar. 3, 2006) (Crotty, D.J.).  Rosales

and Diaz acted jointly in furtherance of the civil RICO viola-

tions and therefore should be held jointly and severally liable.

48.  18 U.S.C. § 1964(c) provides for "threefold" damages as a penalty for a violations of 18 U.S.C. § 1962.[5]

49.  The SAC states that plaintiffs are seeking compensatory damages of "no less than $8.3 million, plus interest" and "treble damages under 18 U.S.C. §1962(c) and (d)" (SAC, p. 84, "Prayer for Relief"), thereby putting defendants on notice that at least this amount was at stake.  See Fed. R. Civ. P. 54(c).

50.  I, therefore, recommend that, as damages for their Civil RICO violations, Rosales and Diaz be held jointly and severally liable to plaintiffs for treble damages totaling $24.9 million under 18 U.S.C. § 1964(c) and (d).

3.  Aiding and Abetting Fraud
    and Conspiracy to Commit Fraud

51.  The elements of a claim for aiding and abetting fraud in New York[6] are (1) the existence of a fraud, (2) defendant's knowledge of the fraud and (3) defendant's substantial

---

[5]18 U.S.C. § 1964(c) also provides for costs and reasonable attorney's fees; plaintiffs have indicated that because the action is ongoing they will seek such costs and fees at a later date (Proposed Findings of Fact and Conclusion of Law for Damages on Default Judgment against Glafira Rosales and Jose Carlos Bergantinos Diaz, dated Apr. 18, 2014 (D.I. 175) ("Pls. Proposed Findings") at 9 n.2).

[6]All parties agree that New York law applies to plaintiffs' fraud claims.  See De Sole v. Knoedler Gallery, LLC, supra, 974 F. Supp. 2d at 295 n.7, citing D.I. 25 at 6 and D.I. 31 at 17.

assistance to advance the fraud's commission.  See IMG Fragrance Brands, LLC v. Houbigant, Inc., 759 F. Supp. 2d 363, 383 (S.D.N.Y. 2010) (Preska, D.J.); see also Chambers v. Weinstein, 135 A.D.3d 450, 450, 21 N.Y.S.3d 892, 893 (1st Dep't 2016); Oster v. Kirschner, 77 A.D.3d 51, 55, 905 N.Y.S.2d 69, 72 (1st Dep't 2010).

52.   "To plead a claim for fraud in New York, a plain-tiff must establish, (1) a material, false representation; (2) an intent to defraud thereby; (3) reasonable reliance on the repre-sentation; (4) damage to the plaintiff; and (5) actual and proximate causation."  IMG Fragrance Brands, LLC v. Houbigant, Inc., supra, 759 F. Supp. 2d at 383.

53.   "New York does not recognize an independent tort of conspiracy."  Kirch v. Liberty Media Corp., 449 F.3d 388, 401 (2d Cir. 2006), citing Alexander & Alexander, Inc. v. Fritzen, 68 N.Y.2d 968, 969, 503 N.E.2d 102, 102, 510 N.Y.S.2d 546, 547 (1986).  "All that an allegation of conspiracy can accomplish is to connect non-actors, who otherwise might escape liability, with the acts of their coconspirators."  IMG Fragrance Brands, LLC v. Houbigant, Inc., supra, 759 F. Supp. 2d at 386.

54.   In addition to demonstrating the existence of the underlying fraud, a claim for civil conspiracy to defraud re-quires a showing of

> (1) an agreement between two or more parties; (2) an
> overt act in furtherance of the agreement; (3) the
> parties' intentional participation in the furtherance
> of a common purpose or plan; and, (4) resulting damage
> or injury.  <u>See</u> <u>Meisel v. Grunberg</u>, 651 F. Supp. 2d 98,
> 119 (S.D.N.Y. 2009).  In other words, Plaintiffs must
> establish facts which "support an inference that defen-
> dants knowingly agreed to cooperate in a fraudulent
> scheme, or shared a perfidious purpose."  <u>Snyder v.</u>
> <u>Puente De Brooklyn Realty Corp.</u>, 297 A.D.2d 432, 746
> N.Y.S.2d 517, 521 (2002).

<u>IMG Fragrance Brands, LLC v. Houbigant, Inc.</u>, <u>supra</u>, 759 F. Supp.
2d at 386.

55.  Rosales and Diaz are liable for aiding and abet-
ting fraud and for conspiring to commit fraud.  As discussed
above at ¶¶ 40, 42, 44 with respect to plaintiffs' Civil RICO
claims, there is evidence that Rosales and Diaz entered into a
fraudulent agreement to acquire and sell forged paintings that
they misrepresented to be by famous abstract expressionist
artists, that plaintiffs purchased one of these forged paintings
in reliance on misrepresentations about its true source and value
and that plaintiffs suffered damages as a result.  <u>See</u> <u>De Sole v.</u>
<u>Knoedler Gallery, LLC</u>, <u>supra</u>, 974 F. Supp. 2d at 315-16; SAC ¶¶
7, 11, 240-43, 246, 249-50.

56.  "Rosales, of course, was a central player in the
fraud, given that she was the source of the forged paintings."
<u>De Sole v. Knoedler Gallery, LLC</u>, <u>supra</u>, 974 F. Supp. 2d at 315-
16) (finding that Amended Complaint sufficiently alleged fraud

claims against Rosales); <u>see</u> <u>also</u> SAC ¶¶ 7, 11, 240-43, 246, 249-50.

57.   Diaz was aware of the fraud, agreed to participate in it, and provided substantial assistance to advance the fraud (SAC ¶¶ 1, 7, 11, 13, 49, 144-46, 214, 222, 226, 240-43, 246, 249-50).   Diaz procured and paid the forger, personally made the Works looked "aged" and "authentic" and provided the Works to Rosales for sale (SAC ¶ 11).   Diaz also received payments for the Works directly or via his brother's bank account in Spain (SAC ¶ 49).

58.   Plaintiffs suffered damages as a result of the fraudulent scheme (SAC ¶¶ 249-50; <u>see</u> <u>also</u>, above, ¶¶ 45-46).

59.   Rosales and Diaz acted jointly in furtherance of the fraudulent scheme (SAC ¶¶ 1, 7, 11).

60.   The appropriate measure of damages for these fraud-based claims is "the actual pecuniary loss sustained as the direct result of the wrong or what is known as the 'out-of-pocket' rule, pursuant to which "the loss is computed by ascertaining the difference between the value of the bargain which a plaintiff was induced by fraud to make and the amount or value of the consideration exacted as the price of the bargain." <u>Lama Holding Co. v. Smith Barney Inc.</u>, 88 N.Y.2d 413, 421, 668 N.E.2d 1370, 1373, 646 N.Y.S.2d 76, 80 (1996) (internal quotation

marks and citations omitted); <u>accord</u> <u>Continental Cas. Co. v.</u>
<u>Pricewaterhouse Coopers, LLP</u>, 15 N.Y.3d 264, 271, 933 N.E.2d 738,
742, 907 N.Y.S.2d 139, 143 (2010).

      61.  "Under New York law, where[, as is the case here,]
defendants acted jointly and/or concurrently to produce a single
injury, those defendants must be held jointly and severally
liable for all of the harm resulting from their actions." <u>See</u>
<u>Gov't Employees Ins. Co. v. Infinity Health Prods., Ltd .</u>, No. 10
Civ. 5611 (JG)(JMA), 2012 WL 1427796 at *10 (E.D.N.Y. Apr. 6,
2012) (Report & Recommendation), <u>adopted</u>, 2012 WL 1432213
(E.D.N.Y. Apr. 25, 2012); <u>see</u> <u>also</u> <u>Hecht v. City of New York</u>, 60
N.Y.2d 57, 62, 454 N.E.2d 527, 530, 467 N.Y.S.2d 187, 190 (1983);
<u>accord</u> <u>Gov't Employees Ins. Co. v. IAV Med. Supply, Inc.</u>, No. 11
Civ. 4261 (ARR)(RER), 2013 WL 764735 at *9 (E.D.N.Y. Feb. 8,
2013) (Report & Recommendation), <u>adopted</u>, No. 11 Civ. 4261
(ARR)(RER), 2013 WL 765190 (E.D.N.Y. Feb. 28, 2013)); <u>Bank of</u>
<u>China v. Sub-Zero, Inc.</u>, 02 Civ. 4457 (RMB)(AJP), 2005 WL 1149780
at *2 (S.D.N.Y. May 16, 2005) (Peck, M.J.) (Report & Recommenda-
tion), <u>adopted</u>, 2005 WL 1388855 (S.D.N.Y. June 9, 2005) (Berman,
D.J.).

      62.  Plaintiffs suffered an out-of-pocket loss of $8.3
million as a direct result of the fraudulent scheme in which

Rosales and Diaz participated (SAC ¶¶ 249-50; <u>see</u> <u>also</u>, above, ¶¶ 45-46).

63.   The SAC clearly states that plaintiffs are seeking compensatory damages of "no less than $8.3 million, plus interest" (SAC, p. 84, "Prayer for Relief"), thereby putting defendants on notice that at least this amount was at stake in this action.  <u>See</u> Fed.R.Civ.P. 54(c).

64.   Plaintiffs are entitled to $8.3 million in damages on their fraud claims.[7]

### 4.   <u>PreJudgment Interest</u>

65.   The recoverability of prejudgment interest is governed by New York law.  <u>See</u> <u>Baker v. Dorfman</u>, 239 F.3d 415, 425 (2d Cir. 2000); <u>Schwimmer v. Allstate Ins. Co.</u>, 176 F.3d 648, 650 (2d Cir. 1999).

66.   "Under New York law, awarding prejudgment interest on damages awarded for fraud is mandatory."  <u>Barkley v. United Homes, LLC</u>, 848 F. Supp. 2d 248, 269 (E.D.N.Y. 2012), <u>aff'd</u> <u>sub</u>

---

[7]Plaintiffs are not entitled to recover $8.3 million on their common law fraud claims in addition to their Civil RICO recovery -- such a recovery would be duplicative of their overlapping Civil RICO damage recovery.  <u>See</u> <u>Bankers Trust Co. v. Rhoades</u>, 859 F.2d 1096, 1106 (2d Cir. 1988); <u>Govt. Employees Ins. Co. v. Badia</u>, 13-CV-1720 (CBA)(VMS), 2015 WL 1258218 at *24 (E.D.N.Y. Mar. 18, 2015).

nom., <u>Barkley v. Olympia Mortg. Co.</u>, 557 F. App'x 22 (2d Cir. 2014) (summary order); <u>see also</u> N.Y.C.P.L.R. § 5001(a); <u>Mallis v. Bankers Trust Co.</u>, 717 F.2d 683, 694 (2d Cir. 1983); <u>Govt. Employees Ins. Co. v. Badia</u>, <u>supra</u>, 2015 WL 1258218 at *25; <u>Huang v. Sy</u>, 62 A.D.3d 660, 661, 878 N.Y.S.2d 398, 400 (2d Dep't 2009).

67.   In the "Prayer for Relief" in the SAC, plaintiffs seek an award of "no less than $8.3 million, plus interest" (SAC, at p. 84).  This is sufficient to put defendants on notice that plaintiffs were seeking prejudgment interest.  <u>See DLJ Mortg. Capital, Inc. v. E. Am. Mortg. Co.</u>, 07 Civ. 7933 (PKL)(DFE), 2009 WL 1835025 at *5 (S.D.N.Y. June 24, 2009) (Leisure, D.J.) (complaint "gave . . . adequate notice under Rule 54(c) that default judgment would lead to 9% prejudgment interest" where, <u>inter alia</u>, it demanded an identified amount "plus penalties and interest").[8]

68.   New York law provides for prejudgment interest at a rate of 9% per annum for fraud-based claims.  N.Y.C.P.L.R §§ 5001(a), 5004; <u>Action S.A. v. Marc Rich & Co.</u>, 951 F.2d 504, 508 (2d Cir. 1991); <u>Barkley v. United Homes, LLC</u>, <u>supra</u>, 848 F. Supp. 2d at 269.

---

[8]Plaintiffs do not seek pre-judgment interest on their RICO-related treble damages at this time (Pls. Proposed Findings, at 10 n.3).

69.   Prejudgment interest "is to be computed from 'the earliest ascertainable date the cause of action existed.'"  Bison Capital Corp. v. ATP Oil & Gas Corp., 884 F. Supp. 2d 57, 59 (S.D.N.Y. 2012) (Stein, D.J.), quoting N.Y. C.P.L.R. § 5001(b).

70.   Plaintiffs' fraud-based claims "existed" on December 17, 2004 when they paid for the forged Work based on the misrepresentations alleged in the SAC (SAC ¶¶ 2, 88, 217); see, e.g., Koch v. Rodenstock, 06 Civ. 6586 (BSJ)(DF), 2012 WL 5844187 at *11 (S.D.N.Y. May 9, 2012) (Freeman, M.J.) (Report & Recommendation) (prejudgment interest on fraud claim calculated from approximate dates plaintiff paid for counterfeit wine), adopted, 2012 WL 5845455 (S.D.N.Y. Nov. 19, 2012) (Jones, D.J.); Farrell v. Comstock Group, Inc., 211 A.D.2d 493, 493, 621 N.Y.S.2d 325, 326 (1st Dep't 1995) (prejudgment interest on fraudulent misrepresentation claim was computed from the date plaintiff was fraudulently induced to sign the agreement at issue).

71.   I, therefore, recommend that, plaintiffs also be awarded pre-judgment interest at a rate of 9% per annum from December 17, 2004 to the date of the entry of judgment on the $8.3 million in fraud-based damages they suffered.

5.  Setoff for Amounts Paid
     by Settling Defendants

72.    "Where a plaintiff settles with one of several
joint tortfeasors, New York General Obligations Law § 15-108(a)
provides that [plaintiff's] claim against the remaining tortfea-
sors is reduced by the greater of: (1) the amount paid for the
release; (2) the amount stipulated in the release; and (3) the
released tortfeasor's equitable share of the plaintiff's dam-
ages."  Schipani v. McLeod, 541 F.3d 158, 164 (2d Cir. 2008),
citing N.Y. Gen. Oblig. Law § 15-108(a).

73.    "The Second Circuit has recognized that federal
common law governs whether a defendant in an action brought under
federal law is 'entitled to a credit against judgment for the
settlement by another party to the dispute.'"  Chloe v.
Zarafshan, 06 Civ. 3140 (RJH)(MHD), 2009 WL 2956827 at *7
(S.D.N.Y. Sept. 15, 2009) (Holwell, D.J.), quoting Singer v.
Olympia Brewing Co., 878 F.2d 596, 599 (2d Cir. 1989) (holding
that whether to credit a defendant with a set-off affects sub-
stantive, not procedural, rights).

74.    The right to "§ 15-108 apportionment" is not "an
absolute right" but rather is "an affirmative defense . . .
subject to forfeiture if not raised in a timely fashion."
Schipani v. McLeod, supra, 541 F.3d at 164 (a "defendant forfeits

26

its right under § 15-108(a) to an offset in the amount of the
settling codefendant's equitable share if it waits until after
summary judgment on liability to seek an apportionment"), citing
Whalen v. Kawasaki Motors Corp., 92 N.Y.2d 288, 293, 703 N.E.2d
246, 249, 680 N.Y.S.2d 435, 438 (1998) and Totalplan Corp. of Am.
v. Colborne, 14 F.3d 824, 832 (2d Cir. 1994); see also Bigelow v.
Acands, Inc., 196 A.D.2d 436, 438, 601 N.Y.S.2d 478, 480 (1st
Dep't 1993) ("[Non-settling defendant] bore the burden of estab-
lishing the equitable shares attributable to the settling defen-
dants for purposes of reducing the amount of [its] own responsi-
bility for the damages.").

        75.   Courts in the Second Circuit applying federal
common law principles have also held that the non-settling
defendant bears the burden of establishing the extent to which a
recovery against it would be duplicative of a plaintiff's recov-
ery from settling defendants, and that a defendant who fails to
answer or participate in a damages inquest may not benefit from
the set-off rule.   See Chloe v. Zarafshan, supra, 2009 WL 2956827
at *7.

        76.   Thus, in cases involving the application of N.Y.
Gen. Obl. Law § 15-108(a) as well as in cases involving the
application of federal common law, "[m]ost courts in the Second
Circuit . . . have held that a defendant in default 'may not

invoke the benefits of the set-off rule.'"  Govt. Employees Ins.
Co. v. Simakovsky, supra, 2015 WL 5821407 at *13 (citation
omitted) (applying federal common law principles and declining to
allow a credit for payment by settling defendant in judgment
against defaulting defendant for civil RICO violations, common
law fraud and unjust enrichment); see, e.g., R.B. Dev., Co. v.
Tutis Capital LLC, 12-CV-1460 (CBA)(SMG), 2015 WL 10567830 at *8
(E.D.N.Y. Nov. 6, 2015) (Report & Recommendation) (applying New
York law), adopted, 2016 WL 1271033 (E.D.N.Y. Mar. 29, 2016);
State Farm Mutual Auto. Ins. Co. v. Grafman, 968 F. Supp. 2d 480,
483 (E.D.N.Y. 2013) (applying federal common law); RLI Ins. Co.
v. King Sha Group, 598 F. Supp. 2d 438, 447 (S.D.N.Y. 2009)
(Kaplan, D.J.) (applying New York law); Chloe v. Zarafshan,
supra, 2009 WL 2956827 at *7 (applying federal law); Godfrey v.
Soto, No. 06 Civ. 428 (NG)(JO), 2007 WL 2693652 at *7 (E.D.N.Y.
Sept. 10, 2007)(applying New York law).  New York State courts
reach the same result.  See Sniadach v. Gonzales, 191 Misc.2d
422, 425, 743 N.Y.S.2d 221, 223 (N.Y. Civil Court 2001) (due to
non-settling defendants' default, no credit given for payments
from non-settling defendants); Dixon v. Globe Realty of New York,
Inc., 824 N.Y.S.2d 753 (Table), 2006 WL 2472671 at *2 (N.Y. Sup.
Ct. 2006) ("While a court may consider evidence regarding a set
off during an inquest on damages, the particular setoff under

N.Y. Gen. Oblig. Law 15-108(a) is unavailable to defaulting defendants" (internal quotation marks and citation omitted)).

77.   Neither Rosales nor Diaz have sought an offset for the settlement amount paid by the non-defaulting defendants or any apportionment of liability.   Nor has each party's equitable share of fault been determined by a finder of fact.

78.   Rosales and Diaz are not entitled to any offset to account for funds plaintiffs may have received in their settlements with the non-defaulting defendants.

IV.   Conclusion

Accordingly, for all the foregoing reasons, I respectfully recommend that judgment be entered for plaintiffs against Rosales and Diaz, jointly and severally, in the amount of $24.9 million under 18 U.S.C. § 1964(c), plus prejudgment interest on $8.3 million at a rate of 9% per annum from December 17, 2004 to the date of entry of judgment under N.Y. C.P.L.R. §§ 5001, 5004.

V.   Objections

Pursuant to 28 U.S.C. § 636(b)(1)(C) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from receipt of this Report to file written objections.   See also Fed.R.Civ.P. 6(a).   Such objections (and

responses thereto) shall be filed with the Clerk of the Court, with courtesy copies delivered to the Chambers of the Honorable Paul G. Gardephe, United States District Judge, 40 Foley Square, Room 2204, New York, New York, 10007, and to the Chambers of the undersigned, 500 Pearl Street, Room 750, New York, New York 10007.  Any requests for an extension of time for filing objections must be directed to Judge Gardephe.  FAILURE TO OBJECT WITHIN FOURTEEN (14) DAYS **WILL** RESULT IN A WAIVER OF OBJECTIONS AND **WILL** PRECLUDE APPELLATE REVIEW.  Thomas v. Arn, 474 U.S. 140, 155 (1985); United States v. Male Juvenile, 121 F.3d 34, 38 (2d Cir. 1997); IUE AFL-CIO Pension Fund v. Herrmann, 9 F.3d 1049, 1054 (2d Cir. 1993); Frank v. Johnson, 968 F.2d 298, 300 (2d Cir. 1992); Wesolek v. Canadair Ltd., 838 F.2d 55, 57-59 (2d Cir. 1988); McCarthy v. Manson, 714 F.2d 234, 237-38 (2d Cir. 1983) (per curiam).

Dated:   New York, New York
         July 21, 2016

                              Respectfully submitted,


                              HENRY PITMAN
                              United States Magistrate Judge


Copies mailed to:

Counsel of Record